UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket No. 2:10-CV-440-JAW |
| | ) |
| **JOHN L. STEFFENS,** et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
AND AN AWARD OF COSTS INCURRED IN OPPOSING PLAINTIFFS' MOTION
TO COMPEL AGAINST SIMPSON THACHER & BARTLETT LLP**

**COME NOW** the Plaintiffs, by and through their undersigned attorneys, in opposition to the Defendants' Motion for Sanctions and an Award of Costs Incurred in Opposing Plaintiffs' Motion to Compel against Simpson, Thacher & Bartlett, LLP ("STB") (Docket No. 106) (the "Defendants' Motion").

*A.    Factual Background*

STB "represent[ed] the defendant in the aftermath of the disclosure by Madoff." *See Declaration of David Spears* at Ex. F, 148:7-8 (Docket No. 73) ("Spears Declaration"). On October 24, 2011 the Plaintiffs duly served STB with a subpoena *duces tecum* commanding the production of the following documents:

> 1.    All documents in your possession, custody or control concerning your provision of professional legal services to the investors of the Spring Mountain Partners QP 1, LP (the "Fund"), or to persons or entities having authority to obtain professional legal services on behalf of the Fund or its investors, between December 1, 2008 and the present.
>
> 2.    All non-privileged documents in your possession, custody or control arising out of your provision of legal services to any of the following persons or entities, or to persons or entities having authority to obtain professional legal services on behalf of the following persons or entities:

      a. John L. Steffens;
      b. Gregory P. Ho;
      c. Spring Mountain Partners QP 1, LP;
      d. Spring Mountain Capital GP, LLC;
      e. Spring Mountain Capital LP; or
      f. Spring Mountain Capital, LLC,

between January 1, 2001 and the present, that relate to or reference J. Ezra Merkin, Bernard Madoff, Bernard L. Madoff Investment Securities, LLC, Ascot Partners, L.P., the Ascot Fund, Ascot Fund Limited, Gabriel Capital, L.P., the Gabriel Fund, Ariel Capital, L.P. or the Ariel Fund.

*See id.* at Ex. A. On November 7, 2011, STB objected on grounds of the attorney-client privilege. *See id* at Ex. B. On December 8, 2011, the Plaintiffs' replied to STB's objections to their subpoena. *See id.* at Ex. C. In this letter, the Plaintiffs stated the following:

> Either STB was retained to provide legal services for the benefit or protection of SMC and its partners and investors, including the Goldensons, or it wasn't. If STB was not retained for that purpose, then the December 15, 2008 correspondence from Steffens and Ho was indeed false and misleading and intended to lull SMC's investors and partners into the impression that lawyers had been retained to protect their interests when, in fact, that was not the case. If STB did, in fact, provide legal services for the benefit of the Goldensons, then the attorney-client privilege cannot be asserted against them by the very fiduciaries purporting to act on their behalf and for their protection, particularly under the circumstances of this case, where that same fiduciary duty has been allegedly violated. *By this correspondence, the Goldensons again assert their right to information concerning STB's representation.*

*Id.* at 2 (emphasis supplied). This letter plainly did not suggest, indicate, imply or assert an "unmistakable indication of intent to abandon the subpoena to STB." *Contra Defs.' Mot.* at 6. To the contrary, it re-asserted the Plaintiffs' right to the requested information. STB did not respond.

On February 9, 2012, the Plaintiffs served the Defendants with a Second Document Request that sought, *inter alia*, the following documents:

> 13. All documents and items of ESI depicting or concerning communications occurring among or between Spring Mountain and Simpson, Thacher and Bartlett LLP regarding the transactional, structural, regulatory and litigation issues for which Spring Mountain sought their legal advice on behalf of Spring Mountain's investors between December 1, 2008 and the Present.

*See Spears Declaration* at Ex. D.  On February 28, 2012, the Defendants moved for protection from the remainder of the Plaintiffs' Second Document Request.  *See Defs.' Mot. for a Protective Order Relating to Pls.' Second Document Request* (Docket No. 89) (the "Defendants' Motion for Protection").  Although the Plaintiffs' Second Document Request may have requested some of the "very same" categories of documents requested from STB, *Defs.' Mot.* at 6, the Plaintiffs' subpoena requested them from an entirely different source with an entirely different cache of responsive documents.  Moreover and most importantly, the Plaintiffs' subpoena also requested a large volume of documents that would not respond to their Second Document Request.  In this manner, the Plaintiffs sought to capture the full range of critically relevant documents from all available sources, as the *Garner* good cause standard requires.[1]

Having received no further response from STB regarding the subpoena, and to avoid flooding the district court in New York with multiple motions, the Plaintiffs joined STB in their motion to compel in the Southern District of New York on March 2, 2012.  *See generally In re Goldenson Subpoena Enforcement Action*, 1:12-mc-00068-P1 (S.D.N.Y 2012) (the "New York Motion").  The Plaintiffs' New York Motion sought to compel documents -- documents that were patently discoverable and that should have been produced by the Defendants without judicial intervention -- from non-parties from without the jurisdiction of the District of Maine.  Because the Federal Rules of Civil Procedure required the Plaintiffs to issue these subpoenas under the authority of the Southern District of New York, that jurisdiction was the one and only

---

[1] *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1104 (5th Cir. 1970) ( "the availability of [the information] from other sources" is a factor weighing against good cause). This is not to say that the *Garner* good cause standard applies in the Plaintiffs' case.  *See generally Pls.' Mot. to Compel* (Docket No. 104).  However, in the event the Court rules that the Plaintiffs must show good cause, they would have to demonstrate that these documents are not readily available from other sources.

forum where their compliance could be enforced. *See* Fed. R. Civ. P. 45.[2]

On March 12, 2012, the due date for production under the Plaintiffs' Second Document Request, the Defendants objected to the Plaintiffs' request for STB-related documents by asserting the attorney client privilege. *See Spears Declaration* at Ex. E. As has been the pattern of this case, however, the Defendants did not produce any *non-privileged* documents or a privilege log. On March 15, 2012, the Plaintiffs participated in a "meet-and-confer" session that included STB and the Defendants. During this conversation, both the Defendants and STB reasserted their position that the attorney-client privilege protected these documents, and the Plaintiffs reasserted that the fiduciary exception allowed them to pierce the privilege. STB, the Plaintiffs and the Defendants confirmed this understanding in writing following the conference. *See March 15, 2012 E-Mail Chain*, attached hereto as Exhibit A; *Transcript of March 22, 2012 Hearing* at 29:2-4, attached hereto as Exhibit B ("March 22nd Transcript") ("Mr. Spears: . . . '[we had] a telephonic conference that Simpson Thacher, our law firm, participated in, we

---

[2] Leaving aside the Defendants' lack of standing to request that the Court order the Plaintiffs to pay the costs of a third party who has not appeared before this Court and has not requested costs and the fact that the Defendants are requesting costs to cover their elective intervention in a motion that did not name them as a party, it is the Plaintiffs' position that the Southern District of New York was the proper forum for this privilege issue to be considered for multiple reasons: 1) their subpoena was issued from the Southern District of New York; 2) their subpoena sought documents that were different than the documents sought in the Plaintiffs' Second Document Request, including non-privileged documents exclusively in STB's possession; 3) STB has the strict duty to maintain their files, while the Defendants have claimed "vendor errors," third party administrators, "auto-generated" file names and a lax document retention policy as grounds to excuse the loss or misplacing of documents; 4) STB is a New York law firm; 5) STB asserted the privilege on behalf of its New York client; 6) the communications are located in New York; 7) only a New York court, by law, could enforce the Plaintiffs subpoena; 8) this Court does not have jurisdiction over STB; 8) the issue was not before the Maine Court, as the Defendants had not moved for a protective order regarding it, and the Plaintiffs' New York Motion was well underway when the Defendants' objected to their Second Document Request; 9) the application of the fiduciary exception in this context has not been directly addressed in the First Circuit, whereas there is case law in the Second Circuit that informs parties to an attorney-client relationship on this very issue; 10) one of *Garner*'s good cause requirements is that the Plaintiffs must attempt to get these documents from other sources; 11) although the Defendants intervened on grounds that this issue requires a very fact-intensive analysis that can only be resolved by this Court, they had not provided any of the necessary evidence to even demonstrate that the privilege applies, as it is their burden to do, and thus the "fact intensive" inquiry they wish cannot get off the ground; and 12) the Southern District is both STB's and the Defendants' home district, where the least amount of burden would be imposed. Indeed, had the Plaintiffs been afforded the opportunity, they could have easily explained why their New York Motion was not an "end-run around the regular discovery process under Rules 26 and 34." *Contra Defs.' Mot.* at 8 (citing cases).

participated in . . . .'"). At this point, it was patently clear that no amount of further discussion could resolve the purely legal dispute between the parties, and that a court with jurisdiction to compel STB to produce documents would have to decide whether 1) STB or the Defendants had properly asserted the attorney client privilege, and 2) whether the fiduciary exception allowed the Plaintiffs to pierce that privilege.

Because the District of Maine does not have jurisdiction over STB, it was absolutely necessary to proceed against STB in the Southern District of New York if the Plaintiffs wanted the following categories of documents, which are responsive to the Plaintiffs' subpoena to STB, but not to the Plaintiffs' Second Document Request:

1. Documents within the possession, custody or control of STB that are not in the Defendants' possession, custody or control.[3]

2. Non-privileged documents that were created before December 1, 2008.[4]

3. Documents that do not depict communications with the Defendants.[5]

Undoubtedly, had the Plaintiffs withdrawn their Motion against STB and then prevailed against the Defendants in the District of Maine, the Defendants would have declined to produce these

---

[3] This distinction is important, as the Defendants have interpreted the phrase "possession, custody to control" to mean actual possession, rather than the constructive possession that the Federal Rules contemplate. *Compare Defs.' Opp. to Pls.' Mot. for Protection and for Order to Show Cause as to Why Sanctions Should not be Imposed* at 3 (Docket No. 88) (Defendants did not have possession, custody or control of documents later produced by Mr. Merkin's attorney "because the documents were faxed to Defendants, rather than sent via email, they are not part of Defendants' email archives. The documents that have not been produced apparently were misplaced or lost"), *with Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994) ("Legal ownership or actual physical possession is *not* required; documents are considered to be under a party's 'control' when that party has the right, authority or ability to obtain those documents upon demand") (emphasis supplied).

[4] These documents and items of ESI are highly relevant to the identification of STB's client, the Defendants' knowledge of Madoff's role in Ascot and the due diligence made by the Defendants into Ascot/Madoff relationship.

[5] For example, communications with Mr. Merkin's attorneys, the Securities and Exchange Commission, the New York Attorney General's Office, the United States Attorney's Office and the Securities Investor Protection Corporation would fall into this category. Another example would be discovery obtained from third parties, for example documents received from Mr. Merkin depicting communications with Mr. Madoff. Yet another example would be documents that are not communications at all, such as transcripts of the Defendants' interviews before regulatory agencies.

categories of documents under claim that they did not respond to the Plaintiffs' Second Document Request. This Court would not, and does not, have the authority to order STB to produce documents, and even if this Court directs the Defendants to obtain them from STB, this Court is powerless to compel STB to follow the Defendants' instructions.

The Plaintiffs' New York Motion did not come as a surprise to this Court. The Plaintiffs first notified the Court of their New York Motion on March 5, 2012. *See Pls.' Obj. to Defs.' Mot. for Protection* at 10 & Ex. A (Docket No. 92). During the March 22, 2012 hearing, both the Plaintiffs' and the Defendants' counsel raised the matter several times. Neither the Defendants nor the Court made any mention or suggestion that New York was an improper venue for this issue, and as the Plaintiffs reasonably understood it, the Court at that time declined to insert itself into the issue of privilege.[6] The Court then denied the Defendants' Motion for Protection "with the proviso that the parties meet and confer to narrow the scope of the Second RFP." *See March 28th Report of Hearing and Order Re: Discovery, Scheduling Motions* at 2 (Docket No. 98). These events were what Plaintiffs' counsel referred to when he said to the New York Court on March 26th:

> The Movants have also sought this information from the Spring Mountain Defendants. On or about February 9, 2012, the Movants' served the Spring Mountain Defendants with a second document request that sought, *in part*, the very same documents. Mr. Spears, in his declaration to the Court, did not

---

[6] *See, e.g.*, *Ex. B* at 148:4-13 ("Mr. Spears: 'Your Honor, what they've done in the Southern District of New York is served a subpoena on Simpson Thacher for all communications between that law firm and the defendant. They represent the defendant in the aftermath of the disclosure by Madoff . . . . We're seeking to intervene with regard to our attorney/client issues on Simpson Thacher . . . .'"); 148:14-18 ("The Court: 'Well, let me say this – I'm sorry to interrupt you, Mr. Spears, but I don't see the problem in terms of scheduling and I neglected to give you the date on the 45 days. Let's just be clear on this'"); 150:6-13 ("Mr. Mina: 'Your Honor, Do I understand from the defendants that their objection or participation in the Southern District of New York with respect to discovery of the subpoena enforcement action pending down there does not involve an objection to our subpoena to depose Mr. Merkin? Because even though this Court does not have the authority to order Mr. Merkin's deposition in the Southern District -- '"); 150:14 ("The Court: 'Or the stomach to get involved'"); 150:24-151:4 ("Mr. Spears: 'We asked to intervene with regard to the Simpson Thacher subpoena. I'm not – who knows what they are going to represent to the Court about Merkin and what we've said and what we've done. I'm not giving him the right to ever represent to anyone what my position is on anything'"); 151:5-8 ("The Court: 'All right. Let me say this. I'm obviously not going to get involved in a motion to quash that's pending in the Southern District with regard to Mr. Merkin'").

>   mention that the Spring Mountain Defendants moved for protection from this request, which the Movants opposed. On March 22, 2012, the United States District Court for the District of Maine denied the Spring Mountain Defendants' motion, but declined to insert itself into the issue of privilege now pending before this Court.

*Spears Declaration* at Ex. G, 8 (emphasis supplied). Not only is this statement accurate, the Plaintiffs made it in response to the Defendants' statement to the district court in New York that "Plaintiffs-Movants have not pursued discovery in the Maine Action in a timely or diligent manner" and that the "Plaintiffs-Movants have taken no action in the Maine Action in response to [the Defendants' objection to the Plaintiffs' Second Document Request]." *See Decl. of David Spears in Opp. to Pls.' Mot. to Compel* at 3-4, *In re Goldenson Subpoena Enforcement Action* (Docket No. 22).

In accordance with the Court's Order that the parties meet and confer regarding the Plaintiffs' Second Document Request, the Plaintiffs sent the Defendants an e-mail on March 27, 2012 that narrowed their requests. Based on their discussions with the Defendants and STB in their March 15, 2012 telephone conference and the e-mails that followed, the Plaintiffs understood that the parties had agreed that production of the STB documents depended upon a discrete legal issue that should be decided in New York. Accordingly, on March 27th, undersigned counsel stated: "We expect this request to be resolved in the Southern District of New York next week." *Spears Declaration* at Ex. H, 1. The following day, Defendants' counsel replied, but made no mention of RFP No. 13 or the Plaintiffs' New York Motion. *See Kilbreth E-Mail*, attached hereto as Exhibit C. The Plaintiffs then scheduled a telephone conference with the Defendants for April 4, 2012. The Plaintiffs' intention was to heed the New York court's ruling and, if it was in their favor, narrow their request during their scheduled April 4th conference in time for this Court's April 5th deadline. If the ruling was not in their favor, the

7

Plaintiffs planned to withdraw RFP No. 13 and not press the issue before this Court.

On April 2, 2012, the day before the hearing in New York, the Defendants filed an opposition to the Plaintiffs' New York motion.  The opposition asked the Court to dismiss the Plaintiffs' Motion on grounds that the Plaintiffs had requested the same documents from the Defendants and that the matter should be decided in the District of Maine, even though STB had fully briefed the issues and had itself requested oral argument.  After Judge Jones spoke with this Court, but without giving the Plaintiffs the opportunity to explain the legal, jurisdictional and custodial problems underlying the issue, Judge Jones dismissed the Plaintiffs' motion so that it could be heard in the District of Maine:

> The Court: Before we get into any argument here with respect to the motion, I've had a conversation with Judge Rich in Maine, and he and I are in agreement that the motion to compel document production from Simpson Thacher is something that is not an issue.  The attorney/client privilege issue is not one that should be resolved in this court and it should be handled in Maine when you next have your appearance there with respect to your original request, or plaintiff's original request for documents directly from the party whose privilege it is.  So I'm dismissing that motion to compel.  If this issue is not resolved and you feel that you're able to come back to this court, you certainly can, but I'm dismissing the motion and it will be taken care of in Maine.  All right?
>
> Mr. McCloskey:  Your Honor, we understand the court's order.  I just want to make sure the court understands that we raised that issue at the last discovery conference and we told him we were down here on that matter, and he didn't – we didn't argue that issue, but I just wanted you to know it did come up while we were in Maine.
>
> The Court:  I'm not imputing any bad faith to you --
>
> Mr. McCloskey:  No, I understand.  I just want to you know that.
>
> The Court:  -- but I spoke to him about an hour and a half ago.
>
> Mr. McCloskey:  *That's fine.*
>
> The Court:  Okay.  So the motion to compel with respect to Simpson Thacher is dismissed.  Okay.  Let me hear what's going on with the subpoena to Mr. Merkin.

*Transcript of Apr. 3, 2012 SDNY Hearing* at 4:4-5:7, attached hereto as Exhibit D (emphasis supplied).  At *no* point during the proceedings in New York did the Plaintiffs represent (or even represent by implication) to that court that the United States District Court for the District of Maine "was fine with it" or that this Court "actually approved of Plaintiffs' efforts in the New York Court."  *Contra Spears Declaration* at 2; *Defs.' Mot.* at 7, 9.

On April 4, 2012, the Plaintiffs again met with the Defendants.  During this conversation, the parties agreed that RFP No. 13 remained a discrete legal issue that needed to be decided by this Court.  The Plaintiffs followed up on this understanding.  *See Apr. 4, 2012 Frawley E-Mail*, attached hereto as Exhibit E.  The Plaintiffs then scheduled to meet with the Defendants again on April 5th.  Prior to this conference, defense counsel sent the Plaintiffs an e-mail summarizing the status of the parties' negotiations.  As to RFP No. 13, defense counsel stated: "Defendants continue to object to this request in its entirety.  If plaintiffs continue to press, this issue will have to be decided by the court."  *See Apr. 5, 2012 Skinner E-Mail*, attached hereto as Exhibit F.  The Parties again discussed RFP No. 13 during their conference, but again could not reach agreement.  Following the conference, the parties again sent follow-up e-mails which discussed RFP No. 13.  In fact, defense counsel confirmed that:

> [I]t's our understanding that you do not intend to brief the substantive arguments as to requests 9 and 13 in Monday's letter to the court [as the Defendants had proposed to the Plaintiffs' disagreement], but instead will highlight the areas where we have reached agreement, state where we are not in agreement with respect to 9 and 13, and request briefing on those.  If so, we will plan to take the same approach.

*See Second Apr. 5, 2012 Skinner E-Mail*, attached hereto as Exhibit G.  The Plaintiffs agreed.[7]

---

[7] Attorney Spears apparently authored the referenced letter to the Court, but notably he did not participate in the parties' discovery negotiations concerning this issue.  In the course of those discussions, RFP No. 13 came up *numerous* times, and included lengthy discussions about the need for privilege logs and the scope of the Plaintiffs' request.  As the Plaintiffs understood it, the parties agreed that the Court should rule on the legal issues first, as its ruling would necessarily define the parameters for further discussions about narrowing this request and the

9

Rather than request briefing as the parties had agreed, however, the Defendants threatened to cross-move for their costs (as well as STB's, an action for which they lack standing) associated with the Plaintiffs' New York Motion, which were voluntarily incurred when they intervened in that proceeding.

### B. *Argument*

The record surely speaks for itself. The Defendants are attempting to frame an argument that is simply incompatible with the facts. Their suggestion of forum shopping is baseless. The Plaintiffs duly issued a subpoena in the Southern District of New York because it had to be issued by authority of that court. Thereafter, they filed a motion to compel compliance in New York because it was jurisdictionally and procedurally necessary to do so. At bottom, the Defendants' actions are nothing less than an all-out attempt to dissuade the Plaintiffs, through financial intimidation, from pressing the issue of precisely who was, and who was not, represented by STB at critical points in time involving this case.

### C. *Conclusion*

**WHEREFORE** the Plaintiffs hereby respectfully request that the Court **DENY** the Defendants' Motion for Sanctions and an Award of Costs Incurred in Opposing Plaintiffs' Motion to Compel against Simpson, Thacher & Bartlett, LLP.

Dated at Portland, Maine this 23rd day of April, 2012.

/s/ <u>Alfred C. Frawley IV</u>
Alfred C. Frawley IV

Attorney for the Plaintiffs
MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center

---

requirement of a privilege log. Yet, without having participated in the discussions, Attorney Spears saw fit to state that the "Plaintiffs flagrantly disregarded and violated this Court's order to meet and confer with Defendants as to 'all' of the documents they were seeking under the Second Request." *See Defs.' Mot.* at 9-10. Attorney Skinner, who led discussions for the Defendants, did not sign the Defendants' Motion.

Portland, Maine 04101
(207) 772-680

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Docket No. 2:10-CV-440-JAW |
| | ) | |
| **JOHN L. STEFFENS,** et al. | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2012, I have electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND AN AWARD OF COSTS INCURRED IN OPPOSING PLAINTIFFS' MOTION TO COMPEL AGAINST SIMPSON THACHER & BARTLETT LLP** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

James T. Kilbreth, Esquire
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way Number 600
Portland, ME 04101

David Spears, Esquire (*pro hac vice*)
Michelle Skinner, Esquire (*pro hac vice*)
SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010

Dated this 23rd day of April, 2012.

/s/   Alfred C. Frawley IV
      Alfred C. Frawley IV

      MCCLOSKEY, MINA & CUNNIFF, LLC
      12 City Center
      Portland, Maine 04101
      (207) 772-6805
      afrawley@lawmmc.com