UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL R. GOLDENSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.  10-CV-440 (JAW) |
| | ) | |
| JOHN L. STEFFENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendants respectfully submit this memorandum of law in opposition to Plaintiffs'

motion to compel the production of Defendants' privileged attorney-client communications with

the law firm Simpson Thacher & Bartlett LLP ("STB").  Plaintiffs' document request

specifically targets, in its own words, communications depicting or concerning STB's provision

of legal services, information that is plainly privileged under both the attorney-client privilege

and the work product doctrine.  Contrary to their assertions, Plaintiffs were not and are not

clients of STB entitled to this information, nor can they show the mutuality of interest or good

cause required to allow them to pierce the attorney-client privilege under a fiduciary exception

theory.  Finally, notwithstanding the Court's instruction that they narrow their request in light of

the impending discovery cut-off, Plaintiffs have expanded it, eliding the parameters they agreed

to in the Southern District of New York.  The motion to compel should be denied.

**Background**[1]

Plaintiffs move to compel Defendants to produce the following documents:

Between December 1, 2008 and April 6, 2012, all documents and communications
within the Defendants' custody or control, including without limitation
communications in the possession of their agent STB, depicting or concerning STB's

---

[1] Defendants respectfully refer the Court to their April 18, 2012 Motion for Sanctions, Dkt. No. 106, at 3-7, for a
complete procedural history of Plaintiffs' motion to compel.

provision of Madoff-related legal or investigative services to Spring Mountain, LLC, Spring Mountain, L.P., Spring Mountain G.P., LLC, Spring Mountain Partners QP 1, L.P. and/or any general partner, manager, member or employee thereof, including without limitation, John L. Steffens, Gregory P. Ho and J. Ezra Merkin.

Apr. 18, 2012 Decl. of Alfred C. Frawley ("Frawley Decl.") ¶10.[2] This motion (the "Motion to Compel") follows the dismissal of Plaintiffs' motion to compel the production of a similar set of documents directly from STB in the District Court for the Southern District of New York (the "New York Proceeding").[3] In dismissing that motion, District Judge Barbara S. Jones explained that she and this Court had spoken and agreed that the privilege issues implicated by Plaintiffs' document request should be heard in this Court where the action is pending.[4]

**Plaintiffs Seek Privileged Communications To Which They Have No Right As Clients**

STB was retained to represent various Spring Mountain entities and affiliates in December 2008 almost immediately after the Madoff scandal broke. Kreissman Decl. ¶2; Sharp Decl. ¶¶3-4. Plaintiffs now seek to review all "documents and communications . . . depicting or concerning STB's provision of Madoff-related legal or investigative services" to those Spring Mountain entities and affiliates. On its face, Plaintiffs' document request is thus squarely aimed at legal advice STB gave to Defendants and confidential attorney-client communications related to such advice. Indeed, the entire stated purpose of the request is to discover the "legal services" provided by STB.[5] It is black-letter law that information of this kind is protected from discovery

---

[2] Although the Court limited the parties' briefing to ten pages, Plaintiffs do not include their document request, or their arguments about whether it satisfies the Court's instructions that it be narrowed, in their motion to compel, instead saving the substantive discussion of these issues for a separate Declaration.

[3] Defendants make reference in this memorandum to the following papers filed in the New York Proceeding: STB's brief in opposition to the motion to compel ("STB Opp."), attached hereto as Ex. A; the supporting Declaration of James G. Kreissman ("Kreissman Decl."), Ex. B; the supporting Declaration of Tara C. Sharp ("Sharp Decl."), Ex. C; and Plaintiffs' reply brief in support of the motion to compel ("Reply Br."), Ex. D.

[4] Plaintiffs appear to criticize Judge Jones in their supplemental Declaration, complaining that although Judge Jones "spoke with this Court" before ruling, she failed to "giv[e] the Plaintiffs an opportunity to be heard" or to explain certain never-before-mentioned "legal, jurisdictional, and custodial problems" with litigating their attempt to invade Defendants' privileges in the Court where the action is pending. Frawley Decl. ¶8.

[5] "Investigative" services provided by a law firm qualify as legal services for purposes of attorney-client privilege. *See, e.g.*, *Sandra T.E. v. S. Berwyn School Dist. 100*, 600 F.3d 612, 620 (7th Cir. 2010); *In re Allen*, 106 F.3d 582,

by the attorney-client privilege. *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 606 (2009) ("By *assuring confidentiality*, the [attorney-client] privilege encourages clients to make 'full and frank' disclosures to their attorneys" and "serves 'broader public interests in the observance of law and administration of justice") (emphasis added); *In re Keeper of Records (Grand Jury Subpoena Issued to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003) ("[W]e start with the unarguable position that the attorney –client privilege is highly valued. Accordingly, courts should be cautious about finding implied waivers.").

Plaintiffs' suggestion that Defendants "have made no attempt whatsoever to establish that the privilege even applies in this case," Mot. to Compel at 3-4, is, respectfully, preposterous in light of Plaintiffs' own description of the documents it seeks as communications depicting or concerning *legal services* that are in the custody of six lawyers. None of the cases cited by Plaintiffs to support their argument that a more robust showing of privilege is needed are remotely apposite, because, among other things, those were not cases in which the content of legal services was itself the exclusive, admitted aim of a document request, as it is here. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 67, 71-72 (1st Cir. 2011) (discussing grand jury subpoena that sought "records relating to the purchase of real property by Mr. S. from Mr. and Mrs. X . . . that was facilitated by [attorneys]," and noting that the documents listed in the subpoena, such as HUD statements and sales contracts, were "not confidential in nature"); *In re Omnicom Group Inc. Sec. Litig.*, 233 F.R.D. 400 (S.D.N.Y. 2006) (*upholding* assertion of attorney-client privilege except where attorney was providing business services, rather than legal services); *Newmarkets Partners, LLC v. Sal. Oppenheimer Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) (*upholding* assertion of attorney-client privilege over documents reflecting

---

604 (4th Cir. 1997). Plaintiffs introduce the word "investigative" for the first time in their newly minted request, presumably as a fig leaf for their attempt to discover privileged legal communications. In any event, this is yet another attempt by Plaintiffs to expand their request, not narrow it. *See infra* at 10.

"legal advice"); *cf. In re Crescent Beach Inn*, 37 B.R. 894, 895-96 (Bankr. D. Me. 1984) (allowing access to records regarding legal representation in a bankruptcy dispute in which *the issue was the lawyer's application for compensation*).  Plaintiffs also completely ignore the work product doctrine, which independently protects STB's communications with Defendants depicting or concerning legal services because those communications occurred in anticipation of litigation.  *See* Sharp Decl. ¶4 ("I believed that litigation . . . [was] likely and thus sought [STB]'s counsel for that reason.").[6]  In short, Plaintiffs' attempt to portray their request for depictions of *legal services* as a request for "communications whose privileged nature is anything but certain," Mot. to Compel at 5, has no support in the law and provides no basis for compelling production of Defendants' communications with their attorneys.[7]

Plaintiffs make a half-hearted argument that they "may" nevertheless be entitled to discovery of STB's legal advice because they themselves "may" have had "an attorney-client relationship with STB" based on "their capacity as limited partners in the QP 1 Fund."  Mot. to Compel at 4 n.3.  This argument is implausible even in its articulation: surely if Plaintiffs had an attorney-client relationship with STB, they would have known about it.  Plaintiffs' own actions belie their claim that STB may have been their attorney: despite their demonstrated anxiety to take immediate action to recover their losses following the Madoff fraud, *see* Sharp Decl. ¶5, they never communicated with STB about their supposed representation or did anything else reflecting a belief that STB was their attorney, *see* Kreissman Decl. ¶5.

---

[6] "In general, the work product doctrine makes immune from discovery materials prepared in anticipation of litigation." *Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, No. 00 Civ. 783, 2001 WL 1180694, at *2 (D. Mass. Sept. 25, 2001) ; *see also, e.g.*, *In re Grand Jury*, 106 F.R.D. 255, 257 (D.N.H. 1985) (work product protection is "independent" from attorney-client privilege).
[7] Plaintiffs suggest that Defendants should parse out precisely which Spring Mountain entities and affiliates had retainer agreements with STB in order to ascertain whether the documents Plaintiffs seek are privileged.  This demand makes no sense in light of Plaintiffs' own document request, which seeks documents depicting the provision of *legal services* to Defendants and their affiliates.  By definition, this request seeks documents reflecting communications between STB and its clients – *i.e.*, the entities to which it provides legal services.  Plaintiffs have never been STB's clients and have no right to review STB's communications with those that were or are its clients.

4

Even if Plaintiffs had believed that STB was their counsel – and their actions show they did not – that belief would not have made it so.  STB has never been retained by Plaintiffs or provided counsel to them, *see* Kreissman Decl. ¶3, and it is a "basic proposition that . . . an attorney for a partnership or for a general partner does not thereby undertake representation of the limited partners," *Rhode Island Depositors Economic Protection Corp. v. Hayes*, 64 F.3d 22, 27 (1st Cir. 1995) (internal citations omitted).  "The law requires more than an individual's subjective, unspoken belief that the person with whom he is dealing has become his lawyer."  *Id.*

Plaintiffs point to three letters that Defendants sent to investors shortly after the Madoff fraud was exposed, signed by Defendants John L. Steffens and Greg P. Ho, as purported indications that STB was retained "on [Plaintiffs'] behalf."  Mot. to Compel at 2.  They cherry-pick the use of first-person plural pronouns in an effort to make it look like STB was hired as Plaintiffs' counsel.  This argument requires a tortured reading of the letters.  For example, Plaintiffs twist innocuous phrases such as, "We have retained [STB] to provide us with legal advice," to mean that Defendants were telling all investors that STB had been hired to represent *them* personally.  But the only reasonable interpretation of the letters was that STB was retained by the sender of the letters, Defendants, to advise Defendants on a myriad of Madoff-related legal issues.  That is in fact what happened.  *See* Sharp Decl. ¶3.  Defendants' use of plural pronouns in referring to Spring Mountain – particularly where there were two signatories to the letters – signified nothing about Plaintiffs having their own relationship with STB.  Indeed, the context of the letters makes Plaintiffs' purported interpretation impossible: among other things, the letters refer to "the investment vehicles *we* have created;" "*our* investors;" and "*your* interests."  In this context, Plaintiffs could not reasonably have thought that "we" meant them.[8]

---

[8] Plaintiffs also alight upon the statement in one of the letters that STB has "expertise in advising victims of financial fraud."  But – as Plaintiffs acknowledge twice in their own Motion – Defendants were victims of the

In short, Plaintiffs' motion to compel seeks documents protected by the attorney-client privilege and work product doctrine to which they are not entitled as clients.

**Plaintiffs Cannot Pierce The Attorney-Client Privilege Using The Fiduciary Exception**

Plaintiffs next contend that even if the documents they seek are protected by the attorney-client privilege, they should be permitted to pierce the privilege using the "fiduciary exception." *See generally Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). This argument is without merit, even assuming *arguendo* that a fiduciary relationship is implicated (which Defendants vigorously dispute).[9] The fiduciary exception is inapplicable here because Plaintiffs fail to meet two requirements of the exception – "mutuality of interest" and "good cause."[10]

As Plaintiffs acknowledge, "mutuality of interest" is the "sine qua non" of the fiduciary exception. Mot. to Compel at 6. In order for a fiduciary relationship to "override[]" the attorney client privilege, "the key element is the mutuality of interests between a fiduciary and a beneficiary . . . at the time the communications to counsel are made." *In re Atlantic Fin. Mgmt. Sec. Litig.*, 121 F.R.D. 141, 146 (D. Mass. 1988). Plaintiffs bear the burden of establishing this mutuality of interest. *See, e.g.*, *In re JP Morgan Cash Balance Litig.*, No. 06 Civ. 732, 2007 WL 1280623, at *1 (S.D.N.Y. Apr. 30, 2007).

Plaintiffs have not carried that burden here. Their interests diverged from Defendants' in December 2008, at the time that STB was retained. That month, Plaintiffs contacted Defendants repeatedly, *seeking money from Defendants*, asking for "priority" vis a vis other investors in the QP 1 Fund, and complaining that their situation was "dire." Sharp Decl. ¶5 & "Exhibit A"

---

[9] financial fraud, thus removing any mystery as to why they hired a law firm with expertise in that area. *See* Mot. to Compel at 2 (quoting letter stating that Defendants were "one of the largest investor groups in the investment vehicles we have created"); *id.* at 7 n.7 (identifying Defendants as "victims" of the Madoff fraud.).

[9] Defendants do *not* concede that they were in a fiduciary relationship with Plaintiffs. In light of this Court's August 4, 2011 Order finding that whether a fiduciary relationship existed should be determined as a factual matter, Defendants do not advance their position here, but preserve the right to develop and argue it in this litigation.

[10] In addition, the fiduciary exception does not apply to the attorney work product doctrine. *See infra* at 10 n.14.

attached thereto.  Plaintiffs' actions toward Defendants made clear that their interests were not aligned.  Defendants' communications with counsel in such circumstances are protected.  *See, e.g.*, *U.S. v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999) (rejecting application of fiduciary exception where fiduciary sought advice when "[t]rouble was in the air"); *Fitzpatrick v. Am. Int'l Group*, 272 F.R.D. 100, 111 (S.D.N.Y. 2010) (refusing to apply fiduciary exception where attorneys were functioning in a "protective advisory role" – *i.e.*, where the "role of [the attorney] was to advise [the client] as to how to protect its own interests when they potentially diverged from those of the beneficiaries of any fiduciary relationship").[11]

Even if the wedge between Plaintiffs' interests and Defendants' had been less pronounced, Plaintiffs would still fall short of the mutuality-of-interest requirement because Defendants reasonably anticipated Madoff-related litigation and investigations when they conferred with STB.  *See* Sharp Decl. ¶4 ("I believed that litigation . . . was likely[.]").  Plaintiffs concede both that a reasonable anticipation of litigation precludes application of the fiduciary exception, *see* Mot. to Compel at 8 n.8; *see also, e.g.*, *In re Int'l Sys. & Controls Corp. v. Sec. Litig.*, 693 F.2d 1235, 1239 (5th Cir. 1982); *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 501 (M.D.N.C. 2008), and that Defendants anticipated litigation when they retained STB, *see* Mot. to Compel at 1 (quoting Defendants' letter to investors stating that STB was hired to "provide us with legal advice concerning . . . *litigation issues*").  Given the nature of Plaintiffs' specific contacts with Defendants in the immediate aftermath of the Madoff fraud, and the prevailing toxic environment, Defendants had a clear and reasonable basis to anticipate litigation.

---

[11] Plaintiffs' attempt to establish the required mutuality of interest in these circumstances based on Defendants' letters to investors, *supra* at 5-6, is, at best, extremely attenuated.  In providing broad assurances to their investors that they were handling the Madoff crisis as best they could, Defendants were not thereby forfeiting the privacy of their privileged attorney-client communications to each recipient of the letters.  *See, e.g.*, *In re Omnicom Group*, 233 F.R.D. at 410; *see also* STB Opp. at 10-13 (discussing mutuality requirement).

Even if Plaintiffs were able to carry their burden on the "mutuality of interest" requirement, the fiduciary exception would still not apply because Plaintiffs have not shown "good cause" to pierce the privilege.  The good-cause requirement is well-established in the limited partnership context, contrary to Plaintiffs' attempt to suggest otherwise.  *See, e.g.*, *Fortson v. Winstead, McGuire, Sechrest & Minick*, 961 F.2d 469, 475-76 n.5 (4th Cir. 1992) (upholding district court's finding that limited partners lacked "good cause" to "abrogat[e] the attorney client privilege"); *In re ML-Lee Acq. Fund II L.P. Sec. Litig.*, 848 F. Supp. 527, 563-64 (D. Del. 1994) (applying good cause requirement in limited partnership context); *Ferguson v. Lurie*, 139 F.R.D. 362, 366 (N.D. Ill. 1991) ("[L]imited partners should not be excepted from *Garner's* requirement of showing good cause before otherwise privileged documents are released to them.").[12]  As with mutuality of interest, the burden to demonstrate good cause is on the party seeking to pierce the privilege.  *See, e.g.*, *Mui v. Union of Needletraders, Indus. & Textile Emps.*, No. 97 Civ. 7270, 1998 WL 915901, at *2 (S.D.N.Y. Dec. 30, 1998).

Plaintiffs have not demonstrated good cause to pierce the privilege.  In trying to do so, they stretch the good-cause factors mentioned in *Garner* beyond recognition.  For example, *Garner* looks at "the number of shareholders [seeking to pierce the privilege] and the percentage of stock they represent" to determine whether "all, or substantially all, stockholders" are seeking to pierce the privilege, which would contribute to good cause.  430 F.2d at 1104, 1101.  Plaintiffs get this factor completely backwards, suggesting that their "unique" status – Plaintiffs represent less than 2% of the QP 1 Fund, Sharp Decl. ¶8 – should "weigh in [their] favor."  Mot. to Compel at 9.  In fact, the exact opposite is true: Plaintiffs' small percentage of the QP 1 Fund

---

[12] The cases on which Plaintiffs rely in arguing that they should not be subject to the "good cause" requirement do not involve limited partnerships.  *See Lawrence v. Cohn*, No. 90 Civ. 2396, 2002 WL 109530 (S.D.N.Y. Jan. 25, 2002); *In re Omnicom Group*, 233 F.R.D. 400; *Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291 (S.D.N.Y. 1991).

and their pursuit of damages "for their own personal benefit" weigh heavily against a finding of good cause. *Cox v. Admin U.S. Steel & Carnegie*, 17 F.3d 1386, 1414-16 (11th Cir. 1994) (refusing to apply fiduciary exception despite "many of the factors listed in *Garner*" supporting good cause, where plaintiffs represented only a small percentage of defendant Union's members and plaintiffs' interests were adverse to those of non-plaintiff Union members); *see also Ward v. Succession of Freeman*, 854 F.2d 780, 786 (5th Cir. 1988) (emphasizing that good cause is "more subject to careful scrutiny" in cases that are not shareholder derivative suits because plaintiffs seek damages only for themselves, and finding plaintiffs' ownership of only 4% to weigh against good cause).  Not only do Plaintiffs represent only a small percentage of the QP 1 Fund and seek damages purely for their personal benefit, but their interests are also adverse to those of other investors, as in *Cox*: Plaintiffs have expressed their desire to be "first in line" ahead of the other investors, Sharp Decl. "Exhibit A," as noted above.[13]

Plaintiffs likewise misconstrue other *Garner* good-cause criteria, including "'the apparent necessity or desirability of [Plaintiffs] having the information' and 'the extent to which the communication is identified versus the extent to which [Plaintiffs] are blindly fishing.'" *Miller v. Genesco, Inc.*, No. 93 Civ. 96, 1994 WL 698287, at *1 (S.D.N.Y. Dec. 13, 1994).  Plaintiffs assert that they have "identif[ied] communications involving specific persons during a specific time period about a specific subject matter."  Mot. to Compel at 10.  All that amounts to, however, is making a document request – Plaintiffs have failed to "com[e] forward with a particularized showing of need for specifically identified documents" or "expla[in] . . . what [they] expect to obtain" by reviewing those documents.  *Id.*  "Good cause" to override the attorney-client privilege simply does not exist here.

---

[13] Plaintiffs' interests are also adverse to those of other investors in the QP 1 Fund because if they prevail in the underlying lawsuit, their recovery against Defendants may be indemnified by the Fund.  Sharp Decl. Ex. B.

Because Plaintiffs have not demonstrated either mutuality of interest or good cause to abrogate the attorney client privilege, the fiduciary exception cannot be applied here.

**<u>Plaintiffs' Document Request Is Overbroad</u>**

Even if Plaintiffs were entitled to review Defendants' attorney-client communications, their Motion to Compel must be denied because its request for documents is overbroad.  In the New York Proceeding, Plaintiffs took pains to "clarify" that they were "*not* request[ing] attorney work product information," STB's "internal notes, communications, and documents," or any communications "to the extent that STB represented Mr. Steffens and Mr. Ho personally." Reply Br. at 10 (emphasis in original).  Yet these boundaries are missing from the document request in Plaintiffs' Motion to Compel.  Moreover, in the New York Proceeding, Plaintiffs sought documents from the period beginning December 12, 2008 and ending January 6, 2009. *See* Reply Br. at 13-14 ("[Plaintiffs] are now entitled to review privileged communications and documents *from this period* . . . .") (emphasis added).  Yet Plaintiffs' new document request spans a vastly greater and more burdensome period: December 1, 2008 to *April 6, 2012*.

The enormous disjunction between Plaintiffs' current request and their request in the New York Proceeding reflects the unfocused nature of Plaintiffs' pursuit of Defendants' attorney-client communications.  Not only is Plaintiffs' apparent newfound inclusion of attorney work product impermissible,[14] but their expansion of the limits they agreed to in the New York Proceeding is opportunistic and improper. Moreover, the breadth of their current request would make document production unfeasible by the discovery deadline.

**WHEREFORE**, Defendants respectfully request that Plaintiffs' Motion to Compel be denied.

Dated at New York, New York this 23rd Day of April, 2012.

---

[14] Attorney work product is not subject to the fiduciary exception. *See, e.g.*, *Strougo v. BEA Assoc.*, 199 F.R.D. 515, 524 (S.D.N.Y. 2001).  Moreover, the work product doctrine protects materials prepared for "*any*" litigation "as long as they were prepared by or for a party to the subsequent litigation."  *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983).

SPEARS & IMES LLP

By:  /s/ David Spears
    David Spears


By:  /s/ Max Nicholas
    Max Nicholas
    51 Madison Avenue
    New York, New York 10010
    Telephone:  (212) 213-6996


DRUMMOND WOODSUM

By:  /s/ James T. Kilbreth
    James T. Kilbreth
    Drummond Woodsum
    84 Marginal Way
    Portland, Maine 04101
    Telephone:  (207) 253-0555

    *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2012, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to the following:

Thimi R. Mina
Jay P. McCloskey
Shaun M. Garry
McCloskey, Mina & Cunniff, LLC
12 City Center
Portland, ME 04101

Dated:  April 23, 2012                          /s/ Max Nicholas
                                               Max Nicholas