Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re GOLDENSON SUBPOENA ENFORCEMENT ACTION | No. 1:12-mc-00068-P1 |

DANIEL R. GOLDENSON,
SUZANNE K. GOLDENSON,
SKG PARTNERS, L.P. and
SKG GENERAL CORP.,

                    Movants,

       v.

J. EZRA MERKIN,

                    Respondent,

BART M. SCHWARTZ, in his capacity as
RECEIVER FOR ARIEL FUND LTD. and
GABRIEL CAPITAL L.P.,

                    Respondent,

DAVID B. PITOFSKY, in his capacity as
RECEIVER FOR ASCOT FUND LTD. and
ASCOT PARTNERS, L.P.,

                    Respondent,

ERIC T. SCHNEIDERMAN, in his capacity as
THE ATTORNEY GENERAL FOR THE STATE
OF NEW YORK,

                    Respondent,

SIMPSON THACHER & BARLETT LLP,

                    Respondent.

## DECLARATION OF JAMES G. KREISSMAN IN OPPOSITION TO THE MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM SIMPSON THACHER & BARTLETT LLP

## DECLARATION OF JAMES G. KREISSMAN

I, James G. Kreissman, pursuant to 28 U.S.C. § 1746, hereby declare:

1.        I am an attorney licensed to practice before this Court.  I am a partner at the law firm Simpson Thacher & Bartlett LLP ("Simpson Thacher"), a respondent in this action.  I make this Declaration in opposition to Movants' Motion to Compel the Production of Documents Pursuant to Fed. R. Civ. 45(c)(2)(B)(i) from Simpson Thacher (the "Motion").  This Declaration is based on my personal knowledge and review of the business records of Simpson Thacher.

2.        On December 11, 2008, the same day as reports of the Bernard Madoff fraud surfaced in the press, I was contacted by Tara C. Sharp, General Counsel of Spring Mountain Capital, LP.  Simpson Thacher was thereafter retained to represent various Spring Mountain entities and affiliates.

3.        Simpson Thacher has never been retained by, or provided legal counsel to, any of the limited partner investors in Spring Mountain Partners QP I (the "Fund") in connection with their investments in the Fund.

4.        Before the Madoff fraud was discovered, Simpson Thacher did not draft any Fund-related documents, advise any Spring Mountain entities about Fund formation, or counsel anyone about what representations they should, or did, make to investors about the Fund.

5.        Prior to filing their lawsuit against Spring Mountain Capital G.P., LLC, Spring Mountain Capital, LP, Spring Mountain Capital, LLC, John L. Steffens, and Gregory Ho in December 2010 (the "Maine Action"), Movants never communicated with Simpson Thacher for purposes of obtaining legal advice, whether for status updates or otherwise, in writing, in person, or by phone.

6.        Before they filed the Maine Action, but after they threatened to file it, counsel for Movants had various discussions with me in my capacity as counsel for parties that are now defendants in the Maine Action.  It was clear from the conversation that Movants' counsel was aware that I was representing parties that were adverse to Movants.

7.      On October 24, 2011, Movants served a subpoena *duces tecum* (the "Subpoena") on Simpson Thacher seeking documents created or collected in the course of Simpson Thacher's representation of the Spring Mountain entities.  On November 7, 2011, Simpson Thacher served objections to the Subpoena.  Movants never contacted Simpson Thacher to clarify or discuss the stated objections and never indicated an intention to move to compel production.

8.      By letter dated December 8, 2011, Movants indicated that they intended to offer evidence and seek a jury instruction in the Maine Action regarding Simpson Thacher's role with Spring Mountain and position in response to the Subpoena.  I did not respond to Movants' letter because I did not believe that any response was sought or required.

9.      After Movants' December 8, 2011 letter, there was no contact between Movants and Simpson Thacher until Movants filed the instant Motion on March 2, 2012.  Movants did not seek to meet and confer with Simpson Thacher and did not request a court conference before filing the Motion.

10.     After the Motion was filed, Simpson Thacher and the other Respondents in this miscellaneous action contacted Movants' counsel to suggest a meet and confer in order to better understand Movants' position and what documents they were seeking, and to determine whether any compromise could be reached.

11.     The parties conducted a telephonic meet and confer on March 15, 2012.  During this teleconference, I asked Movants' counsel to explain what information they wanted to receive and why they needed it.  Movants' counsel did not provide any information in response to my request.  At the end of the teleconference, Movants' counsel stated that they would consider withdrawing the Motion altogether if Simpson Thacher would stipulate that it had not been retained to represent the Movants.  Although I agreed to so stipulate, Movants' counsel subsequently decided to proceed with a hearing on the Motion.

12.     Simpson Thacher has identified almost 100 custodians who have files that contain documents that may be responsive to the Subpoena.  I estimate that it would require several

weeks to collect, cull and stage documents from these custodians' files, including emails, before even beginning the labor-intensive privilege and responsiveness review.

13.     To have a better sense of the likely burden that the Subpoena would impose, Simpson Thacher applied a narrow set of search terms ("Merkin" OR "Madoff" OR "Ascot" OR "Gabriel Capital" OR "Gabriel Fund" OR "Ariel Capital" OR "Ariel Fund") to my email files, with a date restriction of January 1, 2001 to the present.  There were over 2,700 documents that satisfied those criteria.  The results of this search are likely to be significantly under-inclusive of the number of documents likely to be responsive to the Subpoena for a number of reasons.  First, the Subpoena sweeps far broader than the search terms, particularly if both requests are considered.  Second, search terms were not applied to non-searchable documents (*e.g.*, PDFs). Simpson Thacher also identified almost 1,500 electronic documents located on shared servers, and 10 boxes of hard copy documents.

14.     I estimate that it would cost over one hundred thousand dollars in attorney and staff time and related expenses to respond to the Subpoena.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of March, 2012 at Shanghai, People's Republic of China.

/s/ James G. Kreissman
James G. Kreissman