# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re GOLDENSON SUBPOENA ENFORCEMENT ACTION | No. 1:12-mc-00068-P1 |
| DANIEL R. GOLDENSON, SUZANNE K. GOLDENSON, SKG PARTNERS, L.P. and SKG GENERAL CORP., Movants, v. J. EZRA MERKIN, Respondent, BART M. SCHWARTZ, in his capacity as RECEIVER FOR ARIEL FUND LTD. and GABRIEL CAPITAL L.P., Respondent, DAVID B. PITOFSKY, in his capacity as RECEIVER FOR ASCOT FUND LTD. and ASCOT PARTNERS, L.P., Respondent, ERIC T. SCHNEIDERMAN, in his capacity as THE ATTORNEY GENERAL FOR THE STATE OF NEW YORK, Respondent, SIMPSON THACHER & BARLETT LLP, Respondent. | |

**DECLARATION OF TARA C. SHARP IN OPPOSITION TO
THE MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
FROM SIMPSON THACHER & BARTLETT LLP**

## DECLARATION OF TARA C. SHARP

I, Tara C. Sharp, pursuant to 28 U.S.C. § 1746, hereby declare:

1.I am an attorney licensed to practice law in the State of New York and the State of Connecticut. I am the General Counsel of Spring Mountain Capital, LP ("Spring Mountain"). I have been employed in this capacity at Spring Mountain since March 2006. I make this Declaration in opposition to Movants' Motion to Compel the Production of Documents Pursuant to Fed. R. Civ. 45(c)(2)(B)(i) from Simpson Thacher & Bartlett LLP ("Simpson Thacher"). This declaration is based on my personal knowledge and review of the business records of Spring Mountain.

2.Movants are limited partner investors in Spring Mountain Partners QP I, LP (the "Fund"). The Fund was a "fund of funds," meaning that it invested in numerous other investment funds. Spring Mountain Capital G.P., LLC serves as the Fund's general partner. Spring Mountain Capital, LP is the Fund's management company. Spring Mountain Capital, LLC is the general partner of the Fund's management company.

3.On December 11 2008, I contacted James Kreissman of Simpson Thacher to seek representation of various Spring Mountain entities in connection with Bernard Madoff-related and other issues.

4.Although it was immediately clear on December 11, 2008 that the Madoff fraud would result in investment losses, there was substantial uncertainty as to the magnitude of those losses, who was responsible, and how Spring Mountain should respond. I believed that litigation and investigations of some sort were likely and thus sought Simpson Thacher's counsel for that reason.

1

5. Daniel Goldenson contacted Spring Mountain repeatedly, and more frequently than any other investor, following news of the Madoff fraud. The communications from Mr. Goldenson took an acrimonious tone soon after this news. In addition to seeking immediate redemption of his investment, Mr. Goldenson requested that Spring Mountain grant him preferential treatment vis-à-vis other Fund investors, and suggested that other investors would not have to know about any preferential treatment that was given to him. Spring Mountain refused to grant the requested preferential treatment to Mr. Goldenson or the other Movants.

6. A true and correct copy of a December 22, 2008 email from Daniel Goldenson to Gregory Ho is attached hereto as **Exhibit A**.

7. A true and correct copy of excerpts from the Amended and Restated Limited Partnership Agreement of Spring Mountain Partners QP I, LP, dated as of December 31, 2008, is attached hereto as **Exhibit B**.

8. Movants' holdings represent less than 2% of the Fund. There are 58 limited partner investors in the Fund.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of March, 2012 at New York, New York.

_____
Tara C. Sharp

2

# Exhibit A

# Cheryl Gordon

**From:** Dan Goldenson [dan@startingout.com]
**Sent:** Monday, December 22, 2008 5:05 PM
**To:** Greg Ho
**Subject:** Confirmation/Request

Dear Greg,

Thank you for speaking with me today and giving a further explanation of circumstances. I gather you are commencing a full liquidation of QP-1's hedge fund portfolio. Does this mean you will be forced to liquidate the private equity portion as well, or can that continue to perform?

<u>Needless to say, our personal situation is now dire.</u> We had been an original investor in SMC in late 2001, placing half our money with you, and, after being introduced to Ezra Merkin, we placed the other half with the Ascot Fund. I am hoping that there will be a partial retrieval of Ascot money over time, especially since all of us relied upon the reports of the Seidman auditing firm. They issued the audited statements which always showed all the money in treasuries when it was not being traded. I am sure everyone thought these funds were fully segregated for the protection of Ascot investors.

I am confirming our agreement, between Launnie and you and ourselves that, in view of our very early redemption request dating back a year, you will first send us $1 million in the next couple of weeks, and that you will send the rest of our hedge fund position as soon thereafter as you can. Naturally a full liquidation is much harder to effectuate, and may affect market values more than just liquidating the two account requests that you had on hand in the normal course of business. Please keep our "first in line" position foremost in your mind, for the sake of fairness, as we feel that our redemption should have priority (with the other small request) vs. the entire fund liquidation that has suddenly become necessary to achieve.

I know this is a terribly difficult time for you, Launnie, and all of us. Suzanne and I appreciate all that you are doing to help us out, and hope that you can get us as much of our hedge fund position liquidated ahead of the line as possible and as quickly as possible. These funds will have to serve us for our retirement. (Aside from an SKG Partners, LP investment of $2 million in Ascot, we also lost both of our IRA accounts totaling $500,000.)

Thanks very much for your consideration and communication, and best wishes for a far better 2009!

Sincerely,
Dan Goldenson

Case 2:10-cv-04402-JAK-PJW Document 69 Filed 04/23/12 Page 1 of 4 Page ID #: 2106

# Exhibit B

AMENDED AND RESTATED
LIMITED PARTNERSHIP AGREEMENT OF
SPRING MOUNTAIN PARTNERS QP I, LP

Dated as of December 31, 2008

**W I T N E S S E T H:**

This Amended and Restated Limited Partnership Agreement (this "Agreement") of Spring Mountain Partners QP I, LP (the "Fund"), a limited partnership formed pursuant to the provisions of the Revised Uniform Limited Partnership Act of the State of Delaware (6 Del. C. § 17-101 et seq.) (the "Act"), dated the date first written above, by and between Spring Mountain Capital G.P., LLC (the "General Partner"), and the other parties who agree to become parties to this Agreement, whether by executing this Agreement or a counterpart hereof, by separate instrument, or otherwise, and hereafter shall be admitted to the Fund as limited partners in accordance with the provisions hereof and whose names and addresses shall upon such admission be added to the books and records of the Fund (each a "Limited Partner" and, collectively, the "Limited Partners", and the Limited Partners together with the General Partner, collectively, the "Partners"). This Agreement amends and restates in its entirety the Limited Partnership Agreement of the Partnership dated as of October 29, 2001.

ARTICLE I

General Provisions

Section 1.01  Fund Name and Address. (a) The name of the Fund is Spring Mountain Partners QP I, LP. Its principal office is located at 450 Park Avenue, 22nd Floor, New York, New York 10022, or at such other location as the General Partner in the future may designate. The General Partner shall promptly notify the Partners of any change in the Fund's address.

(b)  The Registered Agent for the Fund is National Corporate Research, Ltd. The address of the Registered Office of the Fund in the State of Delaware is c/o National Corporate Research, Ltd., 615 South DuPont Highway, Dover, Delaware, Kent County, 19901.

Section 1.02  Fiscal Year. The fiscal year of the Fund (herein called the "fiscal year") shall end on December 31 of each calendar year.

Section 1.03  Liability of Partners. The names of all of the Partners and the amounts of their respective capital commitments (each, a "Capital Commitment") and capital contributions (each, a "Capital Contribution") to the Fund are set forth in the books and records of the Fund at the Fund's principal office (as set forth in Section 1.01) and are hereby incorporated by reference and made a part of this Agreement.

The General Partner shall have unlimited liability for the repayment and discharge of all debts and obligations of the Fund. The Limited Partners shall be liable for the repayment and discharge of all debts and obligations of the Fund attributable to any fiscal year (or relevant

by the General Partner, the Management Company or such Affiliate for any account other than that of the Fund; and

       (iii) where there is a limited supply of a Security, the General Partner and the Management Company will use their best efforts to allocate or rotate investment opportunities in a manner deemed equitable, but the General Partner and Management Company assume no responsibility for equality among all accounts and Partners.

  Section 2.05 <u>Exculpation</u>. The General Partner, Management Company, and any of their respective members, partners, managers, directors, officers, employees, consultants, agents and legal representatives (each, an "Indemnified Party") will not be liable to any Limited Partner or to the Fund for mistakes of judgment or for action or inaction that does not constitute gross negligence, willful misconduct or bad faith, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any broker or agent of the Fund, <u>provided</u> that such broker or agent was selected, engaged or retained by the Fund in accordance with the standard of care set forth above. An Indemnified Party may consult with counsel and accountants in respect of Fund affairs and will be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel or accountants, <u>provided</u> that such counsel or accountants were selected in accordance with the standard of care set forth above.

  The foregoing in this Section 2.05 shall not be construed to relieve an Indemnified Party of any liability to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law (including liability under Federal securities laws which, under certain circumstances, impose liability even on persons acting in good faith), but the foregoing shall be construed to effectuate the provisions of this Section 2.05 to the fullest extent permitted by law.

  Section 2.06 <u>Indemnification</u>. The Fund shall, to the fullest extent permitted by law, indemnify and hold harmless each Indemnified Party from and against any loss or expense suffered or sustained by him/her/it by reason of the fact that he/she/it is or was an Indemnified Party, including, without limitation, any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding, <u>provided</u> that such loss or expense resulted from a mistake of judgment on the part of an Indemnified Party, or from action or inaction that did not constitute gross negligence, willful misconduct or bad faith, or for losses due to the negligence, dishonesty or bad faith of a broker or other agent of an Indemnified Party, <u>provided</u> that such broker or agent was selected, engaged or retained by the Indemnified Party in accordance with the standard of care set forth above. The Fund will, in the sole discretion of the General Partner, advance to any Indemnified Party reasonable attorneys' fees and other costs and expenses incurred in connection with the defense of any action or proceeding which arises out of such conduct. In the event that such an advance is made by the Fund, the Indemnified Party will agree to reimburse the Fund to the extent that it is determined that it was not entitled to indemnification.

  The foregoing in this Section 2.06 shall not be construed to provide an Indemnified Party with indemnification to the extent indemnification may not be provided under

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the date first set forth above.

GENERAL PARTNER:

SPRING MOUNTAIN CAPITAL G.P., LLC

By: _____
   Name: John L. Steffens
   Title: Managing Member

LIMITED PARTNERS:

By: _____
   Name: _____
   Title: _____