UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL R. GOLDENSON, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 10-CV-440 (JAW) |
| ) | |
| v. ) | **DEFENDANTS' REPLY IN SUPPORT** |
| ) | **OF MOTION TO DESIGNATE AN** |
| JOHN L. STEFFENS, et al., ) | **EXPERT OUT OF TIME AND FOR AN** |
| ) | **ORDER REQUIRING PLAINTIFFS TO** |
| Defendants. ) | **PROVIDE ADDITIONAL DISCOVERY** |
| ) | |

Defendants respectfully submit this reply memorandum in further support of their motion to designate an expert out of time and for an order requiring Plaintiffs to provide additional discovery ("Motion" or "Mot.").

**A.  DEFENDANTS SHOULD BE PERMITTED TO DESIGNATE AN EXPERT OUT OF TIME**

**1.  Defendants' Delay Is Substantially Justified**

As discussed in the Motion, Defendants' decision to designate an expert on fiduciary duty is based on two developments that occurred after the March 19 deadline: the introduction of Plaintiffs' loss misallocation theory into the case, and Plaintiffs' belated disclosure of documents relating to two financial trusts ("Trusts" and "Trust Documents").  *See* Mot. at 10-12.  Both developments significantly impact Plaintiffs' breach of fiduciary duty claim and justify Defendants' late designation of an expert.  *See id.* at 11 (discussing Plaintiffs' argument that the "loss misallocation idea . . . goes to breach of fiduciary duty" and the Court's reference to breach of fiduciary duty); *id.* at 12 (discussing effect of Trusts on the importance of the Investment Advisers Act of 1940 ("1940 Act")).

The central premise of Plaintiffs' opposition brief ("Opp."), which they repeat early and often, is that "Defendants have *never* requested the [Trust Documents]." Opp. at 1.[1] This is simply untrue. As explained in the Motion, the Trust Documents were responsive to Defendants' First Request, issued in September 2011. *See* Mot. at 5. Indeed, Plaintiffs themselves acknowledged as much in March 2012, referring to their upcoming production of the Trust Documents as "pursuant to the Defendants' First Request for the Production of Documents." *See* Apr. 25, 2012 Nicholas Decl. (4/25 Decl.), Dkt. No. 114, Ex. G at 4. In an about-face, Plaintiffs now attempt to characterize their production of the Trust Documents as "voluntar[y]" and the documents themselves as "unresponsive." This position is not credible in light of Plaintiffs' prior characterization of that production as "pursuant to" Defendants' First Request. Plaintiffs did not produce the documents on a whim, but because they had to.[2]

Plaintiffs' statements about the proposed testimony of Defendants' expert, James Fanto, are likewise inaccurate. Plaintiffs state that Fanto "does not propose to testify" as to the "misallocation" aspect of their fiduciary duty claim. Opp. Br. at 8. Again, that is simply untrue. Fanto's designation states that he plans to testify as to an Investment Adviser's duties concerning the "fair allocation of investment opportunities . . . and properly calculating the net asset value of the Fund and each Investor's interest in the Fund." Mot., Ex. 1 at ¶2. While Plaintiffs refer dismissively to "the so-called 'misallocation theory of wrongdoing,'" as if it were an invention of Defendants, it was Plaintiffs who made the misallocation theory a central aspect of the case, and asserted to both Defendants and the Court that it affects the fiduciary duty analysis. *See*

---

[1] *See also* Opp. Br. at 2, 3, 4, & 5 (repeatedly asserting that Defendants never requested the Trust Documents).

[2] Plaintiffs' argument that the 1991 trust falls outside the 1996-2009 timeframe of Defendants' first document request is misleading, as that Trust still existed in 1996 and at all times thereafter up until the present even though it was created before 1996.

Mot. at 11. Plaintiffs' complaint that Fanto has "no trusts and estates experience," Opp. at 11, misses the point of his testimony. Fanto is not being asked to testify about trusts and estates planning. As set out in the Motion, Fanto intends to testify as to the scope and content of the fiduciary duties owed by an Investment Adviser under the 1940 Act, in light of (1) the primary role the 1940 Act will now play in the case given Plaintiffs' belated disclosure of their sophisticated financial Trusts, which undermine their common law breach of fiduciary duty claims,[3] and (2) the shape and complexity of the fiduciary duty analysis given the introduction of the misallocation theory.

At bottom, Plaintiffs cannot deny that since the March 19 deadline, they have produced voluminous documents and introduced a complex new theory of liability that significantly affect the fiduciary duty analysis in this case. Defendants' request to designate an expert on fiduciary duty after the deadline is therefore substantially justified.

### 2. Defendants' Designation Of An Expert Out Of Time Will Not Harm Plaintiffs

Even if Defendants' late designation of an expert were not substantially justified – which it is – it should be permitted because Plaintiffs will not be harmed by the delay. *See U.S. Bank Nat'l Assoc. v. Jones*, No. 09-84-P (JHR), 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010) (performing harmlessness analysis after concluding that delay was not substantially justified, and noting that late designation may be substantially justified *or* harmless). As a threshold matter, Plaintiffs have not yet provided the designation of one of *their* misallocation experts, Patrick

---

[3] Plaintiffs suggest that it is "the law of the case" that their common law breach of fiduciary duty claims are colorable, because those claims were not dismissed at the pleadings stage. Opp. at 10. Plaintiffs misconstrue Defendants' argument, which is that the Trust Documents – produced long after the motion to dismiss was decided – undermine the common law claims and thereby shift the emphasis exclusively to the 1940 Act claims. Because the scope of any fiduciary duty owed by any Defendant as an investment adviser is so limited, it is essential that Defendants define the scope of such a duty precisely for the fact-finder.

Conroy.[4]  4/25 Decl., Ex. Q, at ¶3 ("Dr. Conroy's designation will be duly supplemented to specify any and all opinions he may offer as an expert witness …."). They are therefore in no position to claim that Defendants' designation of Fanto, which they will have had many weeks in advance of taking his deposition, is so late is to be prejudicial. *Cf. Bennett v. City of Holyoke*, 362 F.3d 1, 5 (1st Cir. 2004) ("[The excusable neglect analysis] has a significant equitable component . . . .").[5]

Plaintiffs' claims of harm ring hollow even on their own terms. In a convoluted argument, Plaintiffs suggest that "Defendants' Motion – filed on April 25, 2012 . . . came as a complete surprise to the Plaintiffs," Opp. at 12, despite the fact that Defendants had "provide[d] the Plaintiffs with their proposed expert designation" *on April 17*, *id*. at 7, and had previously stated in open Court on April 12 that they intended to "move for leave to designate a fiduciary expert," *id.* Given the facts, Plaintiffs' claim that they were taken by surprise by Defendants' Motion is patently absurd. The representation Plaintiffs appear to be making – that even after receiving Fanto's designation on April 17, they "th[ought] that the Defendants had no intention of designating a fiduciary duty expert" and had "abandoned" their plan to do so – is utterly implausible, and only highlights the absence of any real harm to Plaintiffs from Defendants' designation of an expert out of time. Opp. at 7, 12.

In an effort to come up with a tangible harm, Plaintiffs claim that Laby "did not consider the Defendants' designation" of Fanto before he testified. Opp. at 12. This too rings hollow.

---

[4] The Court should also note that while Plaintiffs' other fiduciary duty expert, Laby, did not address the topic of misallocation in his designation, he did testify on the topic at his deposition, which was more than one week after Defendants served the Fanto Designation on Plaintiffs.

[5] Plaintiffs characterize the designation of their expert Arthur Laby as "track[ing] almost verbatim the allegations in the Plaintiffs' Complaint." Opp. at 8. While Plaintiffs apparently see this as a positive for them, in the present context it is a negative, because they thus concede that Laby's designation was devoid of information other than a repetition of the allegations in the Complaint. Defendants agree with Plaintiffs about the unhelpful nature of Laby's designation, which effectively forced Defendants to depose him without a designation in advance.

4

Plaintiffs admit that they had the designation a full week before Laby's deposition, *id.,* and their claim that "a mere week would not have been a sufficient opportunity to review and digest" Fanto's five-page designation, *id.*, gives Laby shockingly little credit. Plaintiffs seek to rationalize their apparent decision not to show the Fanto designation to Laby by suggesting that they assumed they were "protected from the Defendants' designation precisely because it was filed beyond the time permitted." *Id.* This amounts to an assumption that they would defeat the Motion that Defendants gave them notice of on April 12. If Plaintiffs chose not to have Laby review Fanto's designation because they never considered the possibility that they could lose this Motion, then any harm they suffer will have been self-inflicted.[6]

Finally, Plaintiffs suggest that Defendants' late designation of a single expert will "derail the schedule of this case." Opp. at 14. That suggestion is baseless, as Plaintiffs have had Fanto's designation since April 17 and all that remains is for them to depose him. Their prediction is best understood as a threat to purposefully drag out discovery by designating "supplemental expert[s]" and taking additional discovery of Defendants if Defendants' late designation is permitted. *Id.* at 15. Clearly this would not constitute harm to them.[7]

In sum, Plaintiffs will not be harmed if Defendants are permitted to designate Fanto, and the Court should allow the designation.

---

[6] Plaintiffs make a cryptic reference to the May 9, 2012 conference in connection with their argument that Laby never reviewed Fanto's designation. Opp. at 2. Defendants are unsure what the meaning of the reference is.

[7] Plaintiffs' suggestion that Defendants' late designation of Fanto will delay the case is especially attenuated in juxtaposition with their criticism of Defendants for conducting discovery too "rapid[ly]." Opp. at 2. Plaintiffs appear to argue that Defendants' efficient conduct in discovery was motivated by their desire to prevent Plaintiffs from obtaining evidence, including from J. Ezra Merkin. *Id.* This assertion is at best wholly unsupported. It is also directly undermined by the fact that the evidence Plaintiffs elicited from Merkin at his deposition was favorable to Defendants, especially his testimony that  **REDACTED**

B.  **DEFENDANTS SHOULD BE PERMITTED TO TAKE ADDITIONAL DISCOVERY FROM PLAINTIFFS**

As set out in the Motion, Defendants should be permitted to take additional discovery from Plaintiffs, including re-deposing the Goldensons, for a simple reason: the Trust Documents that Defendants received after the Goldensons' depositions bear directly on their credibility, financial sophistication, and financial means – all important issues in this case. It is vital that Defendants be able to examine the Goldensons about issues relating to these Documents.

Plaintiffs' arguments to the contrary ultimately *support* additional discovery. Plaintiffs highlight the fact that the Goldensons' "finances and personal wealth," including "assets transferred into trusts," were already broached at their depositions. Opp. at 3. But that is precisely why Defendants need to re-depose the Goldensons: their testimony as to important facts could not be properly challenged or developed because Defendants did not yet have the Trust Documents they asked for in the First Request. For example, Mr. Goldenson testified at length about the alleged diminishment of his wealth after the Madoff scandal broke. *See,* REDACTED (Reply Decl., Ex. B). But the Trust Documents show REDACTED. *See, e.g.*, Mot. at 8 (citing Trust Documents attached as exhibits to the Nicholas Declaration). It is essential that Defendants examine Mr. Goldenson about issues relating to the Trust Documents in order to determine how much of his "loss of wealth" actually resulted from the transfer of assets to Trusts benefitting his family. This inquiry goes both to Mr. Goldenson's credibility and financial means.[8] Likewise, it is important for Defendants to examine Mr. Goldenson about the fact that he apparently controls and uses for his own benefit the millions of dollars in value held

---

[8] For example, REDACTED

6

by the 2005 Trust. *See* Mot. at 8-9; *see also* Reply Decl. Ex. C REDACTED

For substantially the same reasons, Defendants must re-depose Suzanne Goldenson. Ms. Goldenson testified that REDACTED

. That representation and others concerning the Goldensons' financial means and transfers of wealth must be tested against the Trust Documents, which depict numerous transfers of great wealth. The documents have already disproven Ms. Goldenson's testimony in at least one basic respect: she testified that the REDACTED

Plaintiffs seek to marginalize the importance of the Trust Documents by suggesting that they do not show financial sophistication on the part of the Goldensons, a key inquiry in the context of fiduciary duty, because they were created by the Goldensons' lawyers. Opp. at 11. Plaintiffs ignore black-letter law that the knowledge of an agent – including a lawyer – is imputed to the principal. *Levin v. Berley*, 728 F.2d 551, 553 (1st Cir. 1984). The Goldensons' Trusts reflect the Goldenson's financial sophistication and are relevant to the fiduciary duty analysis.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their Motion to designate an expert out of time and for an order requiring Plaintiffs to provide additional discovery.

Dated: May 17, 2012
New York, New York

SPEARS & IMES LLP

By: /s/ David Spears
    David Spears

By: /s/ Max Nicholas
    Max Nicholas
    Michelle Skinner
    51 Madison Avenue
    New York, New York 10010
    Telephone: (212) 213-6996

DRUMMOND WOODSUM

By: /s/ James T. Kilbreth
    James T. Kilbreth
    Drummond Woodsum
    84 Marginal Way
    Portland, Maine  04101
    Telephone: (207) 253-0555
    *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Thimi R. Mina
Jay P. McCloskey
Alfred C. Frawley IV
McCloskey, Mina & Cunniff, LLC
12 City Center
Portland, ME 04101

Dated: May 17, 2012                     /s/ Max Nicholas
                                        Max Nicholas