### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **DANIEL R. GOLDENSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **No. 2:10-cv-440-JAW** |
| | ) | |
| **JOHN L. STEFFENS, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

### MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO ALLOW LATE EXPERT DESIGNATION AND FURTHER DISCOVERY

The defendants seek leave to designate an expert out of time and an order requiring the plaintiffs to provide additional discovery, including additional deposition testimony.  *See* Defendants' Motion To Designate an Expert Out of Time and for an Order Requiring Plaintiffs To Provide Additional Discovery ("Motion") (ECF No. 116) at 1.  For the reasons that follow, I grant the motion in part, to the extent that I permit the defendants to re-depose plaintiffs Daniel and Suzanne Goldenson, and otherwise deny it.

### I.  Applicable Legal Standards

In this district, no written discovery motion may be filed without the prior approval of a judicial officer.  *See* Local Rule 26(b).  During an April 12, 2012, teleconference with counsel, I granted leave to file the instant motion.  *See* ECF No. 103 at 5-6.

Federal Rule of Civil Procedure 26 provides, in relevant part, that "a party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence[.]"  Fed. R. Civ. P. 26(a)(2)(A).  "A party must make these disclosures at the times and in the sequence that the court orders."  *Id*. at (a)(2)(C).  If a party's expert disclosure is untimely, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

37(c)(1).  The movant bears the burden of demonstrating that a late expert designation is either substantially justified or harmless.  *See, e.g., United States Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

"The baseline rule is that the required sanction in the ordinary case is mandatory preclusion."  *Harriman v. Hancock County*, 627 F.3d 22, 29 (1st Cir. 2010) (citations and internal punctuation omitted).  However, the court retains discretion to impose other sanctions in lieu of, or in addition to, mandatory preclusion.  *See* Fed. R. Civ. P. 37(c)(1); *see also, e.g., Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77-78 (1st Cir. 2009) ("Preclusion . . . is not a strictly mechanical exercise.  And, in its discretion, the district court may choose a less severe sanction.  Where a district court does opt in favor of preclusion, we review that decision with reference to a host of factors, including: (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects – e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.") (citations and some internal quotation marks omitted).

To the extent that the defendants seek additional discovery from the plaintiffs, they must demonstrate "good cause" to extend the discovery deadline past May 7, 2012, for the purpose of the taking of the requested discovery.  *See* Fed. R. Civ. P. 16(b)(4).[1]  "This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (footnote omitted).

---

[1] The discovery deadline was extended to May 21, 2012, solely for the purpose of the taking of expert depositions. *See* ECF No. 103 at 4.

## II. Discussion

### A.  Request To Designate Expert Out of Time

The defendants' deadline for designating experts expired on March 19, 2012.  *See* ECF No. 79 at 7.  The defendants' counsel first raised with the court the issue of the need for a late expert designation during a teleconference on April 12, 2012, at which time I granted permission to file the instant motion.  *See* ECF No. 103 at 5-6.  On April 17, 2012, the defendants served on the plaintiffs the proposed designation of expert James Fanto, a professor of law at Brooklyn Law School who is an authority on the scope and nature of the fiduciary responsibility of securities professionals under the federal securities laws.  *See* Motion at 10; Plaintiffs' Opposition to Defendants' Motion To Designate an Expert Out of Time ("Opposition") (ECF No. 124) at 7; *see also* Defendants' Expert Witness Designation ("Proposed Fanto Desig.") (ECF No. 116-1), Exh. 1 to Motion.  The instant motion was filed on April 25, 2012.  *See* Motion.  In the motion, as well as during a teleconference on May 9, 2012, the defendants sought expedited briefing of the motion.  *See* Motion at 1; ECF No. 123 at 1-2.  I granted that request.  *See* ECF No. 123 at 3.

### 1.  Substantial Justification

The defendants argue that they demonstrate substantial justification for the late designation on account of two developments that occurred after the expiration of the March 19 deadline: (i) this court's March 22, 2012, ruling, memorialized in a March 28, 2012, report and order, that the plaintiffs would be permitted to obtain discovery with respect to the so-called "misallocation theory of wrongdoing," which the defendants had argued, in a motion for protection, was not adequately pleaded in the complaint, and (ii) the plaintiffs' belated disclosure, on March 28, 2012, of approximately 380 pages of trust-related documents

responsive to the defendants' first request for production of documents ("Defendants' First RFP"), which had been served in September 2011.  *See* Motion at 1, 4-5, 7, 11.

Turning to the first proffered justification, the misallocation theory was hardly new as of March 22.  As the defendants themselves recounted in the motion for a protective order that was the subject of my March 22 ruling, the plaintiffs first articulated this theory in a November 28, 2011, discovery hearing. *See* ECF No. 89 at 2-3.  The subject arose again on December 22, 2011, when the plaintiffs filed a motion for an enlargement of time to designate their experts, in part on the basis of a need to designate an expert on the misallocation theory.  *See id.* at 3; *see also* ECF No. 69 at 3 n.4 (argument by plaintiffs that "Defendants purposefully misallocated and mischaracterized purported Madoff fraud-related losses and 'market losses' in December of 2008 in order [to] favor certain Spring Mountain funds and investors at the expense of others, including the Goldensons").  In an opposition filed on January 4, 2012, the defendants protested that the misallocation theory was nowhere to be found in the plaintiffs' complaint.  *See* ECF No. 73 at 5-6.

During a February 3, 2012, telephonic hearing, I granted in part and denied in part the plaintiffs' motion for enlargement of time, resetting their deadline to designate experts to February 29, 2012, and that of the defendants to March 19, 2012.  *See* ECF No. 79 at 7.  In that context, I noted that, although "counsel for the defendants repeatedly protested the allowance of any discovery or the designation of any expert pertaining to the plaintiffs' theory of misallocation of the Madoff losses among the defendants' funds, . . . [f]or purposes of resolution of the discovery and scheduling issues before me, I found it unnecessary to reach that issue, which I observed should be raised by way of a motion, for example, a motion to strike an expert designation." *Id.* at 7-8 n.2.

As the vehicle to raise their continuing objection to any discovery pertaining to the misallocation theory, the defendants chose the motion for a protective order that was the subject of my March 22 ruling.  That motion was filed on February 28, 2012.  *See* ECF No. 89.  The following day, the plaintiffs served their written designation of four expert witnesses, among them Patrick E. Conroy, Ph.D., an economist whom they retained "to perform a forensic analysis of the Madoff-related losses suffered by Spring Mountain Capital and reported to its limited partners and investors."  Plaintiffs' Expert Witness Designations ("Plaintiffs' Expert Desig.") (ECF No. 118-17), Exh. Q to Declaration of Max Nicholas in Support of Defendants' Motion To Designate an Expert Out of Time and for an Order Requiring Plaintiffs To Provide Additional Discovery ("Nicholas Decl.") (ECF No. 118), at 10-11.  The plaintiffs stated that, owing to nonproduction of certain documents by the defendants, they were unable to provide a complete statement of all of Dr. Conroy's opinions, but would supplement those opinions within a reasonable period of receipt of the discovery that they then were seeking.  *See id*. at 11-12.

Thus, approximately three weeks before their March 19, 2012, deadline for designating experts, the defendants  knew that the plaintiffs had designated an expert to speak to the issue of the misallocation theory and that the court would rule, at their behest, on the question of whether discovery on that theory was allowable for purposes of the plaintiffs' second request for production of documents.  Yet, they neither timely designated Fanto nor sought an extension of their deadline for purposes of making such a designation in the event that the court ruled against them.   In these circumstances, my March 22, 2012, ruling does not provide substantial justification for the late designation of expert Fanto.[2]

---

[2] Nor does the substance of the proposed Fanto designation excuse its tardy proffer.  The defendants wish to designate Fanto to speak, in relevant part, to the issue of fiduciary duties owed by investment advisers pursuant to the Investment Advisers Act of 1940 (the "1940 Act"), including "the fair allocation of investment opportunities (*continued on next page*)

Turning to the second proffered justification, the defendants argue that (i) the newly produced trust documents will almost certainly undermine the plaintiffs' claim that the defendants owed them fiduciary duties under a common-law standard, (ii) Arthur Laby, the plaintiffs' expert on fiduciary duty, commingled the duties owed pursuant to the common law and those owed pursuant to the 1940 Act, and, (iii) hence, it is imperative for the defendants to present the testimony of Fanto, who will carefully distinguish the limited fiduciary duties owed pursuant to the 1940 Act from those owed pursuant to the "no-longer-relevant" common law. *See* Motion at 12; Plaintiffs' Expert Desig. at 1-7.

Yet, as the plaintiffs point out, *see* Opposition at 1, they have claimed a breach of fiduciary duty since they filed their original complaint in this action on October 27, 2010, *see* Complaint and Demand for Jury Trial (ECF No. 1) ¶¶ 122-28, and the defendants have long taken the position that the Goldensons were sophisticated investors to whom no common-law fiduciary duties were owed, *see, e.g.*, Defendants' Motion To Dismiss the Complaint (ECF No. 26) at 24-25.  Moreover, the plaintiffs note that, as early as November 1, 2011, they disclosed documents that placed the defendants on notice of the existence of their personal trusts, *see* Opposition at 2-3 & n.2.[3]  The subject of the existence of at least one Goldenson trust also arose during the depositions of both Daniel and Suzanne Goldenson on November 29 and 30, 2011, and the defendants' counsel questioned Suzanne Goldenson regarding assets transferred to that trust.  *See* Transcript of Videotaped Deposition of Daniel R. Goldenson (ECF No. 125-4), Exh. E

---

among the Fund and the Investment Adviser's other funds, and properly calculating the net asset value of the Fund and each Investor's interest in the Fund."  Proposed Fanto Desig. at 2-3; *see also* Motion at 11-12.  As noted above, the defendants had known for some months that these were potential issues in this case.

[3] The plaintiffs provide, as examples of documents produced as early as November 1, 2011, a page from a project proposal referencing the Goldenson 2005 Special Trust ("2005 Trust"), described as a private family trust, *see* Exh. A (ECF No. 126) to Opposition, and Form 1040, Schedule D, tax returns disclosing capital gains or losses of the 2005 Trust, *see* Exhs. B (ECF No. 125-1) & C (ECF No. 125-2) to Opposition.

to Opposition, at 213-14; Deposition of Suzanne K. Goldenson (ECF No. 125-5), Exh. F to Opposition, at 35-37.

Finally, the defendants knew, as of February 29, 2012, when the plaintiffs served their expert designations, that Laby had "commingled" common-law and 1940 Act duties. Even assuming *arguendo* that the trust documents disclosed on March 28, 2012, strengthened the defendants' hand to the point of rendering it a foregone conclusion that the plaintiffs would be unable to prove that they were investors to whom common-law fiduciary duties were owed – a proposition that the plaintiffs dispute, *see* Opposition at 10-11 – the need to rebut Laby's purportedly confused analysis did not arise *as a result* of that disclosure. That belated disclosure, hence, does not confer substantial justification for the late designation of Fanto.

## 2.   Harmlessness

The defendants next argue that the late designation of Fanto is harmless because (i) Laby received the proposed Fanto designation on April 17, 2012, in advance of his April 25, 2012, deposition, (ii) the plaintiffs had not, as of the date of the filing of the defendants' reply brief in this matter (May 17, 2012), supplemented the designation of Dr. Conroy, their expert on their misallocation theory, and would benefit from having the Fanto designation in advance of that, and (iii) the court had previously extended the discovery deadline for the purpose of taking experts' depositions. *See* Motion at 13; Defendants' Reply in Support of Motion To Designate an Expert Out of Time and for an Order Requiring Plaintiffs To Provide Additional Discovery ("Reply") (ECF No. 128) at 3-4.

The plaintiffs rejoin that they would, indeed, be harmed by the allowance of the Fanto designation in that (i) Laby did not consider that designation in advance of his deposition, (ii) the defendants would gain an unfair tactical advantage in that, unlike the plaintiffs, who were

required to designate experts in the absence of disputed discovery, they will have the benefit of having seen "the end of the play[,]" allowing them to "attempt to explain away all of the evidence that was recently disclosed . . . with the benefit of viewing the Plaintiffs' case as a finished product[,]" (iii) the Goldensons would suffer an intrusion on their privacy interests by virtue of the release of their confidential financial information to third parties, and (iv) the schedule of this case would be derailed.  *See* Opposition at 12-15.

The plaintiffs' first and third arguments are weak.  With respect to the first argument, they state, "as the Court will recall from its May 9, 2012, conference with counsel, the Plaintiffs are expressly protected from the Defendants' designation precisely because it was filed beyond the time permitted."  *Id*. at 12.  Accordingly, they reason, they had no obligation to present the proposed Fanto designation to Laby.  *See id*.  I *do* recall advising counsel that, generally, when a motion to extend time is filed, the filer is protected until the court rules, that is, protected with respect to the deadlines sought to be extended.  However, I *do not* recall giving the plaintiffs any assurance that they were protected with respect to the proposed Fanto designation.  Certainly, no such assurance is memorialized in my report summarizing that teleconference.  *See* ECF No. 123.  In my view, to the extent that the plaintiffs chose not to present that proposed designation, which they received on April 17, 2012, to Laby for purposes of his April 25, 2012, deposition, they did so at their peril.

The plaintiffs further argue, with respect to Laby, that (i) one week would have been an insufficient period of time for him to review and digest the proposed Fanto designation, and (ii) they were "surprised" by the filing of the Motion on April 25, 2012, because of the delay following the April 12, 2012, teleconference permitting it.  *See* Opposition at 12.  No concrete reason is given why Laby could not have reviewed the proposed Fanto designation in the week

prior to his deposition.  To the extent that the Motion surprised the plaintiffs, their surprise was not reasonable.

With respect to the third argument, while the Goldensons do have a privacy interest in their trust documents, it is adequately protected by the consent confidentiality order entered in this case, which prescribes the circumstances under which documents designated as confidential can be shared with third party experts.  *See* Consent Confidentiality Order (ECF No. 58) at 3-4.

Nonetheless, the plaintiffs validly complain that, in the circumstances of this case, a tactical advantage would be conferred by the allowance of the late designation of Fanto.  That is not only a cognizable harm, but also a harm whose avoidance is central to the enforcement of expert designation deadlines.  *See, e.g., Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) ("The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent.  Thus Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion, and thereby potentially deprive a plaintiff of the opportunity to depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-related discovery.") (citations and internal quotation marks omitted).

While this harm might be mitigated, to some extent, by permitting the plaintiffs not only to depose Fanto but also to pursue additional, needed discovery arising from Fanto's deposition, that would require an extension of remaining scheduling order deadlines, the discovery deadline having expired on May 7, 2012, for all purposes except the taking of expert depositions, with respect to which it expired on May 21, 2012.  *See* ECF No. 103 at 4.  Any such impact, in itself, constitutes a harm and weighs against the allowance of the late designation.  *See, e.g., Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003) (listing, as among the "important integers" in the

9

calculus of whether to permit a late expert designation, "an assessment of what the late disclosure portends for the court's docket").[4]

For these reasons, the defendants fall short of demonstrating that the allowance of the late designation of Fanto would be harmless.

### 3.   Equitable Considerations

Mindful that "[p]reclusion . . . is not a strictly mechanical exercise[,]" *Esposito*, 590 F.3d at 77 (citation and internal quotation marks omitted), I have considered whether equitable concerns counsel a lesser sanction than the effective preclusion of Fanto as an expert witness.  I conclude that they do not.  At bottom, the defendants have not shown that Fanto's proposed testimony is of such importance to their case as to warrant consideration of its inclusion despite their lack of a showing of substantial justification or harmlessness.  With respect to the misallocation theory, Fanto proposes merely to testify as to fiduciary duties bearing on the allocation of losses among investors, not on whether there was a breach of any such duty in this case.  *See* Proposed Fanto Desig. at 3.  He expresses no opinion bearing on the trust documents. *See generally id*.  To the extent that Fanto would have challenged the purported blurring by Laby of common-law and 1940 Act standards of fiduciary duty, the defendants remain free to argue that point directly to the court, the ultimate arbiter.  *See, e.g., Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.") (citation and internal quotation marks omitted).

---

[4] While it is true that the defendants filed the Motion on April 25, 2012, approximately two weeks in advance of the expiration of the May 7, 2012, discovery deadline, and sought the Motion's expedited consideration, *see* Motion at 1, they did not file the Motion until nearly two weeks after receiving the court's permission to do so.  This delay also weighs against the grant of the requested relief.

### B.  Request for Additional Discovery

The defendants finally seek additional discovery, as a result of the plaintiffs' tardy disclosure of the trust documents, in the form of (i) evidence relating to life insurance policies purchased by the plaintiffs' life insurance trust, (ii) complete documentary evidence relating to the trusts, (iii) a review of the trust documents by an expert, and opinions on the significance of the trusts for the plaintiffs' sophistication regarding complex financial dealings and investments, (iv) the opportunity to press the plaintiffs in depositions for all relevant details regarding the assets held by these trusts and the possible existence of other trusts that still have not been disclosed, and (v) the opportunity to confront the plaintiffs in depositions as to false statements made regarding their financial status at key times.  *See* Motion at 14.

The plaintiffs counter that the defendants never requested their trust instruments or gift tax returns and that they voluntarily produced the trust documents disclosed on March 28, 2012, in response to the defendants' second set of interrogatories, even though the documents were unresponsive to any of the defendants' discovery demands and contained highly confidential information about the plaintiffs' estate plan.  *See* Opposition at 1, 5.

Nonetheless, as the defendants observe, *see* Reply at 2, the plaintiffs themselves characterized the trust documents as responsive to the Defendants' First RFP, *see* Plaintiffs' Response to Defendants' Second Set of Interrogatories (ECF No. 114-7), Exh. G to Nicholas Decl., at 4 (referring the defendants, in a March 26, 2012, response to an interrogatory regarding transfers of greater than $1,000 to family members or trusts, to "United States Gift (and Generation-Skipping) Tax Returns for 2001-2007 and 2010 that will be produced in a supplemental production pursuant to the Defendants' First Request for the Production of Documents"); Letter dated March 28, 2012, from Alfred C. Frawley IV to James T. Kilbreth

11

(ECF No. 118-8), Exh. H to Nicholas Decl. (describing enclosed CD as containing "the Plaintiffs' Second Supplemental Response to the Defendants' First Request for Production of Documents").[5]

This characterization hardly appears to have been a mistake, the defendants having requested, *inter alia*, by way of their First RFP, all federal, state, and local tax returns filed by the Goldensons for each of the tax years from 1996 through 2009. *See* Defendants' First RFP (ECF No. 118-3), Exh. C to Nicholas Decl., ¶ 6.[6] The Defendants' First RFP was served on or about September 27, 2011. *See id.* at 11. The trust documents were not produced until March 28, 2012, *see* Motion at 7, some six months later. Apart from arguing that these documents never were requested, the plaintiffs offer no explanation for the delay. *See generally* Opposition.

On the other hand, for their part, the defendants did not diligently pursue further trust documents. As discussed above, they were put on notice of the existence of at least one family trust, the 2005 Trust, as early as November 2011, and yet took no steps to compel the production of additional trust-related documents until April 2012, less than one month before the expiration of the discovery deadline.

In the circumstances, and against the backdrop of the contentious discovery history of this case, which has necessitated several scheduling order extensions, I decline to grant the defendants the full measure of relief requested. Specifically, I deny their requests for (i) further written discovery, including evidence relating to life insurance policies purchased by one of the trusts and complete documentary evidence relating to the trusts, and (ii) a review of the trust

---

[5] The defendants represent that the CD contained 555 pages of documents, about 380 pages of which related either to the 2005 Trust or the Goldenson Family Insurance Trust ("Insurance Trust"), created in 1991. *See* Motion at 7. The 380 pages related to the trusts included trust agreements, federal tax returns for the years 2000-07 and 2010, and documents evidencing certain transfers to, and transactions engaged in by, the trusts. *See id.*

[6] "Goldensons" was defined to mean any entity in which Daniel or Suzanne Goldenson had any ownership or beneficial interest of 10 percent or more at any time from January 1, 1996, through December 31, 2009. *See* Defendants' First RFP, Definitions, ¶ 3.

documents by an expert with a view to the expression of opinions on the significance of the trusts to plaintiffs' sophistication regarding complex financial dealings and investments. *See* Motion at 14. To the extent that the defendants wanted this discovery, they could and should have pressed for it shortly after learning, in November 2011, of the existence of at least one of the trusts. *See, e.g., Steir*, 383 F.3d at 12 ("good cause" standard "focuses on the diligence (or lack thereof) of the moving party"); *Small v. General Motors Corp*., Civil No. 05-131-P-H, 2006 WL 3332989, at *5 (D. Me. Nov. 15, 2006) (rec. dec., *aff'd* Feb. 20, 2007) (party's decision to "lie in the weeds" regarding a discovery dispute weighs against grant of requested relief). To permit it now would introduce significant delay, and possibly additional collateral litigation, subsequent to the close of discovery.

That said, I am persuaded that the interests of justice require the reopening of the depositions of Daniel and Suzanne Goldenson, which will have a minimal impact on the orderly progression of further proceedings in this case. The defendants argue persuasively that the tardily disclosed trust documents bear not only on the Goldensons' financial means and financial sophistication but also on their credibility, the Goldensons having made representations concerning their wealth that arguably are called into question by the trust documents. *See* Motion at 3-4, 13-14; Reply at 6-7. The defendants plausibly argue that an assessment of Daniel Goldenson's credibility is critical to a fair outcome of the case, as he is the plaintiffs' only witness to all of the statements and actions by the defendants that the plaintiffs rely upon to establish fraud. *See* Motion at 13. For those reasons, the defendants shall be permitted to re-depose the Goldensons, on the condition that said depositions (i) shall take place on or before June 15, 2012, (ii) shall be confined to the subject matter of the trust documents disclosed to the defendants on March 28, 2012, and (iii) may not exceed a total of three hours in length,

13

excluding time consumed by objections and interruptions, said time to be divided between Daniel and Suzanne Goldenson in whatever manner the defendants see fit.  The parties' discovery deadline is enlarged solely for this purpose; all other remaining scheduling order deadlines shall remain in place.

### III. Conclusion

For the foregoing reasons, the Motion is **GRANTED** in part, to the extent that the defendants are permitted to re-depose the Goldensons in the manner outlined above, and otherwise **DENIED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.*

Dated this 30th day of May, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
