UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL R. GOLDENSON, <br> SUZANNE K. GOLDENSON, <br> SKG PARTNERS, L.P., and <br> SKG GENERAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> JOHN L. STEFFENS, GREGORY P. HO, <br> SPRING MOUNTAIN CAPITAL G.P., LLC, <br> SPRING MOUNTAIN CAPITAL, LP, and <br> SPRING MOUNTAIN CAPITAL, LLC, <br><br> Defendants. | Case No. 10-CV-440 (JAW) |

### DEFENDANTS' PRE-FILING MEMORANDUM
### REGARDING SUMMARY JUDGMENT

Defendants submit this Pre-Filing Memorandum Regarding Summary Judgment pursuant to the Court's Procedural Order dated May 30, 2012.

**(1) BASIS and (2) ISSUES**: Defendants intend to move for summary judgment on all remaining counts in the Complaint.[1]

**Count One: Breach of Fiduciary Duty.** Under both New York law and Maine law, to establish breach of fiduciary duty, a plaintiff must plead, among other things, the existence of a fiduciary duty between the parties. *DDCLAB Ltd. v. E.I. Dupont De Nemours & Co.,* No. 03 Civ. 3654, 2005 WL 425495, at *8 (S.D.N.Y. Feb. 18, 2005); *People's Heritage Sav. Bank v. Recoll Mgmt., Inc.*, 814 F. Supp. 159, 170 (D. Me. 1993). Plaintiffs have adduced no evidence that they placed trust or confidence in Defendants resulting in a superiority of influence over their actions, as

---

[1] Plaintiffs' First Amended Complaint, filed April 21, 2011 ("Complaint" or "Compl."), set forth eleven causes of action. Dkt. 38. On August 4, 2011, the Court dismissed Count Ten, an independent cause of action for punitive damages. Dkt. 45.

required by the common law of both New York and Maine law to establish a fiduciary relationship. *DDCLAB*, 2005 WL 425495 at *8; *People's Heritage Sav. Bank,* 814 F. Supp. at 170.  Plaintiffs cannot base their common law fiduciary duty claim on a close financial or personal relationship with Steffens, as they had neither.  Prior to Mr. Goldenson's December 2001 meeting with Steffens that led to the January 2002 investments in the QP I Fund and Ascot, the Goldensons had only recently developed a "cordial" social relationship with Steffens and his wife and had never had any direct or indirect investment dealings with Steffens, including when he was at Merrill Lynch.  In addition, in late 2001 the Goldensons were extremely wealthy and financially sophisticated.  Mr. Goldenson was a Phi Beta Kappa graduate of Princeton with a major in economics, and he was a very successful entrepreneur.  The Goldensons had more than $12 million in liquid assets and almost no liabilities.  Among other things, with the assistance of a large corporate law firm, they had established a complex financial trust that contained millions of dollars in additional value.

Finally, assuming *arguendo* that one or more Defendants had a fiduciary duty under, *e.g.*, the Investment Advisers Act, any such duty applied only as to Plaintiffs' single investment in the QP I Fund in 2002, and such a duty would not carry over to Plaintiffs' separate investments in Merkin's Ascot Fund.  A fiduciary duty exists only as to matters within the scope of the relationship, and it does not extend to all interactions between the parties.  *See New England Surfaces v. E.I. du Pont de Nemours & Co.*, 546 F.3d 1, 11 (1st Cir. 2008); *All Am. Adjusters, Inc. v. Acceleration Nat'l. Ins. Co.,* No. 96 Civ. 9433, 1997 WL 732445, at *8 (S.D.N.Y. Nov. 25, 1997).  Nor could any such duty, even if it existed, have extended beyond the date of the Goldensons' initial Ascot investment in January 2002, as no Defendant discussed any further investment in Ascot

with Plaintiffs or was even aware of any such investment,[2] and Plaintiffs dealt directly with Ascot in connection with those investments.

**Count Four: Intentional Infliction of Emotional Distress**. Plaintiffs allege that Defendants "have intentionally or recklessly engaged in extreme and outrageous conduct which was intended or substantially certain to inflict severe emotional distress." Compl. ¶ 143. The elements under Maine law are: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Champagne v. Mid-Maine Medical Ctr.*, 711 A.2d 842, 847 (Me. 1998). New York law is similar. *See Sloane v. Kraus*, No. 06 Civ. 5372, 2010 WL 3528886, at *11 (S.D.N.Y. Sept. 3, 2010).

No conduct by any Defendant even comes close to the "extreme and outrageous" standard, much less was any actionable conduct by any Defendant intentional. Similarly, the record forecloses any claim that Plaintiffs suffered severe emotional distress as defined under Maine and New York law. Mr. Goldenson's treating psychiatrist testified only that Mr. Goldenson had suffered "stress" and "upset" from the relevant events; the evidence further shows that Mr. Goldenson has a long history of depression and associated distress that predates by many years the December 2008 disclosures regarding Madoff. Mrs. Goldenson has made no showing at all with regard to severe emotional distress.

---

[2] Plaintiffs chose not to depose Defendants Steffens and Ho. Therefore, factual assertions of Ho and Steffens will be submitted via affidavit for summary judgment purposes.

**Counts Six and Seven: Securities Exchange Act of 1934**. In Count Six, Plaintiffs allege that Defendants violated § 10(b) of the Securities Exchange Act of 1934 ("1934 Act") by making misstatements to Plaintiffs in connection with Plaintiffs' purchases of interests in the QP I Fund and Merkin's Ascot Fund. In Count Seven, Plaintiffs allege control person liability under § 20(a) of the 1934 Act.

Section 10(b) and Rule 10b-5. To prevail on a claim for securities fraud under Rule 10b-5, a plaintiff must establish, among other things, (1) a material misstatement and (2) scienter, or a wrongful state of mind. *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008). Plaintiffs' 10b-5 claims are based on alleged misstatements by Defendants *and* misstatements found in Ascot offering documents. However, Defendants played no role in the creation or dissemination of any Ascot offering document, and a Defendant cannot be liable under Rule 10b-5 based on misstatements made by third parties. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 191 (1994).

Plaintiffs' claims as to alleged misstatements by Defendants also fail. First, no Defendant acted with scienter, and Plaintiffs have adduced no evidence to the contrary. Defendants believed in good faith that everything they said to Plaintiffs regarding Merkin or Ascot was true and they therefore lacked the intent to deceive, as evidenced by the fact that Defendants lost substantial sums on their own investments in the Ascot Fund.

Second, Plaintiffs have failed to establish materiality. "An omitted fact is material if there is a substantial likelihood that under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable [person]." *Xaphes v. Merrill Lynch, Pierce, Fenner & Smith*, *Inc.* 632 F. Supp. 471, 490 (D. Me. 1986). There is no evidence that a disclosure to

Plaintiffs prior to December 2008 that the Ascot Fund had invested some or all of its investors' money with Madoff would have assumed any significance in Plaintiffs' deliberations. Indeed, Merkin testified at his deposition that he personally described Madoff's role in Ascot to Mr. Goldenson.

Finally, Plaintiffs' 10b-5 claims relating to their January 2002 purchases of Spring Mountain's QP I Fund ($2 million) and Merkin's Ascot Fund ($2.25 million), and their September 2002 purchase of the Ascot Fund ($250,000), are untimely because those purchases were made prior to October 27, 2005, which was five years before the Complaint was filed. A private right of action that involves a claim of fraud under the federal securities laws must be brought no later than "5 years after such violation." 28 U.S.C. § 1658(b). Under *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 746-47 (1975), only a purchase or a sale of a security is actionable under Rule 10b-5, and the statute of limitations starts to run from the date of the purchase or sale. *See, e.g., GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 332 (S.D.N.Y. 2008).

Section 20(a). Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable" under Rule 10b-5 "shall also be liable jointly and severally with…such controlled person." "The plain terms of section 20(a) indicate that it only creates liability derivative of an underlying securities violation" by the controlled person or entity, and in the absence of an "underlying 10b-5 violation," a "claim [under §20(a)] must fail." *ACA*, 512 F.3d at 67-68. "[T]o meet the control element, the alleged controlling person must not only have the general power to control the [person primarily liable], but must also actually exercise control over the [person]." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002). Even if Plaintiffs had adequately

established an underlying violation, there are no record facts sufficient to establish control on the part of any Defendant over any other Defendant or over Merkin. Nor is there any evidence that any Defendant actually exercised such power.

**Counts Two, Eight, and Nine: Common Law Fraud and Maine Securities Fraud**. Plaintiffs' claims of common law fraud and Maine securities fraud are variations on their 10b-5 claims. The elements of common law fraud in both New York and Maine are largely the same as those of a Rule 10b-5 claim, *see In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010); *Bailey v. Linsco/Private Ledger Corp.*, 136 F.R.D. 11, 14-15 (D. Me. 1991), and the Maine Uniform Securities Act requires "a device, scheme or artifice to defraud." Accordingly, given that Plaintiffs cannot establish fraud under the federal securities laws, these claims also fail.

**Counts Three and Five: Aiding and Abetting and Civil Conspiracy**. Under New York and Maine law, both aiding and abetting and civil conspiracy claims are derivative claims; that is, in the absence of an underlying tort claim, aiding and abetting and civil conspiracy claims must fail. *See Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 708 A.2d 283, 286 (Me. 1998); *Mortg. Solutions of Maine, Inc. v. Keniston*, No. 07 Civ. 12, 2009 WL 6962573 (Me. Super. Ct. Sept. 25, 2009); *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. 1986); *Dickinson v. Igoni*, 908 N.Y.S.2d 85, 88 (N.Y. App. Div. 2010). Because Plaintiffs cannot establish breach of fiduciary duty, common law fraud, or intentional infliction of emotional distress, Counts Three and Five must also fail.

**Count Eleven: Constructive Trust**. Count Eleven seeks the "Maine equitable remedy" of a constructive trust, based on the unjust enrichment Defendants allegedly gained through their

6

breach of fiduciary duties owed to plaintiffs.  As discussed above, the record fails to establish the existence of any fiduciary duty owed to Plaintiffs by any Defendant.  In light of this failure, Plaintiffs' constructive trust claim must also fail.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F. Supp. 2d 131, 161 (D. Me. 2006).

**(3) ESTIMATED MEMORANDUM LENGTH:**  Given that Defendants intend to move on all ten remaining counts, and taking into account the high volume of discovery in this case to date, Defendants anticipate that the Motion for Summary Judgment will be 40 pages in length.

**(4) ESTIMATED FACTUAL STATEMENT LENGTH:**  Given that Defendants intend to move on all ten remaining counts, and taking into account the high volume of discovery in this case to date, Defendants anticipate that the Statement of Material Facts will include approximately 200 statements of fact.

**(5) ESTIMATED RECORD:**  Defendants anticipate that in support of their motion they will file excerpts from deposition transcripts, deposition exhibits, affidavits and/or declarations, answers to interrogatories, and other materials generated in discovery.  Defendants anticipate that these materials will be approximately 250 pages in length.

Dated: June 6, 2012
New York, New York

          Respectfully submitted,

          SPEARS & IMES LLP

      By: /s/ David Spears
         David Spears

      By: /s/ Michelle Skinner
         Michelle Skinner
         Max Nicholas
         51 Madison Avenue
         New York, New York 10010
         Telephone: (212) 213-6996

          DRUMMOND WOODSUM

      By: /s/ James T. Kilbreth
         James T. Kilbreth
         Drummond Woodsum
         84 Marginal Way
         Portland, Maine 04101
         Telephone (207) 253-0555

         *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Thimi R. Mina
>Jay P. McCloskey
>Alfred Frawley
>McCloskey, Mina & Cunniff, LLC
>12 City Center
>Portland, ME 04101

Dated: June 6, 2012                                  /s/ Michelle Skinner
                                                                  Michelle Skinner
                                                                  51 Madison Avenue
                                                                  New York, New York 10010
                                                                  (212) 213-6996
                                                                  mskinner@spearsimes.com