UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **DANIEL R. GOLDENSON,** et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Docket No. 2:10-CV-440-JAW |
| ) | |
| **JOHN L. STEFFENS,** et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' APPEAL OF THE MAGISTRATE JUDGE'S MEMORANDUM
DECISION ON PLAINTIFFS' MOTION TO COMPEL**

**COME NOW** the Plaintiffs, by and through their undersigned attorneys, and, pursuant to Fed. R. Civ. P. 72(a) and D. Me. Local Rule 72.1, hereby appeal the Magistrate Judge's May 31, 2012 Memorandum Decision on the Plaintiffs' Motion to Compel (Docket No. 137) (the "Magistrate Judge's Decision"). The Plaintiffs respectfully submit that the Magistrate Judge's Decision denying the Plaintiffs' Motion to Compel the Production of Documents (Docket No. 104) (the "Plaintiffs' Motion") from Simpson, Thacher & Bartlett, LLP ("STB") is clearly erroneous and contrary to law for the following reasons:

> 1. The Magistrate Judge incorrectly ruled that the Plaintiffs waived their rights to argue: i) that the Defendants did not meet their burden to prove that the work product doctrine applied to the requested documents; and ii) that the Defendants' allocation of legal fees to investors supports piercing the attorney-client privilege;

> 2. The Magistrate Judge did not hold the Defendants to the required burden of proof with respect to the protections they claimed under the attorney-client privilege and the work product doctrine;

> 3. The Magistrate Judge incorrectly ruled that a limited partner seeking to use the fiduciary exception to pierce the attorney-client privilege must show good cause under *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

**I.      FACTUAL BACKGROUND**

Because the Magistrate Judge's Decision comprehensively details the relevant facts, the

Plaintiffs only summarize the record here:

On December 15, 2008, the Defendants informed their partners in Spring Mountain Partners QP I, LP (the "QP I Fund") – including the Plaintiffs – that a substantial portion of their investments were lost in Bernard Madoff's now infamous Ponzi scheme. As part of their commitment to "continue to act in your best interests during this trying time," *see Defs.' Dec. 12, 2008 Ltr. to Pls.*, *Pls.' Mot.* at Ex. A, the Defendants advised their partners of the following:

> Since the announcement of the Madoff Securities fraud, we have taken affirmative steps to protect our interests. We have retained Simpson, Thatcher and Bartlett, LLP to provide us with legal advice concerning all transactional, structural, regulatory and litigation issues that may arise in connection with this matter. Simpson Thatcher is one of the nation's most highly regarded and sophisticated law firms. Our team at Simpson Thatcher consists of attorneys with expertise in advising victims of financial fraud, working with regulatory and criminal authorities in connection with ongoing investigations, and analyzing all aspects of investment structures such as ours, in order to maximize their stability and prospect for future success.

*Defs.' Dec. 15, 2008 Ltr. to Pls.*, *Pls' Mot.* at Ex. B. As the Plaintiffs reasonably believed, the Defendants retained STB in furtherance of their responsibilities "as fiduciaries of the assets that you have placed under our care." *Defs.' Jan. 7, 2009 Ltr. to Pls.* at 3, *Pls.' Mot.* at Ex. D. Given the Defendants' assurances that "Spring Mountain Capital's partners and employees will share the outcome with you – both as stewards of your money and as one of the largest investor groups in the investment vehicles we have created [– and w]e will continue to put our investors' best interests first," *see Defs.' Dec. 22, 2008 Ltr. to Pls.* at 4, *Pls.' Mot.* at Ex. C, the Plaintiffs took comfort in the Defendants' vow to protect their mutual interests.

The Plaintiffs and their fellow investors paid dearly for STB's services when the Defendants charged STB's legal fees directly to them. *See Pls.' Reply to Defs.' Opp. to Pls.' Mot. to Compel* (Docket No. 110) (the "Plaintiffs' Reply") at Exs. D (Memo on legal invoices from the Defendants' auditor), H (E-mail from STB to Defendants' general counsel) & I (STB's

invoices charged to the QP I Fund). Although the Defendants publicly proclaimed that they had retained STB to protect the interests of their investors, as it turned out, the Defendants likely retained STB to protect their *own* personal interests in connection with inquiries from the United States Attorney's Office, the Office of the New York Attorney General, the Securities and Exchange Commission and the Yeshiva University.[1]  *See generally Portions of STB's Billing Records for Spring Mountain*, *Pls.' Reply* at Ex. G.  In fact, STB admittedly represents the Defendants in connection *with this very case.  See Decl. of James Kreissman, Esq., Defs.' Opp. to Pls.' Mot. to Compel* at Ex. B (Docket No. 109) (the "Defendants' Opposition"); *Pls.' Reply* at Ex. K (E-mail from STB to Plaintiffs' counsel).

The Defendants' fiduciary relationship with the Plaintiffs – and the Defendants' abuse of this relationship – allows the Plaintiffs to pierce the privilege under the so-called *Garner* doctrine.[2]  In their Motion, the Plaintiffs sought to compel communications relating to STB's provision of Madoff-related legal services to the Defendants, the QP I Fund and/or any general partner, manager, member or employee thereof.  The Plaintiffs did not seek attorney work product.  The Magistrate Judge denied the Plaintiffs' Motion, and this Appeal follows.

## II.   STANDARD OF REVIEW

A District Judge "must consider timely objections and modify or set aside any part of the [Magistrate Judge's] order [on a non-dispositive matter] that is clearly erroneous or is contrary to law."[3]  Fed. R. Civ. P. 72(a).  Under Rule 72(a)'s "clearly erroneous" prong, the Court "must

---

[1] Defendant Steffens and J. Ezra Merkin were both members of the Yeshiva University Investment Committee, which suffered multi-million dollar Madoff losses.

[2] Under the *Garner* doctrine, "[w]hen a fiduciary retains an attorney to advise him in the exercise of his fiduciary responsibilities, his communications with that attorney are not absolutely protected from inquiry by the [fiduciary's] beneficiaries." *Lawrence v. Cohn*, 2002 WL 109530, at *3 (S.D.N.Y. Jan. 25, 2002).

[3] The Magistrate Judge's Decision did not give notice that appeals must be filed pursuant to Fed. R. Civ. P. 72(a).  It only gave notice that objections must be filed pursuant to 28 U.S.C. § 636(b)(1)(B).  *See Magistrate Judge's*

accept the [Magistrate Judge's] findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the Court] form[s] a strong, unyielding belief that a mistake has been made." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (internal quotation marks and citation omitted). But when "review of a non-dispositive motion by a District Judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard" with "no practical difference" to *de novo* review. *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (internal citations omitted).

### III.  ARGUMENT

**A.  *The Magistrate Judge Committed Clear Error When He Found that the Plaintiffs Waived their Rights to Argue the Defendants' Burden of Proof Under the Work Product Doctrine and the Defendants' Allocation of Legal Fees to Their Investors Under the Fiduciary Exception to the Attorney-Client Privilege.***

Citing *Kenney v. Head*, 670 F.3d 354, 359 (1st Cir. 2012), the Magistrate Judge ruled that the Plaintiffs waived or forfeited their arguments on the subjects of the work product doctrine[4] and the Defendants' allocation of legal fees to their investors because their positions "could and should have been raised in their motion." *Magistrate Judge's Order* at 16 n.4, 29 n.10. The Magistrate Judge's Decision, however, is inherently inconsistent: on the one hand, he foreclosed the Plaintiffs from replying to new matter raised for the first time in the Defendants' Opposition; on the other hand, the Plaintiffs' Reply was confined to these very subjects as a matter of procedural law. D. Me. Local R. 7(c). Because the Plaintiffs addressed these subjects in

---

*Decision* at 35. The Plaintiffs assume this notice referred to the portion of the Magistrate Judge's Decision denying the Defendants' Motion for Sanctions and an Award of Costs (Docket No. 136) – a Recommended Decision – and not to the portion addressing the Plaintiffs' Motion, a Memorandum Decision (Docket No. 137).

[4] The Magistrate Judge varyingly described the Plaintiffs as having "waived" or "forfeited" this argument. *Compare Magistrate Judge's Decision* at 16 n.4 (Plaintiffs "waived" their work product argument) *with id.* at 22 n.19 (Plaintiffs' "forfeited" their work product argument). The distinction is important: "The failure of counsel to have informed the trial court of the correct evidentiary theory under which evidence is sought to be admitted is ordinarily a waiver of the right to argue that theory on appeal . . . . In exceptional circumstances, such a failure might conceivably amount to a forfeiture rather than a waiver, reviewable on appeal for plain error." *United States v. DeSimone*, 488 F.3d 561, 570 (1st Cir. 2007) (citation omitted).

"replying to new matter raised in" the Defendants' Opposition, *see id.*, their exclusion by the Magistrate Judge is clear error.

After the Plaintiffs stated in the course of subpoena enforcement proceedings in the Southern District of New York that they did not seek attorney work product based on the undisputed maxim that the *Garner* doctrine "does not extend" to such materials, *see Magistrate Judge's Decision* at 30 & n.11, the Defendants took advantage of the Plaintiffs' concession in their Opposition when they argued that *all* of the requested documents were work product and, as such, the doctrine "independently protects STB's communications with Defendants." *Defs.' Opp.* at 4. The Plaintiffs had the right and obligation to reply to this improbable claim by arguing that the Defendants had not met their burden to prove that the doctrine categorically applied to *all* (or even *any*) of these materials.[5] If the Magistrate Judge's Decision is correct, parties opposing a motion can simply raise defenses that are outside the scope of the relief requested and foreclose the movant from responding.[6]

Similarly, the Plaintiffs raised the fact of the Defendants' allocation of legal fees to their investors in response to the Defendants' claims that the Plaintiffs had not shown the mutuality of interests necessary to establish the application of the fiduciary exception. When the Defendants claimed that the Plaintiffs' "interests diverged from the Defendants' in December 2008, at the time STB was retained," the Plaintiffs responded with evidence directly contradicting this premise. *Compare id.* at 6-9 *with Pls.' Reply* at 5-7. To not consider evidence offered to rebut conclusory statements made by the Defendants' general counsel in a self-serving affidavit weighs against the "fairness, integrity and public reputation" of the Magistrate Judge's Decision.

---

[5] The Plaintiffs *never* argued that they were entitled to work product materials, only that the Defendants had not met their burden of proof to defend the withholding of *every* requested document on this ground.

[6] The Plaintiffs did not address the work product doctrine in their Motion both because they did not request these materials and because they recognized that the fiduciary exception does not apply to them.

*See Kenney*, 670 F.3d at 359 (citation omitted).

### B. The Magistrate Judge's Ruling that the Defendants Did Not Have to Meet Their Burden With Respect to the Attorney-Client Privilege is Contrary to Law.

The Magistrate Judge's Decision dispensed with the burden of proof this Circuit requires of litigants who wish to withhold discovery under a claim of attorney-client privilege. Citing no legal authority, the Magistrate Judge allowed the Defendants to escape their burden of proof by ruling that the Plaintiffs, "[b]y definition, [] seek documents shielded by the attorney-client privilege." *Magistrate's Decision* at 22. Because the attorney-client privilege "is not limitless" or summarily established under *any* circumstance, however, *see In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp)*, 348 F.3d 16, 22 (1st Cir. 2003), the Plaintiffs respectfully appeal this ruling as contrary to well-settled law.[7]

In this Circuit, "[i]t is clear beyond hope of contradiction that the party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived." *In re Grand Jury Subpoena (Mr. S)*, 662 F.3d 65, 71 (1st Cir. 2011). "A failure to satisfy any one of the enumerated elements defeats the claim of privilege." *Id.* A party seeking to invoke the privilege, therefore, must meet a specific burden of proof with respect to each of the following elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Id.* (citations omitted).

The Plaintiffs concede that their request, by definition, sought documents satisfying elements (1) through (3). They do not, however, make the same concession with respect to

---

[7] The Plaintiffs also respectfully appeal the Magistrate Judge's similar ruling that the Defendants were not required to meet their burden with respect to the work product doctrine. *See Magistrate Judge's Decision* at 22 n.9.

6

elements (4) through (8). Certainly, communications depicting the rendition of legal services *can* be privileged, but the question presented to the Magistrate Judge was whether or not the Defendants met their burden of proof to show that the *specific* communications requested are *in fact* privileged with respect to these *specific* parties. This question required the Magistrate Judge to make a fact-intensive inquiry into the additional elements. He did not.

For one, the Magistrate Judge did not determine the identity of STB's client. The Plaintiffs specifically asked for communications between STB and Spring Mountain Capital, LLC, Spring Mountain Capital, LP, Spring Mountain Capital GP, LLC, Spring Mountain Partners QP I, LP and any employee, partner, manager or member thereof, including Defendants Steffens and Ho and Mr. Merkin. *Magistrate Judge's Decision* at 15. The Magistrate Judge merely found that STB represented various "Spring Mountain entities." *Id.* at 20.[8] This finding is insufficient under established law, as the identity of STB's client weighs heavily on whether the Defendants can establish the existence of the privilege at all. If, for example, STB only represented the various Spring Mountain funds – say in connection with claims against Merkin or Madoff – conversations between STB and Defendant Steffens concerning possible claims against Spring Mountain Capital, LP – the investment adviser to the QP I Fund – would not be privileged because the funds, not the investment adviser, would be STB's clients. Similarly, if STB communicated with Defendant Steffens in his capacity as a witness with personal knowledge of events forming the basis for claims brought by the Office of the New York Attorney General against Mr. Merkin, these communications would not be privileged if STB's only client was Spring Mountain Capital, LP. The permutations are endless, and any finding of

---

[8] The Defendants gave a similar answer in response to the Plaintiffs' Second Set of Interrogatories. Because of the lurking conflicts of interests, the Defendants refusal to even identify their client is telling, and the Plaintiffs are entitled to discover this information. *See, e.g.*, *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 101 (S.D.N.Y. 2009) ("In general, the 'fact of retainer [and] identity of the client' are not privileged, because they do not qualify as 'confidential communications' made for the purpose of securing legal advice").

privilege depended on specific fact-finding as to who are and who are not the clients. The Magistrate Judge did not make this threshold determination.

Second, the law required the Magistrate Judge to find that neither the Defendants nor STB waived the privilege as a consequence of disclosures to non-parties to the relationship. Possible waivers could have occurred in the Defendants' and/or STB's discussions with 1) attorneys for Mr. Merkin; 2) the Office of the New York Attorney General; 3) the United States Attorney's Office; 4) the Securities and Exchange Commission; 5) Rothstein, Kass & Company, P.C., their independent auditor;[9] 6) the Securities Investor Protection Corporation; or 7) the Plaintiffs or other third parties.[10] In fact, if the Defendants discussed Madoff-related matters *within* the scope of STB's engagement with members, partners or employees of entities that were *not* STB's clients, the Defendants may have waived the privilege as well.[11] These opportunities for waiver are exactly why the "party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication *and has not been waived*." *In re Grand Jury Subpoena (Mr. S)*, 662 F.3d at 71 (emphasis in original).

There are also collateral issues associated with the Magistrate Judge's Decision. For one, after conceding the possibility that "some small quantity of responsive documents might be unprotected," the matter ended without resolution. *Magistrate Judge's Decision* at 22. The Plaintiffs duly requested and are entitled to these documents. Second, the proper scope of any

---

[9] The "[d]isclosure of documents to an outside accountant destroys the confidentiality seal required of communications protected by the attorney-client privilege, notwithstanding that the federal securities laws require an independent audit." *In re Pfizer Inc. Securities Litigation*, 1993 WL 561125, at *7 (S.D.N.Y. Dec. 23, 1993).

[10] For example, the Defendants objected to the Plaintiffs' request for these documents "to the extent that it calls for the production of documents already produced by Defendants or third parties in this action." *Defs.' Resps. to Pls.' 2nd Doc. Request*, *Pls.' Mot.* at Ex. G.

[11] For communications made to an employee "who, for one reason or another, is not held to be within the corporate privilege, the communication is like that of a non-employee witness and can only be protected from discovery by the work-product rule." *In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979).

privilege claimed will be an important issue at trial, as the Plaintiffs will be entitled to question STB and/or the Defendants on matters that the Court finds are not within the scope of the privilege. By failing to properly define the Defendants' relationship with STB, the Magistrate Judge effectively foreclosed the Plaintiffs from discovering duly requested *non-privileged* communications as well as privileged ones.

       ***C.    The Magistrate Judge's Ruling that the Plaintiffs Must Show Good Cause to Pierce the Attorney-Client Privilege is Contrary to Law.***

In denying the Plaintiffs' Motion, the Magistrate Judge broadly ruled that parties to a limited partnership who seek to pierce the attorney-client privilege under its fiduciary exception must show good cause. *See Magistrate Judge's Decision* at 26-27 (relying on *Garner*). Because the instant case is not analogous to the shareholder-derivative action in *Garner*, whereby the "antagonism between the derivative plaintiff and those who really run (i.e. are) the corporation is a common phenomenon," this ruling was contrary to the "established law that the good-cause test is inapplicable beyond the factual context presented in *Garner*." *Lawrence*, 2002 WL 109530, at **5 & n.4 (no good cause required in the estate beneficiary context) (citation omitted); *Abbot v. Equity Group*, 1988 WL 86826, at **3-4 (E.D.L.A. Aug. 10, 1988) ("Partners therefore need not establish 'cause' to discover privileged communications of an attorney in matters in which the partnership, of which they are members, is the client"); *Solis v. Food Employees Labor Relations Ass'n*, 644 F.3d 221, 224-29 (4th Cir. 2011) (good cause not required for ERISA action brought in connection with investments in Madoff); *Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 326 (S.D.N.Y. 1991) ("common-law principles governing required disclosure of trustee communications do not impose a 'good cause' limitation on the beneficiary's access to this type of information").

The core premise underlying these cases is that, because fiduciaries are held to an

increased standard of loyalty – whether they are partners, trustees, executors, or members of a closely-held corporation – they are not permitted to shield their conflicts of interest by hiding behind the attorney-client privilege. *See Valente v. Pepsico*, 68 F.R.D. 361, 369-70 & n.16 (D. Del. 1975) ("[W]here a fiduciary represents conflicting interests, particularly where one of those interests is its own, the only purpose to be served by the use of the privilege to withhold information from those to whom the fiduciary obligation runs is fraud"). In this case, as with the cases cited above, "[w]here the fiduciary has conflicting interests of its own, to allow the attorney-client privilege to block access to the information and bases of its decisions as to the persons to whom the obligation is owed would allow the perpetration of frauds." *Id.* Requiring good cause in the shareholder-derivative context – where a decreased standard of loyalty applies due to the conflicts of interests inherent in corporate actions involving thousands of shareholders with varying rights to vote, appoint board members, obtain preferences, share in dividends, exercise options, etc. – is sensible. However, in the partnership context – where "[n]ot honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior," *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545 (1928) (Cardozo, C.J) – a requirement of a good cause is not.

**WHEREFORE**, the Plaintiffs respectfully request that the Court set aside the Magistrate Judge's Decision on the Plaintiffs' Motion to Compel (Docket No. 137) and grant the Plaintiffs' Motion Compel the Production of Documents (Docket No. 104).

Dated at Portland, Maine this 14th day of June, 2012.

/s/    Jay P. McCloskey_____
       Jay P. McCloskey

/s/    Thimi R. Mina_____
       Thimi R. Mina

      /s/    <u>Alfred C. Frawley IV</u>
           Alfred C. Frawley IV

Attorneys for the Plaintiffs
MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center
Portland, Maine 04101
(207) 772-6805

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Docket No. 2:10-CV-440-JAW |
| | ) |
| **JOHN L. STEFFENS,** et al. | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFF'S CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2012, I have electronically filed the foregoing **PLAINTIFFS' APPEAL OF THE MAGISTRATE JUDGE'S MEMORANDUM DECISION ON PLAINTIFFS' MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

James T. Kilbreth, Esquire
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way Number 600
Portland, ME 04101

David Spears, Esquire (*pro hac vice*)
Michelle Skinner, Esquire (*pro hac vice*)
Max Nicholas, Esquire (*pro hac vice*)
SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010

Dated this 14th day of June, 2012.

/s/   Alfred C. Frawley IV
Alfred C. Frawley IV

MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center
Portland, Maine 04101
(207) 772-6805
afrawley@lawmmc.com