## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Docket No. 2:10-CV-440-JAW |
| | ) | |
| **JOHN L. STEFFENS,** et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SUPPLEMENTAL EXPERT DESIGNATION OF DR. PATRICK E. CONROY

**COME NOW** the Plaintiffs, by and through their undersigned attorneys, in opposition to the Defendants' Motion to Strike the Plaintiffs' Supplemental Expert Designation of Dr. Patrick E. Conroy as Untimely (Docket No. 141) (the "Defendants' Motion").  The Plaintiffs oppose the Defendants' Motion because 1) it seeks to prevent Dr. Conroy from offering opinions in support of any opposition to a motion for summary judgment and/or from testifying as an expert witness at trial, and 2) it requests additional discovery beyond the taking of Dr. Conroy's deposition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 29, 2012, the Plaintiffs duly designated Dr. Conroy as an expert witness retained "to perform a forensic analysis of the Madoff-related losses suffered by Spring Mountain Capital and reported to its limited partners and investors."  *Pls.' Expert Witness Designations* at 11 ("Dr. Conroy's Designation"), attached to *Defs.' Mot.* at Ex. A.  As Dr. Conroy stated, "[o]f particular importance to my opinions and data presentations in the instant matter are the so-called Preliminary Performance Estimates ("PPEs") and "Flash" Reports disseminated to investors in the various Spring Mountain funds."  *See Aff. Of Patrick E. Conroy, Ph.D.* ¶ 2 ("Conroy Affidavit"), attached hereto as Exhibit A; *Dr. Conroy's Designation* at 11

("Upon his review of the true and complete reports and account statements received or prepared by Spring Mountain referencing the performance of all of its funds during the relevant time period . . . Dr. Conroy will schedule the Spring Mountain funds' relative historic performance and their positions with Merkin"); *Pls.' Supp. to the Expert Witness Designation of Patrick E. Conroy, Ph.D* ("Dr. Conroy's Supplementation"), attached to *Defs.' Mot.* at Ex. B (charting and opining on the relative historic performance of the Spring Mountain funds based on the PPEs and "Flash" Reports).  Because at the time of Dr. Conroy's Designation the Defendants had not produced many of the PPEs, "Flash" Reports, Estimated Partnership Valuation/Returns ("EPV/Rs"), Assets Under Management ("AUM") Reports or other data that Dr. Conroy needed to compare the Defendants' disclosures to their investors' actual losses, his Designation informed the Defendants that "[w]ithin a reasonable period of time following his receipt of the discovery currently being sought . . . , Dr. Conroy's designation will be duly supplemented to specify any and all opinions he may offer as  an expert witness, including the disclosure of any schedules or data he assembles relating to Spring Mountain's actual and reported Madoff-related losses."  *Dr. Conroy's Designation* at 11-12.[1]

It is incontrovertible that the Defendants have known since the end of February that Dr. Conroy needed this data to supplement his Designation.  The Defendants, however, chose to engage in a months-long debate over the production of these PPEs, "Flash" Reports, EPV/Rs and AUMs rather than work with the Plaintiffs to supplement it.  First, the Defendants simply refused to produce this data.  *See Defs.' Resp. to Pls.' Mot. for Enlargement of Time Permitted for Designation of Expert Witnesses* at 4 (Docket No. 73) (saying these reports were non-responsive).  The Court then ordered the Defendants to produce unredacted PPEs and "Flash"

---

[1] The Plaintiffs do not dispute that the Defendants produced evidence of the Madoff losses they *reported* to their investors as early as October.  That it beside the point.  What Dr. Conroy needed for his testimony was documentary evidence of the *actual* losses.  *Compare Defs.' Mot.* at 4 n.2 *with Conroy's Designation* at 11.

Reports for *all* months between 2007 and 2008 by February 15, 2012.  *See Report of Hearing &*
*Order Re: Discovery & Scheduling* at 3-5 (Docket No. 79) (the "February 6th Order").  The
Court reiterated this command on February 13, 2012.  *See Order Supplementing Report of*
*Hearing & Order* (Docket No. 83).  In response, the Defendants only produced unredacted PPEs
and "Flash" Reports for months that previously had been produced.  *See Declaration of Alfred C.*
*Frawley IV* ¶ 3, attached hereto as Exhibit B ("Frawley Declaration").

The Plaintiffs requested these documents a *second* time in their February 9, 2012 Second
Request for the Production of Documents.  *See id.* ¶ 2; *Pls.' 2nd Document Request*, attached
hereto as Exhibit C.  On February 28, 2012, the day before the Plaintiffs' expert designation
deadline, the Defendants moved for protection from this Request.  *See Defs.' Mot. for a*
*Protective Order Relating to Pls.' 2nd Document Request* (Docket No. 89).  On March 22, 2012,
the Court denied this motion and ordered the Defendants to produce these documents by April
23, 2012.  *See Report of Hearing & Order Re: Discovery, Scheduling Motions* at 7-8 (Docket
No. 98) (the "March 22nd Order").  The Plaintiffs then sent the Defendants a list of the *precise*
PPEs and "Flash" Reports that were still missing.  *Frawley Decl.* ¶ 6; *E-Mail from Frawley to*
*Kilbreth*, attached hereto as Exhibit D.  Almost seven months after the Plaintiffs' First Document
Request and two months after the Court first ordered them to be produced, the Defendants finally
produced these missing documents on April 24th.  *See Frawley Decl.* ¶ 12.[2]

On April 26, 2012, along with other relevant documents recently received, *see id.* ¶¶ 8-
13, the Plaintiffs transmitted these PPEs and "Flash" Reports to Dr. Conroy.  *See id.* ¶ 13.  On

---

[2] Moreover, the deadline for the Defendants to complete production under RFP Nos. 15-24 of the Plaintiffs First
Request was April 20, 2012.  *See March 22nd Order* at 5.  The Defendants produced these documents, which
included 62 pages relating to management fees collected by the Defendants, on April 23, 2012.  *See Frawley Decl.* ¶
11.  The Defendants belittle the significance of these missed deadlines, *see Defs.' Mot.* at 6 n. 5, but fail to recognize
that the combined four days that they were late on these productions was coincidently the same amount of time after
the Defendants' May 21st expert deposition deadline that the Plaintiffs served Dr. Conroy's Supplementation.

May 25, 2012, the Plaintiffs supplemented Dr. Conroy's Designation pursuant to Fed. R. Civ. P. 26(e).  *See generally Dr. Conroy's Supplementation*.

## II.    APPLICABLE LEGAL STANDARD

Rule 26(e) governs a party's duty to supplement its expert witness designations.  Fed. R. Civ. P. 26(a)(2)(E).  Under Rule 26(e), a party must supplement its expert disclosure "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect," and "[a]ny additions or changes to this information must be disclosed by the time the party's pre-trial disclosures under Rule 26(a)(3) are due."  Fed. R. Civ. P. 26(e)(1)(A) & (2).

## III.   ARGUMENT

### A.    *Dr. Conroy's Supplementation is Not Untimely.*

The Court did not set a deadline for the parties to supplement their expert designations. Under Fed. R. Civ. P. 26(a)(3), therefore, supplements "must be made at least 30 days before trial."  Originally, the Court set September 4, 2012 as the parties' trial-ready date.  *See Report of Hearing & Order Re: Discovery, Scheduling* at 5 (Docket No. 103) (the "April 12th Order").  In other words, the Plaintiffs had until August 5, 2012 to supplement their expert designations.  The Court has now stayed this date.  *See Procedural Order* at 1 (Docket No. 133).  Because this case is not on the trial list, the 30-day cap on pre-trial disclosures has not been defined and "[t]here is no 'missed deadline' here."  *See Wilgus v. F/V Sirius, Inc.*, 2009 WL 1372963, at *4 (D. Me. May 14, 2009).  Based on the procedural law, this should end the matter.

Nevertheless, the Defendants argue that Dr. Conroy's Supplementation is untimely because the Plaintiffs served it "four days after the May 21 deadline 'for the purpose of taking expert depositions.'"  *Defs.' Mot.* at 1 (quoting *April 12th Order* at 4).  This deadline, however, was the *Defendants'* deadline to depose the Plaintiffs' experts, not the Plaintiffs' deadline to

4

supplement their expert witness designations. *Compare April 12th Order* at 4 *with Feb. 6th Order* at 7 (resetting the Plaintiffs' expert designation deadline to February 29, 2012, "without prejudice to the filing of a further motion to extend that deadline for good, articulable reasons, if a routine modification of any expert designation(s) is inadequate"). It was the Defendants, not the Plaintiffs, who had the obligation to request an extension of the deposition deadline if they felt they were not able to depose Dr. Conroy within the time period set by the Court.[3] The Plaintiffs would not have opposed this request – as they repeatedly told the Defendants – and the issue the Defendants now place before the Court is truly a solution in search of a problem.

**B.** **Even if the Court Finds that It Was Untimely, the Court Should Not Strike Dr. Conroy's Supplementation Because It Was Substantially Justified and Harmless.**

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "Surprise and prejudice are important integers in this calculus." *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003). Even had it been untimely, Dr. Conroy's Supplementation should not be stricken because it is substantially justified and harmless.

**1.** **Dr. Conroy's Supplementation Was Substantially Justified.**

Dr. Conroy's Supplementation was substantially justified for all of the following reasons:

First, after months of argument, the Plaintiffs received many of the required PPEs and "Flash" Reports on April 24, 2012. *See Frawley Decl.* ¶ 12. The Plaintiffs sent these reports to Dr. Conroy on April 26th. *See id.* ¶ 13. Between May 3rd and May 11th, Dr. Conroy was traveling on other work-related matters, which he obviously had to prepare for beforehand. *See*

---

[3] The Defendants also have not noticed the deposition of Professor Robert Strong, another one of the Plaintiffs' duly designated experts.

*Conroy Aff.* ¶ 6.[4]   That left Dr. Conroy approximately two weeks to review and analyze these reports, compare them to other data previously and concurrently received, draft schedules and form opinions based on their content.  The Plaintiffs have found no case that holds that a party violates Rule 26(e) when they supplement their expert's report a mere two weeks after the receipt of additional (and highly relevant) materials – especially when there is no trial date or schedule set for summary judgment briefing.  Rather, courts "read Rule 26(e) generously, in light of its dual purposes, the narrowing of issues and elimination of surprise." *Poulin v. Greer*, 18 F.3d 979, 984 (1st Cir. 1994) (internal quotation marks and citation omitted).

Second, the Plaintiffs requested these documents a *second* time on February 9, 2012 and told the Defendants the exact reports the Plaintiffs needed as early as March 30, 2012.  *See Frawley Decl.*¶¶ 2, 6; Exs. C& D.  The Court itself ordered the Defendants to produce these reports as early as February 6th.  *See Feb. 6th Order* at 3-5.  The Defendants could have produced these reports at any time prior to April 24, 2012 – indeed, they were ordered to do so.  They chose to delay the production of these documents.  Thus, any problem the Defendants now have with the timing of Dr. Conroy's Supplementation is one of their own making and one that they "did nothing to mitigate." *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir. 1985) (citation omitted).

Third, the Plaintiffs were only able to confirm the accuracy of certain materials relvant to the Conroy designation during Mr. Merkin's deposition on May 2, 2012.  *See Frawley Decl.* ¶ 14; *Dr. Conroy's Supplementation* at Exs. A & B.

Fourth, although the Plaintiffs issued a subpoena to the Defendants' independent auditor, Rothstein, Kass & Company, P.C. ("RKC"), on February 21, 2012, the Plaintiffs did not receive RKC's first production of work papers until March 27, 2012.  *See Frawley Decl.* ¶ 5.  Although

---

[4] The Plaintiffs mistakenly said that Dr. Conroy had been away from May 3rd through May 13th in their May 31st letter to the Court – because May 12th and 13th were a Saturday and Sunday, Dr. Conroy did not return to the office until Monday, May 14th.

this production contained thousands of pages, it did *not* contain a folder entitled "SMC Control File – Madoff Exposure Folder," which the Plaintiffs only received on April 18, 2012.  *See id.* ¶¶ 5, 10.  As it turned out, the Defendants themselves delayed this production so that they could review it "for privilege."  *See id.* ¶ 9; *E-Mail from Spears to Frawley*, attached hereto as Exhibit E. Once the Defendants finally gave RKC permission to release this folder, the Plaintiffs reviewed it and sent it to Dr. Conroy on April 26, 2012.  *Frawley Decl.* ¶ 13.  Again, the Defendants' controlled the timing of this disclosure, which was highly relevant to Dr. Conroy's work.

Fifth, the Plaintiffs received approximately 4,500 pages of documents that were responsive to the Plaintiffs' First Request for the Production of Documents on April 23, 2012.  *See Frawley Decl.* ¶ 11.  Among these documents were 62 pages relating to management fees collected by the Defendants.  *See id.*  Dr. Conroy will rely on this data when he testifies on the management fees that unjustly enriched the Defendants.

In short, although the Plaintiffs did everything humanly possible to promptly supplement Dr. Conroy's Designation, they cannot be expected to do the impossible.  The combination of the Defendants' withholding of documents, the vast amount of pages involved,[5] Dr. Conroy's other business engagements and the failure of third parties to timely respond to the Plaintiffs' subpoenas (apparently due in part to the involvement of the Defendants) are the only culpable factors involved.  *Compare generally id. with Conroy Aff.*

## 2.    The Timing of Dr. Conroy's Supplementation Was Harmless.

Even if Dr. Conroy's Supplementation were not substantially justified, it certainly is harmless.  The Defendants contend that denying their Motion would "place Defendants at a

---

[5] The Defendants' suggestion that the Plaintiffs "simply hand[ed] over to Dr. Conroy the entirety of the documents they received in discovery" is wrong.  *Defs.' Mot.* at 4 n. 3.  The Plaintiffs carefully and expeditiously reviewed and culled through each document production and selected only the materials that Dr. Conroy needed.  *See generally Frawley Decl.*  The cost of simply dumping thousands of pages of documents on Dr. Conroy, many of which were immaterial to his work, would have been prohibitive.

disadvantage" because it would enlarge the expert discovery period and it would prevent them from "taking account of any deposition testimony by Dr. Conroy in preparing their required pre-Local Rule 56(h) conference filing." *Defs.' Mot.* at 7-8.  This argument fails for several reasons.

For one, Rule 26(e)(2) specifically contemplates supplementations up until 30 days before trial.  Because the Defendants are in a no different position than every other federal litigant, they cannot complain of prejudice simply because the Plaintiffs exercised an important procedural right that was contemplated by the Court itself.  *See Feb. 6th Order* at 7.

Second, as the Defendants point out, Dr. Conroy's Designation put them on notice that it would be supplemented once the Defendants complied with their discovery obligations.  *See Defs.' Mot.* at 2-3 & Ex. A.  Because the Defendant's dictated the timing of the Supplementation on their terms, they can hardly claim surprise.

Third, Dr. Conroy's Supplementation has no effect on the track of this case.  All deadlines are currently stayed, and no summary judgment briefing schedule has been set.  *See Procedural Order* at 1.  The Court has convened a pre-summary judgment conference for July 6th, nearly three weeks from the date of this filing. *See Notice of Rescheduled Hearing* (Docket No. 144).  The Defendants still have plenty of time to depose Dr. Conroy, digest his testimony and incorporate it into a motion for summary judgment.  That the Defendants think that Dr. Conroy's Supplementation also entitles them to re-depose the Plaintiffs for a *third* time is unfathomable.  They have already been allowed to depose the Plaintiffs for a second time; now, they wish to re-depose the Plaintiffs *again* in connection with an expert's opinion of documents that *they* created, produced and delayed disclosing.  The suggestion of a *third* bite at this apple is extreme and attenuated from any reasonable reading of a litigant's discovery rights, to say the least.  The Defendants are not entitled to question the Plaintiffs on every aspect of the case,

particularly given that they chose to depose them over six months ago and were allowed to depose them a second time last week. They are entitled to depose Dr. Conroy and nothing more.

Fourth, the Defendants' argument that they could not take account of Dr. Conroy's deposition testimony in the pre-summary judgment filing is a non-starter. The purpose of this filing was to help the Court "determine the most efficient process for summary judgment briefing." *Procedural Order* at 3. Moreover, "[n]o pre-conference memoranda filed pursuant to this Order shall be deemed binding on the parties." *Id.* To the extent that Dr. Conroy's deposition affects the briefing schedule for summary judgment, the Defendants can raise this issue with the Court during the pre-filing conference on July 6th.

Finally, Dr. Conroy's Supplementation is based on records the Defendants and their agents had in their possession. In fact, the Defendants and their agents "themselves drafted and had delayed disclosing" these documents. *See Curet-Velazquez v. ACEMLA de P.R., Inc.*, 656 F.3d 47, 56 (1st Cir. 2011). The Defendants therefore cannot "claim that the reference to these new documents was an unfair surprise." *Id.* at 56-57 (citation omitted).

## IV.   CONCLUSION

In reality, the only real prejudice related to Dr. Conroy's Supplementation is that suffered by the Plaintiffs. As a consequence of the Defendants tug-of-war discovery practices on numerous core documents, the Plaintiffs have only recently been able to develop an overview of the Defendants' hedge fund operations, and they have had to dramatically scale back Dr. Conroy's retention due to the Defendants' imposition of imaginary deadlines and threats of time consuming motion practice. Incessant piecemeal litigation is not an efficient way to spend the Plaintiffs' or the Court's resources, especially in the context of expert witness designations, where "[s]upplementations need not be made as each new item of information is learned but

should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26(e), notes to 1993 amendments.

     **WHEREFORE**, the Plaintiffs respectfully request that the Court **DENY** the Defendants' Motion to Strike the Plaintiffs' Supplemental Expert Designation of Dr. Patrick E. Conroy as Untimely (Docket No. 141), with the proviso that the Defendants be allowed to depose Dr. Conroy within a reasonable time following the Court's decision.

     Dated at Portland, Maine this 18th day of June, 2012.

/s/    Jay P. McCloskey
       Jay P. McCloskey

/s/    Thimi R. Mina
       Thimi R. Mina

/s/    Alfred C. Frawley IV
       Alfred C. Frawley IV

       Attorneys for the Plaintiffs
       MCCLOSKEY, MINA & CUNNIFF, LLC
       12 City Center
       Portland, Maine 04101
       (207) 772-6805

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Docket No. 2:10-CV-440-JAW |
| | ) | |
| **JOHN L. STEFFENS,** et al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2012, I have electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SUPPLEMENTAL EXPERT DESIGATION OF DR. PATRICK E. CONROY** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

James T. Kilbreth, Esquire
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way Number 600
Portland, ME 04101

David Spears, Esquire (*pro hac vice*)
Michelle Skinner, Esquire (*pro hac vice*)
Max Nicholas, Esquire (*pro hac vice*)
SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010

Dated this 18th day of June, 2012.

/s/    Alfred C. Frawley IV
Alfred C. Frawley IV

MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center
Portland, Maine 04101
(207) 772-6805
afrawley@lawmmc.com

11