UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIEL R. GOLDENSON, et al.,         )
                                      )
                Plaintiffs,           )
                                      )   Case No. 10-CV-440 (JAW)
          v.                          )
                                      )
JOHN L. STEFFENS, et al.,             )
                                      )
                Defendants.           )

**DEFENDANTS' RESPONSE TO PLAINTIFFS' APPEAL OF THE
MAGISTRATE JUDGE'S DECISION ON PLAINTIFFS' MOTION TO COMPEL**

Defendants respectfully submit this response to Plaintiffs' appeal of the Magistrate Judge's decision denying Plaintiffs' motion to compel the production of Defendants' communications with their counsel at the law firm Simpson Thacher & Bartlett LLP ("STB"). Plaintiffs' request was and is an extraordinary overreach, and the Magistrate Judge's decision was manifestly correct. It should be affirmed.[1]

**FACTUAL BACKGROUND**

Plaintiffs moved to compel Defendants to produce documents and communications "depicting or concerning STB's provision of Madoff-related legal or investigative services" to Spring Mountain entities and affiliates that STB had been retained to represent immediately after the Bernard Madoff scandal broke. Dec. at 15, 5. Defendants opposed the Motion to Compel on the grounds that Plaintiffs' request was squarely aimed, on its face, at documents protected by

---

[1] Reference is made herein to the Magistrate Judge's Memorandum Decision on Plaintiffs' Motion to Compel (Dkt. Nos. 136 & 137) ("Decision" or "Dec."); Plaintiffs' Appeal of the Decision (Dkt. No. 148) ("Appeal"); Plaintiffs' Motion to Compel (Dkt. No. 104) ("Motion to Compel" or "Mot."); Defendants' Opposition to the Motion to Compel (Dkt. No. 109) ("Opposition" or "Opp."); and Plaintiffs' Reply to Defendants' Opposition (Dkt. No. 110) ("Reply"). Reference is also made to the Declaration of Max Nicholas filed herewith ("Nicholas Decl.").

the attorney-client privilege and the work product doctrine, and that in any event it was overbroad.[2]  *See* Opp. at 1-6, 10.

In a thorough and carefully reasoned decision, the Magistrate Judge denied the Motion to Compel, rejecting each of Plaintiffs' proffered bases for discovering Defendants' attorney-client communications.  First, he rejected Plaintiffs' argument that they were entitled to these communications because they themselves were STB's clients.  *See* Dec. at 16-21.  Second, he rejected Plaintiffs' argument that Defendants had failed to show that the communications were privileged, explaining that Plaintiffs' "unusual" document request "[b]y definition . . . seek[s] documents shielded by the attorney-client privilege." *Id.* at 22.  Third, he rejected Plaintiffs' argument that they could pierce the attorney-client privilege under the fiduciary exception, finding that they failed to make the requisite showing of "good cause." *Id.* at 25-29.  Finally, the Magistrate Judge held that Plaintiffs' document request was overbroad, providing a separate basis for denying the Motion to Compel.  *Id.* at 30.

## STANDARD OF REVIEW

The Decision may be set aside only if it was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a).  "The 'clearly erroneous' standard means that this Court must accept both the [Magistrate Judge's] findings of fact and conclusions drawn therefrom unless, after scrutinizing the entire record, [it forms] a strong, unyielding belief that a mistake has been made."  *United States v. Stone*, 824 F. Supp. 2d 176, 185 (D. Me. 2011) (quotation marks

---

[2] Plaintiffs had previously moved to compel the production of a similar set of documents directly from STB in the United States District Court for the Southern District of New York (the "New York Proceeding").  That proceeding was dismissed by Order of the Court.  *See* Dec. at 13-14.  Reference is made herein to STB's Memorandum of Law in Opposition to Motion to Compel the Production of Documents (Dkt. No. 109, Ex. A) ("STB Opp.") and the March 19, 2012 Declaration of David Spears (attached as Ex. B to the Nicholas Decl.) ("N.Y. Spears Decl.").

omitted). For "pure question[s] of law, . . . review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *Id.* (quotation marks omitted).

## ARGUMENT

In denying Plaintiffs' extraordinary request to discover the contents of Defendants' attorney-client communications with their counsel, the Decision was not clearly erroneous or contrary to law. As discussed below, Plaintiffs' proffered objections to the Decision are without merit. Moreover, Plaintiffs have not objected to the Magistrate Judge's ruling that their discovery request was overbroad, providing an independent basis to uphold the Decision.

### I. The Magistrate Judge's Finding That Plaintiffs Had Waived Their Arguments Concerning The Work Product Doctrine And Defendants' Allocation Of Legal Fees Was Not Clearly Erroneous

The Magistrate Judge did not commit "clear error" in finding that Plaintiffs had waived their arguments concerning the work product doctrine and Defendants' allocation of legal fees by failing to raise these arguments in the Motion to Compel. *See* Appeal at 4-5.

#### A. Arguments Concerning The Work Product Doctrine

Plaintiffs contend that it was clear error for the Magistrate Judge to decline to consider their argument that the work product doctrine does not bar their access to the documents they sought. Plaintiffs made no arguments concerning the work product doctrine in the Motion to Compel, despite being informed repeatedly by Defendants and STB prior to the Motion that their document request called for the production of work product. *See* Defs.' Objections to Plaintiffs' Second Request for Documents,[3] ¶13 ("Defendants further object to this Request on the ground that it calls for the production of documents protected by the attorney/client privilege and/or

---

[3] Defendants' Objections to Plaintiffs' Second Request for Documents are attached as Ex. A to the Nicholas Decl.

attorney work product doctrine."); N.Y. Spears Decl. ¶ 3 (referring to "Plaintiff[s'] request to invade the attorney client and work product privileges that attach to the documents sought from [STB]"); STB Opp. at 20 ("Virtually all of the documents created by [STB's] litigators in connection with their representation of Spring Mountain is attorney work product."). Therefore, when they belatedly addressed the issue of work product in their Reply, Plaintiffs were not "replying to new matter raised in the Defendants' Opposition," as they profess. Appeal at 5. The Magistrate Judge was plainly correct to hold that their arguments on work product had been waived. *See* Dec. at 16 n.4 (citing *Kenney v. Head*, 670 F.3d 354, 359 (1st Cir. 2012)).[4]

Even had Plaintiffs' work product arguments not been waived, the Magistrate Judge found them "unpersuasive" on the merits, a conclusion Plaintiffs fail to mention on appeal. *See* Dec. at 16 n.4, 22 n.9. In short, the work product doctrine provides an independent basis to uphold the Decision, whether Plaintiffs' arguments as to work product were waived or not.[5]

**B.    Arguments Concerning Defendants' Allocation Of Legal Fees**

As with the work product doctrine, Plaintiffs made no arguments in the Motion to Compel concerning how Defendants were allocating their legal fees, reserving those arguments for their Reply. Plaintiffs now insist that those arguments were made in reply to "new matter"

---

[4] Plaintiffs claim they were surprised at Defendants' assertion of work product protection in the Opposition because they "did not seek attorney work product." Appeal at 3; *see also id.* at 5 n.5 (asserting that they "never" sought work product). Plaintiffs appear to forget that they did, in fact, seek work product, arguing even in their Reply that "in the event the Court rules that the work product doctrine does apply to the communications sought," they were entitled to discover the communications anyway due to their purported "substantial need." Reply at 5 n.4. Even if Plaintiffs' contention that they only intended to argue whether the work product doctrine applied to the requested documents in the first place, and not whether they were entitled to work product materials, *see* Appeal at 5, were true, it is a distinction without a difference for purposes of waiver: Plaintiffs did not make *any* work product arguments in the Motion to Compel.

[5] In any event, Plaintiffs' arguments as to work product are academic because the Magistrate Judge properly held that the requested documents were protected by the attorney-client privilege. *See infra* at 5-8.

4

raised in the Opposition – namely, Defendants' argument that Plaintiffs "had not shown the mutuality of interests necessary to establish the application of the fiduciary exception." Appeal at 5. But it was Plaintiffs, not Defendants, who raised the "mutuality of interests" requirement in the Motion to Compel, arguing extensively that it had been satisfied without making a single argument about Defendants' allocation of legal fees. *See* Mot. at 5-8.[6] Moreover, Plaintiffs had already been presented with arguments that they fell short of the "mutuality of interests" requirement in the New York Proceeding, well before they filed the Motion to Compel. *See* STB Opp. at 10-13. This was not "new matter" by any stretch of the imagination.

Again as with the work product doctrine, Plaintiffs' fee-allocation arguments would not have affected the outcome of the Decision even had they not been waived. Plaintiffs urge on appeal that Defendants' allocation of legal fees provided a basis for finding the requisite "mutuality of interests" to apply to the fiduciary exception. But the Magistrate Judge did not rule on the "mutuality of interests" prong of the fiduciary exception. He declined to apply the fiduciary exception for a separate, dispositive reason: Plaintiffs had failed to meet the "good cause" requirement. *See* Dec. at 25-30; *see also infra* at 8-9. The fee-allocation waiver issue, like the work product waiver issue, is therefore a red herring.

## II. The Decision Was Not Clearly Erroneous Or Contrary To Law In Holding That Plaintiffs' Request Sought Documents Protected By The Attorney-Client Privilege

Plaintiffs object to the Magistrate Judge's ruling that their document request targeted privileged communications "[b]y definition" and thus relieved Defendants of the necessity of

---

[6] Indeed, as a matter of law, Plaintiffs were required to argue that the "mutuality of interests" requirement was met without waiting for Defendants to discuss it. *See* Dec. at 24 ("The party seeking application of the [fiduciary exception] bears the burden of establishing a mutuality of interest.") (citing cases).

5

proving that the attorney-client privilege applied individually to each document swept in by the request. *See* Appeal at 6-9; Dec. at 21-22. Although Plaintiffs appear to assume that this ruling should be reviewed under the "contrary to law" standard, the "clearly erroneous" standard applies because the Magistrate Judge based his ruling on the factual finding that Plaintiffs' document request presented an "unusual circumstance," Dec. at 22, rather than on a pure question of law. In any event, the ruling was correct under either standard.

Plaintiffs seek to discover documents and communications "depicting or concerning" legal services that STB provided to Spring Mountain entities and affiliates. The Magistrate Judge recognized the futility of putting Defendants through the burdensome and costly exercise of proving document-by-document what is obvious from the face of the request: that "privileged documents . . . form the core if not the totality of documents sought." *Id.* at 22. Plaintiffs' request is specifically tailored to capture the communications at the heart of the attorney-client privilege: those reflecting the content of the legal services that a party seeks and receives from its counsel. *See, e.g.*, *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998) (attorney-client privilege "protects at the client's behest confidential communications between lawyer and client made to facilitate legal services to the client"). The wording of the request omits even a pretense that Plaintiffs are looking for anything other than a close-up view of the full and frank communications Defendants exchanged with STB in the process of securing legal services.

In an effort to portray the Decision as a departure from established law, Plaintiffs suggest that the Magistrate Judge "dispensed with the burden of proof this Circuit requires." Appeal at 6. This is a disingenuous claim, as it implies that courts routinely force parties to prove the attorney-client privilege from the ground up in circumstances like those presented here. They do

not.  *See, e.g.*, *Sann v. Mastrian*, No. 1:08 Civ. 1182, 2010 WL 4923900, at *1 (S.D. Ind. Nov. 29, 2010) (denying motion to compel production of attorneys' files concerning their representation of a client, and holding that "[r]eflexively requiring a comprehensive privilege log under these circumstances would be an unnecessary expenditure of time"); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151, 2007 WL 4287335, at *4 (N.D. Cal. Dec. 5, 2007) ("It would be an unfair and undue burden to force [the defendant] to create a privilege log containing every letter between attorney and client.").  Plaintiffs have not identified a single case where a party, in the course of discovery, made a blanket demand for the opposing party's communications with its own counsel depicting the provision of legal services and was either invited to review the communications or provided with a privilege log confirming on an individualized basis that each one was privileged.[7]  Compelling a response to such an extraordinary demand would empower litigants to inflict enormous costs on one another as a matter of course simply by asking their opponents to turn over their myriad communications with counsel.  There is no basis in law or common sense to legitimize this practice.

Plaintiffs take the Magistrate Judge to task for "not determin[ing] the identity of STB's client," giving the misleading impression that there is room for doubt as to whether the communications they requested are between attorneys and clients.  Appeal at 7.  Plaintiffs are raising a question they have already answered in their own document request, which exclusively targeted communications depicting or concerning the provision of *legal services*.  The entities or

---

[7] The cases Plaintiffs do cite are inapposite.  *See* Appeal at 6-8 (citing *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 68, 71-72 (1st Cir. 2011) (grand jury subpoena seeking "records relating to the purchase of real property . . . that was facilitated by [attorneys]," which were "not confidential in nature" in any event); *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 20 (1st Cir. 2006) (grand jury subpoena seeking "an array of documents," a subset of which may have been privileged)); *see also* Opp. at 3-4.

persons to which STB provides legal services are, by definition, its clients. *See Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 3 (D. Mass. 1986) ("Cases show that one who consults a lawyer with a view to obtaining professional legal services from him is regarded as a client for purposes of the attorney-client privilege."). Plaintiffs' argument that the Magistrate Judge should have determined whether the requested documents implicated an attorney-client relationship suggests that they fail to appreciate the singularity of their own request, which took its very parameters from that relationship.

At bottom, Plaintiffs are attempting to flip discovery on its head, using the attorney-client relationship to determine which communications to *seek*, as opposed to *avoid*. Instead of identifying an array of documents a subset of which may be privileged, they have targeted a set of facially privileged documents on the speculative chance that "some small quantity . . . might be unprotected." Dec. at 22. The Magistrate Judge was correct to deny Plaintiffs permission to conduct an exploratory search of Defendants' communications with their lawyers. *Cf. Sann*, 2010 WL 4923900, at *2 ("[T]he Court will not permit [the defendant] to rummage through privileged materials in hopes of finding treasure.").

### III. The Decision Was Not Contrary To Law In Requiring Plaintiffs To Demonstrate "Good Cause" To Pierce The Attorney-Client Privilege

Finally, Plaintiffs object to the Magistrate Judge's ruling that they needed to show "good cause" to pierce Defendants' attorney-client privilege under the fiduciary exception, arguing that this ruling was contrary to law. Appeal at 9-10. The reverse is true: the Magistrate Judge took explicit care to follow the decisions of other courts, *see* Dec. at 26-27, that have considered whether the "good cause" requirement applies in the context of a limited partnership – the exact

issue here – and concluded that it does. *See, e.g.*, *Ferguson v. Lurie*, 139 F.R.D. 362, 366 (N.D. Ill. 1991) ("Given the important differences between general and limited partners, this Court finds that limited partners should not be excepted from *Garner's* requirement of showing good cause before otherwise privileged documents are released to them."). Plaintiffs fail to acknowledge the cases relied upon by the Magistrate Judge, simply asserting that the good cause requirement clashes with the policies behind fiduciary duty. Appeal at 9-10. But as the cases cited in the Decision explain, the good cause requirement incorporates those policies, balancing them against those underlying the attorney-client privilege. *See Fortson v. Winstead, McGuire, Sechrest & Minick*, 961 F.2d 469, 475 n.5 (4th Cir. 1992) (applying good cause requirement in limited partnership context and finding that requirement resolves the "competing policies" of "full disclosure in a fiduciary relationship" and "full and frank communications between attorneys and their clients"); *In re ML-Lee Acq. Fund II, L.P. Sec. Litig.*, 848 F. Supp. 527, 563-64 (D. Del. 1994) ("Requiring [limited partners] to demonstrate good cause protects the purposes that underlie the attorney-client privilege while recognizing that disclosure of communications may be necessary in certain instances" in the fiduciary context). The Decision was not "contrary to law" in following the well-reasoned decisions of other courts applying the good cause requirement to the limited partnership context.[8]

---

[8] As the Magistrate Judge noted, *see* Dec. at 25-26, the cases cited by Plaintiffs are inapposite because they do not concern the context of a limited partnership. *See Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291 (S.D.N.Y. 1991) (ERISA context); *Solis v. Food Employees Labor Relations Ass'n*, 644 F.3d 221 (4th Cir. 2011) (same); *Lawrence v. Cohn*, No. 90 Civ. 2396, 2002 WL 109530 (S.D.N.Y. Jan. 25, 2002) (discussing relationship between executor and beneficiaries of estate). The sole case Plaintiffs cite that even mentions "limited partners," *Abbot v. Equity Group*, No. 86 Civ. 4186, 1988 WL 86826, at *3 (E.D. La. Aug. 10, 1998), does so only to note that communications between limited partners and an attorney who specifically represented them were not protected by the attorney-client privilege from a group of plaintiffs that included those limited partners. *Abbot* has no application here, where Plaintiffs were not STB's clients. In any event, the Magistrate Judge was correct to follow the reasoning of other courts in concluding that the good cause requirement applies to the limited partnership context.

## IV. Plaintiffs' Document Request Was Overbroad

Even if Plaintiffs' objections to the Decision had merit – which they do not – the Decision should be upheld on the independent ground that Plaintiffs' document request was overbroad, a ruling Plaintiffs have not challenged on appeal. *See U.S. v. Rodriguez Cortes*, 949 F.2d 532, 542 (1st Cir. 1991) ("[I]ssues not raised on appeal are waived[.]"). Defendants raised overbreadth as an "independent reason why the Court should not grant the Motion to Compel," Dec. at 30, explaining that responding to the request would have been unfeasible by the discovery deadline – which has since passed – and extremely burdensome. The Magistrate Judge found that the request was indeed overbroad because, among other things, it did not exclude "STB's notes, communications, or documents, or any communication to the extent that STB represented Steffens or Ho personally," even though Plaintiffs had previously excluded these materials in the New York Proceeding. Dec. at 30.[9] The Magistrate Judge recognized that Plaintiffs' request ultimately "indicate[d] a desire to embark on what is essentially a broad search: an inspection of a still broad range of documents with a view to determining whether any happen to buttress a conclusion that the defendants acted against their best interests." *Id*. at 29. His ruling on overbreadth provides a separate basis to affirm the Decision.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Decision be affirmed.

Dated: July 2, 2012

        SPEARS & IMES LLP

        By: /s/ David Spears
            David Spears

---

[9] Plaintiffs also sought "investigative" services. As the Magistrate Judge noted, this was another expansion from the New York Proceeding, even though such services qualify as "legal" for purposes of privilege. Dec. at 30, 22 n.8.

By: /s/ Max Nicholas
    Max Nicholas
    Michelle Skinner
    51 Madison Avenue
    New York, New York  10010
    Telephone: (212) 213-6996


DRUMMOND WOODSUM

By: /s/ James T. Kilbreth
    James T. Kilbreth
    Drummond Woodsum
    84 Marginal Way
    Portland, Maine 04101
    Telephone (207) 253-0555
    *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Thimi R. Mina
>Jay P. McCloskey
>Alfred Frawley
>McCloskey, Mina & Cunniff, LLC
>12 City Center
>Portland, ME 04101

Dated: July 2, 2012            /s/ Max Nicholas
                               Max Nicholas
                               51 Madison Avenue
                               New York, New York 10010
                               (212) 213-6996
                               mnicholas@spearsimes.com