UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL R. GOLDENSON, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOHN L. STEFFENS, et al., )<br>)<br>Defendants. ) | Case No. 10-CV-440 (JAW) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF SONIA M. BROOKS**

Defendants respectfully submit this opposition to Plaintiffs' motion to exclude the expert testimony of Sonia M. Brooks, filed July 27, 2012 ("Mot."). Dkt. No. 163. That motion argues that Ms. Brooks's testimony is not relevant to any issue in the case because she analyzed the Goldensons' gains and losses in certain non-Spring Mountain or Ascot investment vehicles and those gains and losses "have nothing to do with the instant lawsuit." Mot. at 3. Contrary to Plaintiffs' assertions, however, Ms. Brooks's testimony goes directly to two of the central issues in the case— (1) the Goldensons' credibility, and (2) the harm and amount of damages they purport to have suffered at the hands of Defendants. Plaintiffs' motion, accordingly, should be denied.

**FACTUAL BACKGROUND**

Throughout this litigation, Plaintiffs have tried to portray themselves as conservative investors, *see, e.g.*, Amended Complaint ("Am. Compl.") ¶ 27, who were led astray by Defendants' fraudulent misrepresentations. Indeed, their so-called damages expert, Robert Strong, assumed that, but for Defendants' fraudulent actions, the Goldensons would have happily

continued to "invest in municipal bonds and that they would have purchased those bonds on the same schedule and in the same amounts as they purchased interests in the Ascot Fund." August 17, 2012 Declaration of Michelle Skinner ("Skinner Decl.") Ex. A., at 9.[1] As a result of purportedly being led away from municipal bonds, the Goldensons claim to have lost (depending on the forum) "nearly half," "well over half," or "almost all" of their assets. *Compare* Am. Compl. ¶ 116 ("[T]he Goldensons were left oblivious to the fact that nearly half of their long-acquired wealth was left solely to the devices of Madoff...."), *with* Skinner Decl. Ex. B, at 1 ("My wife and I have lost well over half of our assets....") & 2 ("We never conceived that almost all our money could be stolen in this fashion....").

Ms. Brooks's testimony analyzes several other investments the Goldensons made between 2002 and 2008. That analysis shows that, in addition to the investments Plaintiffs made in the QP I Fund and the Ascot Fund, they also made investments totaling ▓▓▓▓ in four separate, sophisticated investment vehicles – totally unrelated to Defendants, and certainly not municipal bonds. These investments resulted in losses totaling approximately ▓▓▓▓. *See* Skinner Decl. Ex. C.[2]

## ARGUMENT

As noted above, Plaintiffs' theory of the case relies on the narrative that they were conservative investors led astray, with catastrophic financial results. Ms. Brooks's testimony is directly relevant to refuting that narrative in several important ways:

---

[1] As discussed in Defendants' *Daubert/Kumho* Motion to Exclude Expert Testimony of Robert A. Strong, Dr. Strong's assumption that Plaintiffs *would have* invested in municipal bonds had they not invested in QP I and Ascot is entirely speculative and does not constitute a sufficient basis for expert testimony.

[2] By comparison, the impact the Madoff-related losses had on the Goldensons' investment in the QP I Fund is estimated at ▓▓▓▓. *See* Skinner Decl. Ex. D.

First, her testimony establishes that the Goldensons had substantial investment assets in addition to their investments in QP I and Ascot. That evidence is directly relevant to an evaluation of the claims in the complaint and elsewhere that all or nearly all Plaintiffs' money was invested with or through Defendants.[3]

Second, Ms. Brooks's testimony establishes that the Goldensons suffered substantial losses in these other investments, almost twice as much as they lost in the QP I Fund. That information provides helpful context to evaluate the Goldensons' claims about the magnitude of the losses caused by Defendants and the emotional distress those losses purportedly caused.

Third, the other investments referenced in Ms. Brooks's testimony are far from the municipal bonds hypothesized by Plaintiffs' expert as the basis for calculating damages. On the contrary, as the offering documents from those *actual* investments show, these were complex, sophisticated investments that bore a high degree of risk. *See, e.g.,* Skinner Decl. Exs. E & F. Those investments relate directly to Plaintiffs' claims about being "conservative investors" who would have invested solely in municipal bonds were it not for their interaction with Defendants.

Contrary to Plaintiffs' assertion, the relevance of Ms. Brooks's testimony does not depend on her ability to analyze, or any actual analysis of, Plaintiffs' investments prior to 2001.

---

[3] For example, in Mr. Goldenson's December 17, 2008 letter to Judge Louis Stanton he claimed the following:

> My wife and I have spent a lifetime working hard and raising a family, now with grandchildren, and neither of us enjoyed any inherited wealth. I was a publisher of educational and medical books, and my wife was a writer and publicist. We never conceived that almost all of our money could be stolen in this fashion, right before our eyes, as we received audited statements from a top international firm, BDO Seidman, L.P.
>
> Please consider broadening access to SIPC for all individuals who lost so much or all of their life savings. Giving relief just to the direct customers of Madoff's firm leaves out all those who are in the identical boat, because they invested with Madoff's 100% feeder funds, like Ascot. This was an intertwined system of deceit and theft within our financial markets that has left retirees like ourselves having to sell our homes and raise money any way we can.

Skinner Decl., Ex. B (emphasis added).

3

Mot. at 3-4. Rather, as a certified public accountant, she has tracked the actual investments in several funds and will testify as to those investments. The history of those investments will undeniably assist the fact-finder in evaluating the credibility of the Goldensons and their claimed damages. Accordingly, it more than satisfies the relevance test of *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998), and should be admitted. *See also First Marblehead Corp. v. House*, 541 F.3d 36, 41-43 (1st Cir. 2008).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion to exclude the expert testimony of Sonia M. Brooks be denied.

Dated: August 17, 2012

                        DRUMMOND WOODSUM

                        By: /s/ James T. Kilbreth
                            James T. Kilbreth
                            Drummond Woodsum
                            84 Marginal Way
                            Portland, Maine 04101

                        SPEARS & IMES LLP

                        By: /s/ Michelle Skinner
                            David Spears
                            Michelle Skinner
                            Max Nicholas
                            51 Madison Avenue
                            New York, New York 10010
                            *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2012, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Thimi R. Mina
> Jay P. McCloskey
> Alfred Frawley
> McCloskey, Mina & Cunniff, LLC
> 12 City Center
> Portland, ME 04101

Dated: August 17, 2012

/s/ Michelle Skinner
Michelle Skinner
51 Madison Avenue
New York, New York 10010
(212) 897-4483
mskinner@spearsimes.com