**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Docket No. 2:10-CV-440-JAW |
| | ) | |
| **JOHN L. STEFFENS,** et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT/KUMHO* MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ARTHUR LABY**

**COME NOW** the Plaintiffs, by and through their undersigned attorneys, in opposition to the Defendants' Motion to Exclude the Expert Testimony of Arthur Laby under Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (Docket No. 169) (the "Defendants' Motion").

## I. INTRODUCTION

At bottom, this case is no different than a medical malpractice or professional negligence case: the factfinder must understand the applicable professional standards of practice and whether the Defendants' conduct deviated from those standards in order to resolve the issues presented. *See Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir.), *cert denied*, 434 U.S. 861 (1977) ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry"). Professor Arthur Laby, Esq., is an expert on the terms, concepts, regulations, standards, customs and practices followed by fiduciaries in the securities industry. *See Laby Designation* at 1-3 (Docket

No. 169-2). His testimony is critical to the factfinder's evaluation of whether 1) the Defendants owed fiduciary duties to the Plaintiffs; and 2) they breached those fiduciary duties. Without expert testimony, it is fanciful to expect a Maine juror to understand the complex relationship between securities investment advisers and their clients and the related duties that follow. These concepts that are simply beyond the common understanding and language of a lay jury.[1]

## II. LEGAL STANDARD

Under Fed. R. Evid. 702, "if an expert has scientific, technical, [or] other specialized knowledge that will assist the trier [of fact] better to understand a fact in issue, and that knowledge rests on a reliable foundation, that testimony must be admitted." *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 57 (1st Cir. 2010) (internal citations and quotation marks omitted). Under Fed. R. Evid. 704, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Accordingly, the question of admissibility "must be tied to the facts of the particular case," *Kumho Tire Co.*, 526 U.S. at 150, and "the rejection of expert testimony is the

[1] Although Professor Laby's Designation was admittedly couched in terms of legal conclusions that track the Plaintiffs' Complaint, it did so in order to foresee and encompass testimony that was all but certain to be offered by the Defendants' counter-expert or the Defendants themselves, particularly because the Court instructed the parties that it would not allow rebuttal designations. The Defendants, however, did not timely designate such an expert, choosing instead to seek "leave to designate out of time an expert on fiduciary duties imposed on an investment adviser under the Investment Advisers Act of 1940" following their deposition of Professor Laby. *See Defs.' Mot. to Designate an Expert Out of Time* at 9 (Docket No. 116). According to the Defendants, their proffered designation "scrupulously lay[ed] out the content and scope of fiduciary duties imposed upon an investment adviser under the 1940 Act, particularly as such duties might relate to key factual allegations in Plaintiffs' Complaint," and they contended at the time that it was "imperative for Defendants to present an expert to detail the limited fiduciary duties created by that Act and to distinguish them from the no-longer-relevant common law fiduciary duties." *Id.* at 12.

The Defendants have now reversed course and claim that "it is not the province of an expert to explain 'the meaning and contemplation of the securities laws,' including the circumstances in which persons constitute Investment Advisers under those laws." *Defs.' Mot.* at 3. In short, the Defendants have "assume[d] a contrary position in a subsequent proceeding simply because [their] interests have changed." *See Rockwood v. SKF USA Inc.*, __ F.3d __, 2012 WL 2437685, at *9 (1st Cir. June 28, 2012). The doctrine of judicial estoppel counsels against this maneuver, and yet another change in defense strategy is foreseeable. If the Defendants testify at trial as expected, they will hold themselves out as *de facto* experts in order to sway the jury in favor of their self-serving views of their complex industry and convince the factfinder that they complied with their fiduciary duties. The Plaintiffs, on the other hand – who are not securities professionals in a position to rebut this testimony – must be permitted to offer Professor Laby in rebuttal lest they surrender the courtroom to the Defendants' "expertise." Otherwise, Professor Laby will testify to the subjects and in the manner stated in this Opposition, or as otherwise ordered by the Court.

exception rather than the rule." Fed. R. Evid. 702, advisory committee notes.

## III. ARGUMENT

### *A. Professor Laby Will Not Usurp the Role of the Court to Define the Law.*

The Defendants too narrowly pigeon Professor Laby's expected testimony when they claim it would interfere with the function of the Court to instruct the jury on the law. Although the Plaintiffs do not contest the general principles that "expert testimony proffered solely to establish the meaning of a law is presumptively improper," *United States v. Prigmore*, 243 F.3d 1, 19 n.3 (1st Cir. 2001), and "purely legal questions and instructions to the jury on the law to be applied . . . is exclusively the domain of the judge," *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997), the Defendants attempt to paint Professor Laby with too broad a brush:

> [I]t is often difficult to draw the line between what are questions of law, what are questions of fact, and what are mixed questions. . . . Indeed, the definition of what is law and what is application or practice may be difficult to ascertain. . . . . Further, there may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is admissible where it would normally be excluded. We can also hypothesize instances in rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule.

*Id.* at 100 (internal citations omitted). In such cases, "experts are allowed to testify about how [government agencies] enforce regulations, whether transactions comply with regulations, and how they ensure that the public knows about regulations." *United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006).[2] In fact, "'[p]articularly in complex cases involving the securities industry,'" *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y.

[2] *See, e.g.*, *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (expert's testimony on causation in insurance case, though normally a question for the factfinder, was admissible because the "proffered experts could reasonably be expected to shed some light in a shadowy domain"); *United States v. Hoffman*, No. 06-CR-66-P-S, 2006 WL 3691487, at *3 (D. Me. Dec. 12, 2006) (allowing expert testimony on the regulatory scheme of the Controlled Substances Act); *United States v. Mikutowicz*, 365 F.3d 65, 72 (1st Cir. 2004) (citing cases allowing expert testimony "as to the proper tax consequences of a transaction").

2008) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)), "courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). Otherwise, a lay jury would be forced to consider complex facts in a contextual vacuum.

**1. Professor Laby May Testify About the Relevant Securities Regulations.**

The Defendants argue that the Plaintiffs "cannot use expert testimony to establish that Defendants owed them fiduciary duties arising from the securities laws." *Defs.' Mot.* at 3. True enough. But expert testimony that will "assist the trier of fact in understanding trading patterns, securities industry regulations, and complicated terms and concepts inherent in the practice of the securities industry" is admissible. *Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 180; *First Marblehead Corp. v. House*, 541 F.3d 36, 44 (1st Cir. 2008) (expert testimony on "the necessary context and framework" to evaluate the "complex and unfamiliar concepts" at issue in securities case was admissible). In *Offill*, for example, the Fourth Circuit Court of Appeals held that:

> [T]he specialized nature of the legal regimes involved in this case and the complex concepts involving securities registration, registration exemptions, and specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury. The jury in this case needed to understand not only federal securities registration requirements but also the operation of several obscure Texas Code provisions and their relationship with the federal regime. To be sure, the ultimate responsibility for instructing the jury on the law belonged to the district court, but we cannot conclude that in these circumstances the district court abused its discretion by concluding that the expert testimony presented in this case would assist the jury. Indeed, we find it difficult to imagine how the government could have presented its case against Offill without the assistance of expert testimony to explain the intricate regulatory landscape and how securities practitioners function within it.

666 F.3d at 175. Although the judge instructs the factfinder on the applicable law, only an expert witness is in a position to explain the intricacies of complex securities laws and their practical

application in day-to-day industry practice so that the jury may properly apply the laws to the facts. *See, e.g.*, *United States v. Cohen*, 518 F.2d 727, 737 (2d Cir. 1975) (expert opinion on legal concepts "underwriter" and "materiality" admissible).

This case similarly requires an evaluation of the interplay between complex federal, state and common law concepts. For example, Professor Laby testified at his deposition that, per SEC Rule, "duties flow through the fund to the individual investors in the fund." *Laby Dep. Tr.* at 20:3-6 (Docket No. 169-4). The distinction between an "adviser-client and an adviser-fund relationship" is a complicated one that will not be readily apparent or explained to a lay jury. *See Order on the Defs.' Mot. to Dismiss* at 51 (Docket No. 45). Expert testimony on the circumstances giving rise to fiduciary duties generally, the specific duties that so arise and the situations in which those duties run to individuals will allow "the trier of fact to better understand the evidence and provid[e] the trier of fact with the tools necessary to make an ultimate determination." *Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 181.[3]

**2. Professor Laby May Testify About the Applicable Standard of Care.**

The Defendants also argue that the Plaintiffs cannot "seek to define 'fiduciary duty' and 'good faith and fair dealing'" through expert testimony. *Defs.' Mot.* at 4. Also true. But "[e]xpert testimony on industry standards is common fare in civil litigation," *Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 79 (1st Cir. 2006) (citations omitted), and, "in general, the customs and practices of an industry are proper subjects for expert testimony." *Pelletier v. Main Street Textiles, LP*, 470 F.3d 48, 55 (1st Cir. 2006). Professor Laby may therefore offer testimony that enables a jury to evaluate the Defendants' conduct against the accepted practices and regulations

[3] *Cf. Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 803 F.2d 454, 461 (8th Cir. 1986) ("Testimony concerning the rules of the New York Stock Exchange and of the National Association of Securities Dealers was highly relevant and far from prejudicial 'because the rules reflect the standard to which all brokers are held'" (quoting *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 823-24 (9th Cir. 1980)).

of the nuanced securities industry. *See United States v. Fumo*, 655 F.3d 288, 303 (3rd Cir. 2011) ("[C]ustoms and practices [testimony] will sometimes include applicable legal regulations, such as registration requirements for securities registration under the Securities Acts" (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218-19 (3rd Cir. 2006)). Put simply, Professor Laby will testify to the applicable standard of care for securities professionals.

Despite the Defendants' categorical claim that "Professor Laby's ruminations on what constitutes 'good faith and fair dealing' are also improper," *Defs.' Mot.* at 4, "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Berckeley Inv. Grp.*, 455 F.3d at 218. For example, in *CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*, 411 B.R. 571 (N.D. Ill. 2009), the Plaintiffs sought to introduce the testimony of a fiduciary duty expert on the subject of corporate governance. Specifically, the expert's report:

> [S]et[] forth the basic obligations of directors in general, explaining the three hallmarks of lawful and effective corporate governance; the purposes and requirements of the procedural and substantive duties of directors; the requirements of state fiduciary duty law; and how these principles serve as the rubric under which courts analyze corporate decision making. . . . . [It] describe[d] in detail the general duties of directors and shareholders: the duty of care, duty of loyalty, duty of good faith, and Revlon duties. Against that backdrop of general principles, he goes on to explain what happens when fiduciary duties are breached in terms of the type of judicial review to which such conduct is subject. . . . In this context, he set[] out the general advice of practitioners on how to avoid liability. More specifically, he explain[ed] compliance with certain affirmative steps is recommended in order to fulfill one's fiduciary duties as a director.

*Id.* at 588-89 (citations omitted). The court concluded that the expert could "explain the general background against which the conduct of boards of directors are measured" and analyze "the practice and standards of corporate governance and Defendants' conduct in light of those practices and standards," but any opinion on "whether Defendants breached applicable duties nor

apply the law to the specific actions they took in this case" was inadmissible. *Id.* at 588.[4]

As set forth above, Professor Laby may testify to the practices and standards recognized by fiduciaries in the securities industry. His Designation lists nine such standards. *See Laby Designation* at 3-4. Although admittedly he may not testify that these customs and practices are the governing law on fiduciary duty or that the Defendants violated the law, he may create the necessary context, with reference to applicable law, for the jury to reach its own conclusions about the application of the law to the Defendants' actions. Put simply, he can reference the law in describing the standards and practices of the industry, but he cannot say that the Defendants violated the law in opining on how the Defendants' conduct deviated from these practices.[5]

***B. Professor Laby Will Not Usurp the Role of the Factfinder to Apply the Law.***

The Defendants are correct that Professor Laby may not simply offer a legal conclusion that they breached their fiduciary duties to the Plaintiffs. He *can* testify, however, about how the Defendants' conduct deviated from the appropriate standard of care, so long as he does not

[4] *See also Baker v. Eichholz*, No. CV406-021, 2009 WL 62266, at **2-3 (S.D. Ga. Jan. 9, 2009) (Because the plaintiff "must establish the elements of his breach of fiduciary duty claim, he should be afforded the opportunity to have a duly qualified expert propound on the nature and scope of the alleged duty and its subsequent breach. . . . [W]here expert testimony can assist the trier of fact in determining the existence and breach of a fiduciary duty, such expert testimony is admissible"); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008) (expert testimony on the general fiduciary standards of conduct for corporate directors was admissible because it did not conclude that the defendants violated their fiduciary duties); *Cantor v. Perelman*, No. CIVA 97-586 KAJ, 2006 WL 3462596, at *5 (D. Del. Nov. 30, 2006). (Experts may testify "as to how a company would operate under the law so long as the expert . . . [does] not give his opinion as to what was required under the law, or whether the defendant complied with the . . . [law]" (alterations in original) (internal quotation marks and citation omitted)).

[5] *See, e.g.*, *See Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 186 ("[C]ustoms and practices testimony may include a discussion of regulatory rules and guidelines," but not whether defendants violated these rules and guidelines). *In re NYSE Specialists Secs. Litig.*, 260 F.R.D. 55, 68-69 (S.D.N.Y. 2009) ("[The expert] does not draw any conclusions as to whether [the defendants] engaged in any conduct in violation of the federal securities laws or the NYSE Rules. . . . The fact that the NYSE Rules are used to support his conclusions, notably in response to [the defendants'] questioning, does not render the opinion inadmissible"); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) ("[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms" (citing *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)); *United States v. Denny*, 939 F.2d 1449, 1452-53 (10th Cir. 1991) (expert testimony "on existence of regulations that prohibit discretionary trading" and that "the type of discretionary trading engaged in by [the defendant] was an unsafe and unsound practice" was not a legal conclusion).

testify that any deviation was a violation of applicable law. "The best way to determine whether opinion testimony contains legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (internal quotation marks and citation omitted).

**1. Professor Laby May Testify About Deviations from Standard Practice.**

As long as Professor Laby offers an opinion based on his application of the facts to properly explored legal criteria and not on a literal recitation of the applicable laws, his testimony is admissible.[6] To illustrate this very principle, the Advisory Committee Notes to Rule 704 use a famous example: "[T]he question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed." Fed. R. Evid. 704, advisory committee notes.[7] Furthermore, "[s]imple hypotheticals based on assumptions about testimony in the record can also be posed to the witness in a way that allows his or her opinions to be given. . . ." *Scop*, 846 F.2d at 143 (citing 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 705[01] (1987)).

---

[6] *See, e.g.*, *CDX Liquidating Trust*, 411 B.R. at 588 ("Even if the everyday understanding of a term and its legal meaning are congruent, exclusion is inappropriate where the opinion will not consist of a naked conclusion (i.e., the defendant's conduct was reasonable, was negligent, etc.) but will be based on 'adequately explored legal criteria.' That is, they will explain the reasons underlying the ultimate conclusion. Moreover, the court will instruct the jury on the appropriate meaning of the legal standard and that the jury is free to reject the testimony of the expert. Consequently, the risk of jury confusion is not present" (quoting *Richman v. Sheahan*, 415 F. Supp. 2d 929, 947 (N.D. Ill. 2006)); *United States v. Scop*, 846 F.2d 135, 140 (2d Cir.), *modified*, 856 F.2d 5 (1988) ("Had [the expert] merely testified that controlled buying of selling of the kind alleged here can create artificial price levels to lure outside investors, no sustainable objection could have been made. Instead, however, [the expert] made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud'").

[7] Similarly, "[t]o determine when a question posed to an expert witness calls for an improper legal conclusion, the district court should consider first whether the question tracks the language of the legal principle at issue or of the applicable statute, and second, whether any terms employed have specialized legal meaning." *Barile*, 286 F.3d at 760. Accordingly, "[i]n many circumstances, a problematic question can be more carefully phrased to elicit similar information yet avoid a response that constitutes a mere legal conclusion." *Id.*

By way of example, if the Plaintiffs were to ask Professor Laby whether the Defendants had conflicts of interest that should have been disclosed to QP 1 Fund investors under generally accepted standards and practices of investment advisors, and Professor Laby testified that, based on his knowledge and experience of those standards and practices and his review of the record evidence,[8] Ezra Merkin's status as an investor, consultant and lender to the Defendants gave rise to a conflict of interest that should have been disclosed to investors, such testimony must be allowed, *provided that* Professor Laby did not further testify that the Defendants had a legal duty to disclose this conflict of interest. *See Laby Dep. Tr.* at 23:10-24:6. Similarly, Professor Laby may testify that this conflict of interest was not properly disclosed under accepted industry standards and practices based on his review of the confidential offering memoranda and fund descriptions, so long as he does not testify that the Defendants' failure to disclose this conflict of interest violated their legal duties to the Plaintiffs. *See id.* at 24:14-25:19. Put simply, if Professor Laby does not offer the mere legal conclusion that the Defendants breached their fiduciary duty" by not disclosing this conflict, his testimony is admissible.

***C. Professor Laby Did Not Offer Lay Opinion or Impermissible Summary.***

The Defendants also argue that Professor Laby's deposition testimony impermissibly embraces lay reasoning and was "prone to the kind of narrative summarizing that is reserved for closing argument." *See Defs.' Mot.* at 8-10. Professor Laby, however, answered the questions he was asked at his deposition based on his analysis of documents that "are studded with complex terminology, [which] a lay jury may well have difficulty understanding their meaning

[8] The Defendants also argue that Professor Laby's testimony is founded "on facts that are not in the record." *Defs.' Mot.* at 6. In a preview of their plan for summary judgment, the Defendants suggest that it is undisputed that the Plaintiffs knew of Madoff's role in Ascot. Any such claim is a waste of the Court's time. The record will speak for itself, and Professor Laby will testify to facts in the record when that record is developed. *See Cortes-Irizarry v. Corp. Insular De Seguros*, 11 F.3d 184, 188 (1st Cir. 1997) (The "trial setting normally will provide the best operating environment for the triage which *Daubert* demands. . . . [C]ourts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record").

without the aid of expert testimony" in a way a lay jury could understand. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 462 (S.D.N.Y. 2010) (allowing an expert to summarize the content of hedge fund documents distributed to investors, including offering memoranda). He reviewed complex testimony and statements of industry insiders, internal communications and documents written in the language of the industry, and effectively converted their contents to the common understanding. His testimony was not a summary of "out-of-court sources but a thorough opinion drawing on multiple sources to ensure accuracy." *United States v. Luna*, 649 F.3d 91, 105 (1st Cir. 2011).

Professor Laby's unique experience in the securities field qualifies him to testify on the sort of documents he would expect to see in a hedge fund offering that were absent here. He may also testify that the Defendants "should have been aware of their obligations under the securities laws" to not mislead prospective investors. *See, e.g.*, *Gerrard v. A.J. Gerrard & Co.*, No. CV 101-067, 2003 WL 25689968, at *8 (S.D. Ga. Sept. 30, 2003). He may testify that the Defendants' own statements reveal that they knew the truth about Ascot.[9] The evidence in this case – particularly, the Defendants' admissions – involves industry jargon that is not susceptible to the common understanding without an expert's translation. Professor Laby's "take" on the record evidence is essential to the factfinder's reasonable understanding of the issues, especially given that the Defendants can be expected to take the stand and offer their own opinion of their obligations and the extent to which they fulfilled them. To allow other otherwise would risk giving the Defendants a back door means of dominating the trial with *de facto* expert testimony.

**WHEREFORE**, the Plaintiffs respectfully request that the Court deny the Defendants' Motion to Exclude the Expert Testimony of Professor Arthur Laby (Docket No. 169).

---

[9] For example, based on their own statements, that Madoff, not Merkin, should have been disclosed as the functional day-to-day manager of the Ascot Fund based on their respective roles, of which the Defendants were aware.

Dated at Portland, Maine this 17th day of August, 2012.

/s/ Jay P. McCloskey
Jay P. McCloskey

/s/ Thimi R. Mina
Thimi R. Mina

/s/ Alfred C. Frawley IV
Alfred C. Frawley IV

Attorneys for the Plaintiffs
MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center
Portland, Maine 04101
(207) 772-6805

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Docket No. 2:10-CV-440-JAW |
| | ) | |
| **JOHN L. STEFFENS,** et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2012, I have electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT/KUMHO* MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ARTHUR LABY** the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

James T. Kilbreth, Esquire
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way, Number 600
Portland, Maine 04101

David Spears, Esquire (*pro hac vice*)
Michelle Skinner, Esquire (*pro hac vice*)
Max Nicholas, Esquire (*pro hac vice*)
SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010

Dated this 17th day of August, 2012.

/s/ Alfred C. Frawley IV
Alfred C. Frawley IV

MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center
Portland, Maine 04101
(207) 772-6805
afrawley@lawmmc.com