UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket No. 2:10-CV-440-JAW |
| | ) |
| **JOHN L. STEFFENS,** et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'** *DAUBERT/KUMHO* **MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ROBERT A. STRONG**

**COME NOW** the Plaintiffs, by and through their undersigned attorneys, in opposition to the Defendants' Motion to Exclude the Expert Testimony of Robert A. Strong under Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (Docket No. 165) (the "Defendants' Motion").

**I.      INTRODUCTION**

Robert A. Strong, Ph.D., CFA, is an expert on asset valuation and risk management. *See Pls.' Designation of Professor Robert A. Strong* at 9 (Docket No. 165-2) ("Dr. Strong's Designation"). Using two different interest rates for municipal bonds – "Aaa" and "Aa" – Dr. Strong projected the February 1, 2012 value of monies the Plaintiffs invested in Ascot Partners, L.P. ("Ascot"), had they continued to invest in municipal bonds instead. *Id.* Because municipal bonds are illiquid investments until maturity, Dr. Strong was able to perform these calculations based on two reasonable assumptions: 1) the monies the Plaintiffs used to make their January, 2002 investment in Ascot would have remained in municipal bonds if the Defendants had not fraudulently persuaded them to cash in those bonds to make an investment in Ascot; and 2) as was their longtime practice, the Plaintiffs would have continued to purchase "Aaa" and "Aa"

municipal bonds on the same schedule and in the same amounts as each of their subsequent investments in Ascot had the Defendants not induced the Plaintiffs to continue to purchase this security. *Id.* None of Dr. Strong's calculations are dependent on one another, and each calculation accurately stands alone based on its individual assumption.

## II.   FACTUAL BACKGROUND

In the early 1980s, the Plaintiffs began purchasing "Aaa" and "Aa" municipal bonds with mostly ten-year call back periods. *See Tr. of the Dep. of Daniel Goldenson* at 13:23-14:7, attached hereto as Exhibit A. In the mid-1990s, when the issuers of these bonds began calling them in due to a drop in their interest rates, the Plaintiffs were faced with a decision: either reinvest in municipal bonds at lower interest rates or find a new, equally conservative investment strategy that would provide the Plaintiffs with roughly the same interest income on the same schedule – i.e., a strategy that was the functional equivalent of investing in municipal bonds. *See id.* at 13:10-14:19. For perspective and strategic advice on the future "interest-rate climate" of these bonds, the Plaintiffs turned to Defendant Steffens, their good friend and investment adviser. *See id.* at 14:11-17; 19:15-20:5.

Defendant Steffens repeatedly told the Plaintiffs that "he thought that [their] portfolio may not have been the best maintained in municipal bonds by the latter part of 2001." *See* Ex. A at 19:22-20:1. Specifically, Defendant Steffens told the Plaintiffs that the "changing-interest-rate-environment" of their municipal bonds could cause the Plaintiffs' bond portfolio to be worth a lot less than they thought. *See id.* at 13:10-14:19; 19:15-20:5. Although the Plaintiffs "were attentive to ideas that were presented to [them by Defendant Steffens] as being very conservative that were different from municipal bonds," they were "not interested in risking [their] principal," *id.* at 16:12-19, or changing their investment strategy because they "loved municipal bonds."

*See id.* at 22:11-21. In fact, Defendants Steffens' warning that the Plaintiffs would get lower returns if they continued to purchase municipal bonds to replace their called-in bonds "wasn't a matter of concern because the [Plaintiffs'] municipal bond portfolio was very large at that time and provided [them] with plenty of tax-free income." *Id.* at 33:12-21. "[T]he notion of doing something entirely different" was simply not something the Plaintiffs were comfortable with. *Id.* at 32:1-5.

Based on Defendant Steffens repeated warnings "about the nature of the economic climate and direction of interest rates" in the municipal bond market, however, the Plaintiffs became increasingly concerned about their investment holdings as the end of 2001 approached. *See* Ex. A at 21:1-12. Defendant Steffens had always told the Plaintiffs that they should think about hedged investments – which, according to Defendant Steffens, "were actually more reliable than investments in municipal bonds" – and these conversations accelerated when the Plaintiffs heard that their trusted investment adviser had left Merrill Lynch to start a fund-of-funds. *See id.* at 21:14-22:3; 22:11-21. Because of their great respect for Defendant Steffens' advice, the Plaintiffs "agreed to listen to what he was doing." *Id.* at 32:10-13.

In late 2001, the Plaintiffs met Defendant Steffens and his wife at a dinner party in Princeton, New Jersey, during which Defendant Steffens generally described his new Spring Mountain venture and the types of investment vehicles it offered. *See* Ex. A at 24:4-7; 34:1-21; 37:11-38:12. Again he told the Plaintiffs that he "would not advise continuing to invest in municipal bonds because they're not going to be responsive to very-changing market conditions which he felt would take place and [that he thought the Plaintiffs would] be better off in hedged investments in general." *Id.* at 37:5-10. The Plaintiffs and Defendant Steffens then discussed the possibility of the Plaintiffs investing in Spring Mountain. *See id.* at 37:11-15.

3

On December 14, 2001, Mr. Goldenson met Defendant Steffens at his office in New York City. *See* Ex. A at 38:13-17. During this meeting, Defendant Steffens pitched Mr. Goldenson an investment in the conservative Spring Mountain Partners QP I Fund (the "QP I Fund"). *See id.* at 39:19-40:4. At the end of this pitch, Mr. Goldenson – now sold on the idea of hedged investments generally as a functional substitute for municipal bonds and the QP I Fund specifically – asked Defendant Steffens whether he recommended an additional hedge fund into which the Plaintiffs could invest the rest of their money "that was falling due with the bonds." *See id.* Cleverly juxtaposing the Plaintiffs' concerns about municipal bonds – which he had raised – and knowing that the Plaintiffs were not in the market for an investment with any risk, Defendant Steffens recommended Ascot because it had a "very conservative, very steady strategy" that "seemed to do better in higher-interest-rate environments" – just like municipal bonds. *See id.* at 46:17-24;47:14-17.

Based on Defendant Steffens' description, recommendation, and endorsement, the Plaintiffs invested in Ascot. *See* Ex. A at 39:19-40:4; 41:16-42:8; 44:16-20; 51:20-23; 53:13-17. Between 2002 and 2006, the Plaintiffs invested in Ascot a total of five times based on Defendant Steffens' recommendation. Based on the Defendants' advice, they also invested in two other Spring Mountain funds and a hedge fund called Eagle Trading Systems. *See* Ex. A at 184:10-186:12; 188:9-13. In sum, Defendants Steffens convinced them to leave the secure realm of municipal bonds for the risky world of hedged investments under the auspices that hedged investments, particularly Ascot, were the functional equivalent of municipal bonds in the modern interest rate environment. The Plaintiffs offer Dr. Strong to calculate what their present-day investment portfolio would look like had they not been misled by the Defendants into purchasing Ascot.

### III. LEGAL STANDARD

Under Fed. R. Evid. 702, "if an expert has scientific, technical, [or] other specialized knowledge that will assist the trier better to understand a fact in issue, and that knowledge rests on a reliable foundation, that testimony must be admitted." *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 57 (1st Cir. 2010) (internal citations and quotation marks omitted). "[T]he fact that an expert's opinion may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility." *Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Intern., Inc.*, 851 F.2d 540, 545 (1st Cir. 1985) (citing *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985) and *Coleman v. DiMinico*, 730 F.2d 42, 47 (1st Cir. 1984)). At bottom, "the question of admissibility 'must be tied to the facts of the particular case,'" *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006) (quoting *Kumho Tire Co.*, 526 U.S. at 150), and "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes.

### IV. ARGUMENT

The Defendants begin with the argument that Dr. Strong does not present a viable theory of damages because his calculations are based on hypotheticals. *See Defs.' Mot.* at 3-4. They then turn to their alternative claim that even if the Plaintiffs "could recover lost profits from an unrealized, hypothetical investment," they cannot do so in this case because the "'assumption' that Plaintiffs would have invested in municipal bonds had they not invested in [Ascot] is directly contradicted by evidence in the record and is patently speculative." *Id.* at 4. Because both the law and the facts say otherwise, each argument fails.

    ***A.    Dr. Strong's Testimony Will Aid the Factfinder's Assessment of the Plaintiffs' Damages.***

The Defendants attack Dr. Strong's expected testimony because it calculates "make-

believe returns Plaintiffs would have received on an investment – or more precisely five investments – that they did not make." *Defs.' Mot.* at 4 (internal citation omitted). However, "while damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference." *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1539 (11th Cir. 1985) (internal quotation marks omitted) (quoting *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 668 (5th Cir. 1974). In this regard, "[a]ll that is required is a reasonable basis of computation and the best evidence available." *Astro-Med, Inc. v. Nihon Kohned Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) (quoting *Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos, S.A.*, 728 F.2d 572, 575-76 (1st Cir. 1984)).

Contrary to the Defendants' suggestion, Dr. Strong hardly relies on some "pretend" investment or "imagined" purchase – the Plaintiffs' well-documented municipal bond portfolio was very real prior to the Plaintiffs' acceptance of the Defendants' fraudulent investment advice. The Plaintiffs' investments consisted largely of New Jersey municipal bonds as of October 31, 2001. *See* Ex. A at 13:5-7; *Sample of Pls.' Oct. 31, 2001 Municipal Bond Holdings*, attached hereto as Exhibit B. After Defendant Steffens told the Plaintiffs that these bonds were not as secure as the Plaintiffs believed, *see* Ex. A. at 13:10-19, the Plaintiffs liquidated ▬▬▬ of these *very* bonds in order to buy positions in Ascot and the QP I Fund. *See id.* at 159:11-17; 160:17-19 ("We liquidated from our municipal bonds a very substantial percentage of our portfolio – over ▬▬▬ – and we divided half into each"). Municipal bonds are not securities that the Plaintiffs claimed they *would* have purchased; they are the securities the Plaintiffs *actually* purchased and then liquidated when they were fraudulently induced to invest in Ascot. None of these facts are at all speculative.

6

Based on a well-documented record, Dr. Strong in turn calculated the interest that a ▆▆▆▆ municipal bond investment would have earned between January, 2002 and February, 2012. *See Dr. Strong's Designation* at 9-10. Dr. Strong performed his calculation by taking the *actual* historical interest rates of "Aaa" and "Aa" municipal bonds – not speculative data based on hypothetical market conditions – and applying it to the *actual* investments the Plaintiffs liquidated to invest in Ascot. The Defendants do not contest Dr. Strong's methodology or the reliability and accuracy of his conclusions, and his stand-alone calculation is the *actual* out-of-pocket loss the Plaintiffs suffered by liquidating ▆▆▆▆ of New Jersey municipal bonds to buy the same amount of Ascot in January of 2002. As is the case here, "lost opportunity damages are not 'wholly speculative' if they are based on 'certain, fixed, and demonstrable profits thwarted by a defendant's alleged fraud.'" *Tse v. Ventana Medical Sys., Inc.*, 123 F. Supp. 2d 213, 223 (D. Del. 2000) (quoting *Rudinger v. Ins. Data Processing, Inc.*, 778 F. Supp. 1334, 1341 (E.D. Pa. 1991).

Moreover, because the Plaintiffs "had only bought municipal bonds for all practical purposes for 20 years" prior to investing with the Defendants, and "the notion of doing something entirely different was not something that [they were] comfortable with," *see* Ex. A at 32:1-5, they credibly testified that they would have remained invested in municipal bonds – which provided them "with plenty of tax-free income" – but for Defendant Steffens' fraudulent investment advice about Ascot. *Id.* at 33:2-21; 22:14-21. Dr. Strong calculated the present-day value of additional purchases of these same municipal bonds had the Plaintiffs purchased them in the same dollar amounts and at the same time as the Plaintiffs' four subsequent purchases of Ascot interests, as if the Plaintiffs longstanding practice of investing in these bonds had not been interrupted. *Dr. Strong's Designation* at 9.

Dr. Strong's calculations were no "thought experiment." *Defs.' Mot.* at 3. At bottom, Defendant Steffens "pulled [the Plaintiffs] away from [their] course of investing," *id.* at 33:2-7, and the Plaintiffs "would have continued to invest in [municipal bonds] except for the fact that [Defendant Steffens] dissuaded [them] not to." *Id.* at 22:11-21. Based on the actual historical performance of those bonds, Dr. Strong valued the assets the Plaintiffs would have had today if the Defendants had not steered them away from their long-time investment strategy to something they "had never done before." *See id.* at 32:10-13. The factfinder is free to disregard anyone of these calculations if they can be convinced that the Plaintiffs would not have invested in municipal bonds during the relevant timeframe but for the Defendants' conduct, and "[t]he fact that an expert witness speaks in probabilities . . . rather than certainties, does not by itself make his testimony unreliable." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 691 F. Supp. 2d 448, 472 (S.D.N.Y. 2010).

### B. Dr. Strong's Expert Opinion is Based on Reasonable Assumptions Supported by the Record Evidence.

The Defendants further argue that Dr. Strong's opinion is based on speculative assumptions that are contradicted by the record evidence. *Dr. Strong's Designation* at 4. As a threshold matter, it is not for the Defendants to define the record at this premature, *Daubert* stage – the record will speak for itself on summary judgment and later at trial. *See, e.g.*, *Cortes-Irizarry v. Corp. Insular De Seguros*, 11 F.3d 184, 188 (1st Cir. 1997) (The "trial setting normally will provide the best operating environment for the triage which *Daubert* demands. . . . [G]iven the complex factual inquiry required . . . [,] courts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record"). At any rate, because the "Defendants' challenge is solely focused on the factual predicates" for Dr. Strong's opinion, their "proper course . . . is to endeavor 'through cross-examination to explore and

8

expose any weaknesses in the underpinnings'" of Dr. Strong's opinion. *Great N. Storehouse, Inc. v. Peerless Ins. Co.*, No. CIV. 00-7-B, 2000 WL 1900299, at *2 (D. Me. Dec. 29, 2000) (quoting *Int'l Adhesive Coating Co.*, 851 F.2d at 544). In reality, the Defendants' Motion is nothing more than a statement of one side's hoped-for interpretation of the evidence "dressed up as attacks on the expert's testimony." *Id.*

Notwithstanding the well-settled law that weight and credibility determinations about an expert's testimony are matters for the factfinder, the record tells a far different story than the one the Defendants offer. Based on this record, a factfinder could reasonably infer that the Plaintiffs' decision to liquidate their long-time investments in municipal bonds in order to enter the unfamiliar world of hedged investments was based on the fraudulent advice and recommendation of the Defendants. Put simply, a jury could easily conclude that the Plaintiffs "didn't arrive at this decision on [their] own." *See* Ex. A at 31:24. A factfinder could also reasonably infer that, had the Defendants not fraudulently induced the Plaintiffs to re-think their municipal bond strategy based on false or misleading representations about the nature of hedge funds generally and Ascot and the QP I Fund specifically, the Plaintiffs would have continued to invest in municipal bonds in the same way they had for over 20 years.

Based on these assumptions and in order to aid the factfinder's determination of the situation the Plaintiffs would be in but for the Defendants' misconduct, Dr. Strong calculated the Plaintiffs' damages based on the assumptions that "such outlays . . . were legitimately attributable to the defendant[s'] conduct" *See Janigan v. Taylor*, 344 F.2d 781, 786 (1st Cir. 1965). Because the factfinder can reasonably infer that Dr. Strong's assumptions are more likely than not based in fact, "[t]he proper remedy [for the Defendants' claim that Dr. Strong's testimony is speculative and unfounded] is to use conventional methods at trial to attack [Dr.

Strong's] opinion." *Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 182 (internal citations omitted).  Because the jury is capable of rejecting his testimony and according it such weight and credibility as it deems proper, Dr. Strong's expert opinion as to the Plaintiffs' damages is admissible.

**WHEREFORE**, the Plaintiffs respectfully request that the Court deny the Defendants' Motion to Exclude the Expert Testimony of Professor Robert A. Strong (Docket No. 165).

Dated at Portland, Maine this 17th day of August, 2012.

/s/   Jay P. McCloskey
      Jay P. McCloskey

/s/   Thimi R. Mina
      Thimi R. Mina

/s/   Alfred C. Frawley IV
      Alfred C. Frawley IV

Attorneys for the Plaintiffs
MCCLOSKEY, MINA & CUNNIFF, LLC
12 City Center
Portland, Maine 04101
(207) 772-6805

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **DANIEL R. GOLDENSON,** et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Docket No. 2:10-CV-440-JAW |
| **JOHN L. STEFFENS,** et al., | ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2012, I have electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' *DAUBERT/KUMHO* MOTION TO EXCLUDE EXPERT TESTIMONY OF ROBERT A. STRONG** the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

James T. Kilbreth, Esquire
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way, Number 600
Portland, Maine 04101

David Spears, Esquire (*pro hac vice*)
Michelle Skinner, Esquire (*pro hac vice*)
Max Nicholas, Esquire (*pro hac vice*)
SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010

Dated this 17th day of August, 2012.

/s/   Alfred C. Frawley IV
      Alfred C. Frawley IV

      MCCLOSKEY, MINA & CUNNIFF, LLC
      12 City Center
      Portland, Maine 04101
      (207) 772-6805
      afrawley@lawmmc.com