UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL R. GOLDENSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 10-CV-440 (JAW) |
| v. ) | |
| ) | |
| JOHN L. STEFFENS, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF *DAUBERT/KUMHO*
MOTION TO EXCLUDE EXPERT TESTIMONY OF PATRICK E. CONROY**

Defendants respectfully submit this reply in support of their *Daubert/Kumho* motion to preclude Patrick E. Conroy from offering expert testimony in this case.[1]

## ARGUMENT

"In order to be admissible, expert testimony must be both relevant to a material issue and reliable." *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006); *see also, e.g.*, *United States v. Garcia-Morales*, 382 F.3d 12, 18 (1st Cir. 2004). As discussed in the Motion, Dr. Conroy's proposed testimony is neither. He should therefore be precluded from testifying.

**I.   DR. CONROY'S PROPOSED TESTIMONY IS NOT RELEVANT TO A MATERIAL ISSUE IN THE CASE**

As Dr. Conroy repeatedly stated at his deposition, the substantial majority of the opinions he proposes to offer about the way Defendants allocated and informed investors of Madoff-related losses to the Spring Mountain Partners QP I Fund (the "QP I Fund") do not give rise to an

---

[1] Reference is made herein to Defendants' *Daubert/Kumho* Motion To Exclude Expert Testimony Of Patrick E. Conroy (Dkt. No. 168) ("Motion" or "Mot."); Plaintiffs' Opposition to the Motion (Dkt. No. 175) ("Opposition" or "Opp."); Plaintiffs' Supplementation to the Expert Witness Designation of Patrick E. Conroy, Ph.D. (Dkt. No. 168, Ex. A) ("Conroy Designation" or "Conroy Desig."), and the Transcript of the July 13, 2012 Deposition of Patrick E. Conroy ("Tr.") (Dkt. No. 168, Ex. B).

inference that Defendants did anything wrong. *See* Mot. at 3-6. Among other things, Dr. Conroy was asked whether he found "anything wrong" with Defendants' reporting of the QP I Fund's Madoff-related losses in November 2008 rather than in December; with investors in the QP I Fund acquiring additional interests in Ascot Partners, LP in the months leading up to the exposure of the Madoff Fraud; and with Defendants withdrawing incentive fees in 2008 – all prominent subjects of his designation. He testified that he found nothing about any of these actions, or others, that was suggestive of wrongdoing. *See id.*

As a matter of law and of common sense, Plaintiffs should not be allowed to present to the jury expert testimony that the expert admits does not matter. In asking the Court to disregard Dr. Conroy's effective dismissal of his own proposed testimony, Plaintiffs suggest that if he attributed any significance to the facts he intends to testify to, he would be vulnerable to an argument that he was "reaching the same sort of 'conclusions'" that make up Plaintiffs' expert designation of Professor Laby.[2] Opp. at 5. Plaintiffs' notion that if an expert cannot articulate the law and directly apply it to the facts – which is plainly prohibited but which is what Plaintiffs prescribe for Professor Laby in his designation[3] – then he may as well testify to immaterial facts without regard to whether they implicate any issues in the case at all, as Dr. Conroy proposes to

---

[2] Plaintiffs place the word "conclusions" in quotation marks, as though they are quoting Defendants when they characterize Professor Laby's proposed testimony this way. In fact, however, that is exactly how *Plaintiffs* describe Professor Laby's designation. *See* Pls.' Response in Opp. to Defs.' *Daubert/Kumho* Mot. to Exclude Expert Testimony of Arthur Laby (Dkt. No. 176) at 2 n.1 ("Professor Laby's Designation was admittedly couched in terms of legal conclusions."). *See also* Defs.' Reply in Support of *Daubert/Kumho* Mot. to Exclude Expert Testimony of Arthur Laby (Dkt. No. 181) ("Laby Reply").

[3] Plaintiffs assert in their Opposition that "Professor Laby will testify to 'the customs and practices of the [securities] industry,'" quoting *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y.2008), and suggest that such testimony will somehow dovetail with Dr. Conroy's proposed testimony. Opp. at 5. Professor Laby was not actually designated to testify to the "the customs and practices of the [securities] industry," however; he was designated to testify to what the law is and how Defendants allegedly breached it. *See* Laby Reply. As discussed in the Laby Reply, Plaintiffs cannot cure Professor Laby's defective designation by repurposing him after-the-fact to testify differently, including by seeking to prop him up in motion practice regarding a different expert.

do, is preposterous. Testifying to irrelevant facts is not the necessary alternative to drawing impermissible legal conclusions. Expert testimony must meet a basic threshold of relevance, and Dr. Conroy's testimony does not meet that standard, as he admitted at his deposition. If a fact does not signify anything "one way or the other," Tr. at 62:18-62:23, then there is no need for expert testimony establishing that fact in the first place.

## II.  DR. CONROY'S PROPOSED TESTIMONY ABOUT DEFENDANTS' DECEMBER 15, 2008 LETTER TO INVESTORS IS IMPERMISSIBLE LAY OPINION

As discussed in the Motion, the main opinion stated in Dr. Conroy's designation that he did not pronounce to be without significance at his deposition is his opinion that Defendants' December 15, 2008 letter to investors in the QP I Fund was misleading in its statement that REDACTED – even though Dr. Conroy does not claim that this statement was untruthful. *See* Mot. at 6. Dr. Conroy intends to testify that the statement was misleading because the REDACTED figure described the impact of Madoff-related losses on the entire QP I Fund, rather than the hedge fund portion only, while in Preliminary Performance Estimates ("PPEs") and "Flash" Reports sent to investors monthly in 2007 and 2008, only the performance of the hedge fund portion was depicted. *See* Conroy Desig. at 4-5. Dr. Conroy opines that upon receiving the December 15 letter, investors would have thought that the figure related only to the hedge fund portion of the Fund, and they were therefore misled.

First, this opinion does not make sense. The PPEs and Flash Reports referring specifically to the performance of the hedge fund portion said "hedge fund only" on them. *See* Mot. at 7 & n.4 (citing Dr. Conroy's deposition testimony). By contrast, the December 15 letter

3

contained no such language; it referred broadly to the QP I Fund's "assets." *See id.* There is no basis for testimony that an investor would read the December 15 letter through the lens of PPEs and Flash Reports, which had a different purpose and included specific language explaining that the percentage return they listed applied only to the hedge fund portion of the Fund.

In any event, there is no basis whatsoever for a forensic financial analyst to offer expert testimony as to how an ordinary investor would interpret the letter. An investor would apply common-sense reasoning to determine whether the REDACTED figure in the letter applied to all of the assets of the Fund or to the hedge fund portion only. Defendants would stipulate that the figure in the letter applied to the assets of the entire Fund and that the figures in the PPEs and Flash Reports referred, as specified therein, to the hedge fund portion only. Plaintiffs and Defendants may disagree on what an ordinary investor would have understood, but jurors are far more equipped to answer that question than a professional economist. As discussed in the Motion, "'[e]xpert' testimony about matters of common sense is not helpful to the jury and carries the risk of unfair prejudice." *United States v. Raymond,* 700 F. Supp. 2d 142, 150-51 (D. Me. 2010); *see also* Mot. at 7. Dr. Conroy's proposed testimony about how an ordinary investor would read the December 15 letter is a lay opinion in the guise of expert analysis.

Plaintiffs' arguments to the contrary miss the mark. Plaintiffs stress that Dr. Conroy's proposed testimony "is admissible because it is a factual conclusion that embraces an ultimate issue rather than an ultimate legal conclusion." Opp. at 9 (internal quotation marks and brackets omitted). This argument has nothing to do with Defendants' objection to Dr. Conroy's proposed testimony about the December 15 letter. The problem with the testimony is that it proceeds by lay inference and should not be given the imprimatur of an expert. Plaintiffs also argue that Dr.

Conroy's testimony is admissible because he "refrains from opining on the actual state of mind of the Plaintiffs." *Id.* (internal quotation marks omitted). Again, Plaintiffs' argument does not address Defendants' objection. Defendants do not accuse Dr. Conroy of playing amateur psychologist; rather, Defendants' position is that expert testimony is unnecessary, and inappropriate, to instruct the jury on how an ordinary person would interpret a letter. Jurors are ordinary people and can figure that out for themselves.

In short, how an ordinary investor would read the December 15 letter is a subject for closing argument, not for expert testimony.

### III. EXPERT TESTIMONY IS UNNECESSARY FOR UNDISPUTED OR BASIC FACTS

The remainder of Dr. Conroy's proposed opinions relate to undisputed facts or those that otherwise require no expert analysis. *See* Mot. at 8. For example, Plaintiffs argue in their Opposition that "Dr. Conroy's expert testimony is essential" so that the jury can understand that substantially all of Ascot's funds were invested with Madoff; the difference between the terms "hedge fund portion" and "private equity portion;" the difference between PPEs and Flash Reports; and what PPEs and Flash Reports are intended to convey. Opp. at 3-4. Defendants will stipulate to all of these facts and there is no need for expert testimony on any of them. Indeed, Dr. Conroy's erroneous deposition testimony – which he repeated upon being challenged – that PPEs and Flash Reports are the same thing accentuates the unnecessary danger of allowing an expert witness to expound on factual matters to which the parties could just as easily stipulate. *See* Mot. at 10. Plaintiffs' vague contention that stipulations will not suffice in this case because "without industry context, the jury may have no understanding of [the facts'] importance, or lack

of importance," Opp. at 4 (internal quotation marks omitted), has no application here: Dr. Conroy is not proposing to testify to "industry context," but to issues and documents specific to the QP I Fund. Moreover, he has already stated that he attributes no "importance" to the majority of his findings. *See supra* at 1-3. There is no reason to call an expert witness to expound on undisputed, basic facts in this case.[4]

## IV. DR. CONROY'S UNFAMILIARITY WITH THE FACTS INDEPENDENTLY REQUIRES THAT HE BE PRECLUDED FROM TESTIFYING

As detailed in the Motion, Dr. Conroy made a startling amount of fundamental errors in discussing the facts of this case at his deposition, and further testified that he did not review many of the documents his designation stated that he had reviewed and that were essential to the formulation of his opinions. *See* Mot. at 9-10. Plaintiffs dismiss Dr. Conroy's basic misapprehension of the facts as mere fodder for cross-examination, and point out that several of the documents he testified he did not review were referred to in the exhibits to his designation as part of the "basis" of those exhibits. *See* Opp. at 9-10 & n.3. Contrary to what Plaintiffs appear to suggest, the fact that Plaintiffs' designation for Dr. Conroy referred to exhibits that he testified he did not recall looking at makes his errors and omissions more serious, not less so. *See, e.g.*, *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. 09 Civ. 1769, 2011 WL 2292326, at *9 (W.D. Wash. June 8, 2011) ("From [the expert's] testimony, it appears counsel drafted the entire report based on discussions with [the expert], which [the expert] then reviewed and approved. . . . An

---

[4] Plaintiffs also seek to have Dr. Conroy testify that investors were not told that the SMC Leveraged Fund had exposure to Madoff and were mistakenly told that the QP I Fund was invested in Ascot Fund Limited. *See* Opp. at 6. As discussed in the Motion, these allegations are true or false and need to be established by substantive testimony, not expert testimony. *See Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989) ("[The court] can't let this expert make the statement that this didn't happen or that they weren't doing it. The jury has to decide that."); *see also* Mot. at 8 n.6 (discussing Dr. Conroy's deposition testimony that he did not know how the SMC Leveraged Fund had exposure to Madoff and that he confused Ascot Fund Limited with Ascot Partners because "the names . . . are so similar").

expert must independently draft and edit his own report, not merely review counsel's idealized version of what such a report may contain."); *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 578 (W.D. Tenn. 2009) ("[An] expert must substantially participate in the preparation of his report."). Not only did Dr. Conroy not draft the findings in his designation, but he did not even know whether his comments to Plaintiffs' counsel were ever incorporated into their draft. *See* Tr. at 16:19-17:04. His unawareness concerning documents Plaintiffs claimed were important to his findings directly undermines the reliability of his proposed testimony.

Dr. Conroy's deposition made clear that he did not know the rudimentary facts of this case or, in large part, the contents of his own designation. Defendants should not be forced to assume the risk of Dr. Conroy's unpreparedness – the risk that he makes serious mistakes on the stand and they bear the gloss of expert testimony. Dr. Conroy should not be permitted to testify.

\*     \*     \*

In sum, the few findings made by Plaintiffs' forensic financial analyst are either immaterial by his own admission or the product of lay reasoning. Moreover, despite being retained in this case approximately one year ago, Dr. Conroy has not mastered its most basic facts. Plaintiffs should not be allowed to present him as an expert witness.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Dr. Conroy be precluded from testifying as an expert witness.

Dated: August 24, 2012

Respectfully submitted,

SPEARS & IMES LLP

By: /s/ David Spears
    David Spears

By: /s/ Max Nicholas
    Max Nicholas
    Michelle Skinner
    51 Madison Avenue
    New York, New York 10010
    Telephone: (212) 213-6996

DRUMMOND WOODSUM

By: /s/ James T. Kilbreth
    James T. Kilbreth
    Drummond Woodsum
    84 Marginal Way
    Portland, Maine 04101
    Telephone (207) 253-0555
    *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2012, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Thimi R. Mina
>Jay P. McCloskey
>Alfred C. Frawley
>McCloskey, Mina & Cunniff, LLC
>12 City Center
>Portland, ME 04101

Dated: August 24, 2012　　　　　　　　　　　　　/s/ David Spears
　　　　　　　　　　　　　　　　　　　　　　　　David Spears
　　　　　　　　　　　　　　　　　　　　　　　　51 Madison Avenue
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10010
　　　　　　　　　　　　　　　　　　　　　　　　(212) 213-6996
　　　　　　　　　　　　　　　　　　　　　　　　dspears@spearsimes.com