UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL R. GOLDENSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00440-JAW |
| | ) | |
| JOHN L. STEFFENS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING THE PLAINTIFFS' APPEAL OF THE MAGISTRATE JUDGE'S ORDER ON THEIR MOTION TO COMPEL AND AFFIRMING THE MAGISTRATE JUDGE'S RECOMMENDED DECISION ON THE DEFENDANTS' MOTION FOR SANCTIONS**

This securities fraud case involves fall-out from the fraudulent activities of the notorious Bernard Madoff.  According to the Plaintiffs, they placed money in funds that unknown to them had been invested in Madoff funds. Having suffered losses, the Plaintiffs are now claiming that the Defendants, investment funds or investment advisors, defrauded them by misrepresenting to them where and by whom their money was going to be invested.  During discovery, the Plaintiffs sought documents from the New York law firm of Simpson Thacher & Bartlett, LLP, which represented some of the funds.  The Court affirms the Magistrate Judge's recommendation that the Plaintiffs' request for production of documents be denied on the ground that the documents are protected by the attorney-client privilege. The Court also affirms the Magistrate Judge's recommendation that the Defendants' motion for sanctions be denied.

I.      BACKGROUND

A.      Procedural History

On April 12, 2012, Daniel R. Goldenson, Suzanne K. Goldenson, SKG Partners LP, and SKG General Corp. (Plaintiffs), moved to compel the production of documents. *Pls.' Mot. to Compel the Produc. of Docs.* (ECF No. 104) (*Mot. to Compel*). That same day John L. Steffens, Gregory P. Ho, Spring Mountain Capital GP, LLC, Spring Mountain Capital LP, and Spring Mountain Capital, LLC, (Defendants) moved for sanctions. *Defs.' Mot. and Incorporated Mem. of Law for Sanctions and an Award of Costs Incurred in Opposing Pls.' Mot. to Compel against Simpson Thacher & Bartlett LLP* (ECF No. 106) (*Defs.' Mot. for Sanctions*).

On April 23, 2012, the Defendants responded to the Plaintiffs' motion to compel, *Defs.' Opp'n to Pls.' Mot. to Compel* (ECF No. 109) (*Defs.' Opp'n*), and the Plaintiffs responded to the Defendants' motion for sanctions. *Pls.' Opp'n to Defs.' Mot. for Sanctions and an Award of Costs Incurred in Opposing Pls.' Mot. to Compel Against Simpson Thacher & Bartlett LLP* (ECF No. 108) (*Pls.' Opp'n*). On April 24, 2012, the Plaintiffs replied to the Defendants' opposition, *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. to Compel the Produc. of Doc.* (ECF No. 110) (*Pls.' Reply*), and the Defendants responded to the Plaintiffs' opposition to their motion for sanctions. *Defs.' Reply Mem.* (ECF No. 112) (*Defs.' Reply*).

On May 31, 2012, the Magistrate Judge denied the Plaintiffs' motion to compel the production of documents and recommended that the Court deny the Defendants' motion for sanctions. *Mem. Decision on Pls.' Mot. to Compel and*

*Recommended Decision on Defs.' Mot. for Sanctions* (ECF No. 136) (*Order & Rec. Dec.*). The Plaintiffs appealed the Magistrate Judge's decision to deny their motion to compel on June 14, 2012. *Pls.' Appeal of the Magistrate Judge's Mem. Decision on Pls.' Mot. to Compel* (ECF No. 148) (*Pls.' Appeal*). The Defendants responded to the Plaintiff's appeal on July 2, 2012. *Defs.' Resp. to Pls.' Appeal of the Magistrate Judge's Decision on Pls.' Mot. to Compel* (ECF No. 157) (*Defs.' Opp'n to Pls.' Appeal*).

### B.    Factual Overview

The Court adopts the Magistrate Judge's detailed recitation of the facts and includes a factual summary to give immediate context. *See Order & Rec. Dec.* The Plaintiffs bring this eleven-count action against Defendants, to recover damages for significant financial losses they sustained as a result of the Defendants' investment of the Plaintiffs' money in two "hedge funds", which were entangled in Bernard Madoff's (Madoff) infamous Ponzi scheme. *First Am. Compl. and Demand for Jury Trial* (*Am. Compl.*) ¶¶ 1-6 (ECF No. 38). Notably, "[i]nvestors in hedge funds are typically 'limited partners' in a private investment formed pursuant to a limited partnership agreement." *Id.* ¶ 23. In their Amended Complaint, the Plaintiffs allege that the Defendants did not "carefully select[] [ ] sub-managers" or "monitor[] their trading strategies and performance" but rather "simply funneled [the Plaintiffs'] money to Madoff Investment Securities (MIS)," through investments in the "QP 1 Fund" and "Ascot Fund." *Id.* ¶¶ 5, 32, 36-37.

The Plaintiffs learned of Madoff's Ponzi scheme on December 11, 2008 but were unaware that their investments in the Ascot or QP 1 Funds were at risk. *Id.*

¶¶ 88-89.   On December 12, 2008, the Plaintiffs received a letter from the Defendants stating, "[a]lthough we do not have any direct investments with Madoff Securities, some of our underlying managers do have exposure."  *Id*. ¶ 91.   On December 15, 2008, the Defendants sent the Plaintiffs correspondence confirming that both the Ascot Fund and the QP 1 Fund had direct exposure to Madoff Securities.   *Id*. ¶ 93.   In that same letter, the Defendants stated, "[s]ince the announcement of the Madoff Securities fraud, we have taken affirmative steps to protect our interests.  We have retained Simpson Thacher & Bartlett LLP (STB) to provide us with legal advice concerning all transactional, structural, regulatory and litigation issues that may arise in connection with this matter." *Mot. to Compel* Attach. 1, *Letter from Spring Mountain Capital to Investor (Dec. 15, 2008)* (ECF No. 105-1).

The Defendants contacted STB on December 11, 2008 and later retained STB to represent various Spring Mountain entities and affiliates.  *Defs.' Opp'n* Attach 2, *Decl. of James G. Kreissman* ¶ 2 (ECF No. 109-2) (*Kreissman Decl.*).   Before filing this lawsuit, the Plaintiffs never communicated with STB to obtain legal advice in writing, in person or by phone.   *Id*. ¶ 5.   However, after threatening to file this lawsuit, the Plaintiffs' counsel communicated with James Kreissman, a partner at STB, and therefore was aware that he represented adverse parties—the Defendants. *See id*. ¶¶ 1, 6.

On October 24, 2011, the Plaintiffs served a subpoena on STB seeking documents created or collected in the course of STB's representation of the Defendants. *Id.* ¶ 7. Specifically, the subpoena sought:

> 1.    All documents . . . concerning your provision of professional legal services to the investors of the Spring Mountain QP 1, LP (the "Fund"), or to persons or entities having authority to obtain professional legal services on behalf of the Fund or its investors, between December 1, 2008 and the present.
>
> 2.    All non-privileged documents . . . arising out of your provision of legal services to [the Defendants] . . . or to persons or entities having authority to obtain professional legal services on behalf of [the Defendants] . . . between January 1, 2001 and the present, that relate to or reference J. Ezra Merkin, Bernard Madoff, Bernard L. Madoff Investment Securities, LLC, Ascot Partners, L.P, the Ascot Fund, Ascot Fund Limited, Gabriel Capital, L.P., the Gabriel Fund, Ariel Capital, L.P., or the Ariel Fund.

*Decl. of David Spears in Supp. of Defs.' Mot. for Sanctions and an Award of Costs* (ECF No. 107) (*Spears Decl.*) Attach 1, *Subpoena to Produce Docs., Information, or Objects or to Permit Inspection of Premises in a Civil Action* ¶¶ 1-2 (ECF No. 107-1) (*Subpoena*).  On November 7, 2011, STB served written objections to the subpoena. *Kreissman Decl.* ¶ 7.  On December 8, 2011, Thimi R. Mina, one of the Plaintiffs' attorneys, wrote STB charging that if STB was not retained to provide legal services for the benefit and protection of the Plaintiffs and the Defendants, the Defendants' December 15, 2008 letter was false and misleading.  *Spears Decl.* Attach 3, *Letter from Thimi R. Mina to James Kreissman (Dec. 8, 2011)* at 2 (ECF No. 107-3).  Attorney Mina's letter also stated that if STB did in fact provide services for the benefit of the Plaintiffs, attorney-client privilege could not be asserted against them and that the letter would serve as the Plaintiffs' only notice to STB that at trial the

Plaintiffs would offer evidence that STB declined to cooperate with them. *Id.* STB did not respond and there was no further contact between the Plaintiffs and STB until the Plaintiffs moved to compel in the Southern District of New York. *Kreissman Decl.* ¶¶ 8-9.

On or about February 9, 2012, the Plaintiffs served a second request for production of documents on STB. *Spears Decl.* Attach 4, *Pls.' Second Req. for Produc. of Docs. and Things* (ECF No. 107-4) (*Second RFP*). On February 28, 2012, the Defendants moved for a protective order with respect to twelve of the Plaintiffs' thirteen requests in its second request for production. *Defs.' Mot. for a Protective Order Relating to Pls.' Second Req. for the Produc. of Docs. and Things* at 1 (ECF No. 89) (*Defs.' Protective Order*). On March 6, 2012, the Plaintiffs filed an omnibus motion in the Southern District of New York to compel the Defendants to respond to several subpoenas including STB's subpoena. *See Goldenson v. Merkin*, No. 1:12-mc-68-PI (S.D.N.Y.) (*New York Action*), *Notice of Mot. to Compel the Produc. of Docs. Pursuant to FED. R. CIV. P. 45(c)(2)(B)(i)* (NY ECF No. 1). On or about March 12, 2012, the Defendants served a written response to the Plaintiffs' second request for production, objecting to all thirteen requests. *Mot. to Compel* Attach 6, *Defs.' Objs. to Pls.' Second Req. for Produc. of Docs.* (ECF 104-6).

In a telephone conference on March 15, 2012, Plaintiffs' counsel stated they would consider withdrawing the motion to compel against STB if STB stipulated that it had not been retained to represent the Plaintiffs. *Kreissman Decl.* ¶ 11. STB stipulated to that fact; however, the Plaintiffs' counsel decided to proceed with its

motion to compel. *See id.* Shortly thereafter, on March 19, 2012, STB opposed the Plaintiffs' motion to compel. *New York Action*, *Simpson Thacher & Bartlett LLP's Mem. of Law in Opp'n to Mot. to Compel the Produc. of Docs.* (NY ECF No. 19). As of that date, STB had identified almost one hundred custodians of documents relevant to the Plaintiffs' subpoena, estimated it would take several weeks to arrange all the documents, and stated it would cost approximately $100,000 in attorney and staff time to respond to the subpoena. *Kreissman Dec.* ¶¶ 12, 14.

On March 22, 2012, the Magistrate Judge held a hearing in Maine on three pending motions and denied the Defendants' motion for a protective order relating to the Plaintiffs' second request for production of documents. *Report of Hr'g and Order RE: Disc., Scheduling Mot.* at 1, 6 (ECF No. 98). At the hearing, the Magistrate Judge directed the parties to meet and confer before April 5, 2012, to narrow the scope of the second request for production of documents so that the Defendants could reasonably produce all the documents by April 23, 2012, and for the parties to submit letters to the Court by April 9, 2012, describing their positions as to any remaining disputes after their meeting. *Id.* at 7-8.

On March 26, 2012, the Plaintiffs filed a reply memorandum in support of their motion to compel in the New York action. *New York Action*, *Movant's Consolidated Replies to Resp'ts' Opp'n to Movants' Mot. to Compel the Produc. of Docs.* (NY ECF No. 30). On March 27, 2012, the Plaintiffs' counsel sent the Defendants' counsel proposals to narrow the scope of the Plaintiffs' second request for production of documents. *Spears Decl. Attach 8, Email from Alfred Frawley to*

*James Kilbreth, David Spears, and Michelle Skinner (Mar. 27, 2012)* (ECF No. 107-8).

Next, on April 2, 2012, following United States District Court Judge Barbara S. Jones' March 27, 2012 granting of their motion to intervene as of right, the Defendants filed an opposition to the Plaintiffs' motion to compel the production of documents from STB in New York.  *New York Action, Order* (NY ECF No. 32); *Spring Mountain Intervenors' Opp'n to Mot. to Compel Produc. of Docs. from Simpson Thacher & Bartlett, LLP* (NY ECF No. 37) (*Intervenors' Opp'n/S.D.N.Y.*). In that motion, the Defendants argued that this Court, not the Southern District of New York, should resolve the dispute over the Plaintiffs' request for production of documents from STB.  *Intervenors' Opp'n/S.D.N.Y* at 2-3.  The Defendants also charged that the Plaintiffs had mischaracterized the record in this Court.  *Id.* at 6-7.

On April 3, 2012, Judge Jones held a hearing in New York on the omnibus subpoena enforcement proceeding and dismissed the Plaintiffs' motion to compel because she and Magistrate Judge John H. Rich III agreed that "[the motion] should be handled in Maine."  *See Pls.' Opp'n* Attach 4, *Tr. of Proceedings of April 3, 2012* (ECF No. 108-4).  On or about April 9, 2012, the parties submitted a letter to the Magistrate Judge confirming they had reached an agreement concerning all document requests in the second request for production except requests nine and thirteen. *Report of Hr'g and Order Re: Disc., Scheduling Mot.* (ECF No. 103).  The Magistrate Judge set a briefing schedule for the motion to compel and the motion

for sanctions and directed the Plaintiffs to address "the narrowing of RFP No. 13" in their motion to compel. *Id.* at 4.

In response, the Plaintiffs proposed limiting their request for documents in request No. 13 to six STB attorneys. *Mot to Compel* Attach 8, *Decl. of Alfred C. Frawley IV in Support of Pls.' Mot. to Compel the Produc. of Docs.* ¶¶ 9-11 (ECF No. 104-5) (*Frawley Decl.*).   Request No. 13 of the Plaintiffs' second request for production of documents demanded:

> Between December 1, 2008 and April 6, 2009, all documents and communications within the Defendants' custody or control, including without limitation communications in the possession of their agent STB, depicting or concerning STB's provision of Madoff-related legal or investigative services to [Defendants} . . . and/or any general partner, manager, member or employee thereof, including without limitation, John L. Steffens, Gregory P. Ho, and J. Ezra Merkin.

*Id.* ¶ 10.   The Plaintiffs also sought an order directing the Defendants to request these documents from STB. *Mot. to Compel* at 1.

## II.   THE MAGISTRATE JUDGE'S ORDER AND RECOMMENDED DECISION

### A.   Order on the Plaintiffs' Motion to Compel

The Magistrate Judge concluded that "the [D]efendants' have the better argument" and denied the Plaintiffs' motion to compel. *Order & Rec. Dec.* at 16, 35. First, the Magistrate Judge determined that the Plaintiffs were not clients of STB and were barred from accessing the requested documents by attorney-client privilege. *Id.* at 19, 21.   He noted that STB represented the partnership, not the limited partners, such as the Plaintiffs, and that there was no objective or

9

subjective evidence supporting the Plaintiffs' belief that STB represented them. *Id.* at 19-21.

Next, the Magistrate Judge rejected the Plaintiffs' argument that the Defendants failed to properly distinguish which documents were protected by attorney-client privilege. *Id.* at 21-22. Referencing the Plaintiffs' blanket request for production, the Magistrate Judge pointed out that "[b]y definition, [the Plaintiffs] seek documents shielded by attorney-client privilege." *Id.* at 22. Therefore, the Magistrate Judge decided that although some documents might be unprotected, the burden of requiring the Defendants to create a privilege log and produce the desired documents outweighed their benefit to the Plaintiffs and the case. *Id.* at 22.

The Magistrate Judge also considered the Plaintiffs' motion in light of the so-called *Garner* doctrine, which provides that a "corporation is not barred from asserting [the attorney-client privilege] merely because those demanding information enjoy the status of stockholders." *Id.* at 22-29 (quoting *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970)). Under *Garner*, the Magistrate Judge determined that the Plaintiffs would have to show (1) a mutuality of interest and (2) good cause to pierce attorney-client privilege. *Order & Rec. Dec.* at 24-25. Noting that some federal courts have required a "good cause" showing in the limited partner context, the Magistrate Judge was not persuaded by the Plaintiffs' contention that the "good cause" requirement did not apply to their case. *Id.* at 26-27.

Furthermore, the Magistrate Judge concluded that the Plaintiffs did not show good cause. *Id.* at 28. Specifically, the Court found that the Plaintiffs' "small stake [two percent of the QP I Fund], together with their self-described status as 'unique investors' and their bringing of suit for their own personal benefit, potentially in conflict with the interests of other QP I Fund investors, weigh[ed] against a finding of good cause." *Id.* Also, the Court pointed out that the Plaintiffs did not show a "substantial need" for particular documents; rather, they wished to embark on a broad search for evidence. *Id.* at 29.

Finally, the Magistrate Judge denied the Plaintiffs' motion on a separate ground—overbreadth—because the Plaintiffs expanded the scope of their request for production. *Id.* at 30. Instead of limiting their request to documents concerning "legal advice," as they had in their original request, the Plaintiffs requested all documents concerning "legal or investigative services" in their narrowed request. *Compare Frawley Decl.* ¶ 11, *with Second RFP.* Thus, "the continuing overbreadth of [the] Second RFP No. 13" further supported the Magistrate Judge's denial of the Plaintiffs' motion. *Order & Rec. Dec.* at 30.

### B.   Recommended Decision Regarding the Defendants' Motion for Sanctions

The Magistrate Judge recommended that the Court deny the Defendants' motion for sanctions. *Id.* at 35. First, the Court concluded that the Plaintiffs' "simultaneous pursuit of a similar set of documents from STB in the S.D.N.Y. and the [D]efendants in this Court, was an aggressive, but not abusive discovery tactic." *Id.* at 32. The Magistrate Judge found that the Plaintiffs did not renounce all

11

efforts to enforce the subpoena in their December 8, 2011 letter and that at the time they filed the motion, it was not reasonably foreseeable to them that Judge Jones would dismiss their motion to compel on the ground that Maine was better suited to resolve the issue. *Id.* at 32-33.

Furthermore, the Magistrate Judge noted that the Defendants essentially acquiesced to resolving any expected issues over the second request for production in the Southern District of New York. *Id.* at 33. Finally, he pointed out that the Plaintiffs' actions following Judge Jones' dismissal were consistent with his oral order on March 22, 2012 and that the parties' New York discovery litigation was productive for both parties. *Id.* at 34, 34 n.13.

Next, the Court considered the Plaintiffs' alleged misrepresentations to Judge Jones. *Id.* at 34-35. The Magistrate Judge noted that a statement by the Plaintiffs in the Frawley Declaration left the misimpression that the Defendants' motion for protection concerned the Plaintiffs' thirteenth request in their second request for production of documents and that the Court considered but declined to rule on the issue of privilege in its denial of the Defendants' motion for protection. *Id.* at 35. Nevertheless, the Magistrate Judge concluded that "in the absence of any indication that Judge Jones or the S.D.N.Y. was actually misled, or that STB or the defendants were otherwise prejudiced, the statement does not, standing alone, warrant the sanction of the requested imposition of costs and fees." *Id.*

## III.   PARTIES' POSITIONS

### A.    Plaintiffs' Motion to Compel

### 1.    Plaintiffs' Appeal

The Plaintiffs appeal the Magistrate Judge's order denying their motion to compel on three grounds.  *Pls.' Appeal* at 1.  First, the Plaintiffs argue that the Magistrate Judge committed clear error by concluding that the Plaintiffs waived their right to argue that the work product doctrine does not protect the Defendants' documents and that the Plaintiffs' payment of STB's legal fees supports piercing attorney-client privilege.  *Id.* at 1, 4-6.  Second, the Plaintiffs argue that the Magistrate Judge's statement, "[b]y definition, [the Plaintiffs'] seek documents shielded by the attorney-client privilege," clearly shows that he did not hold the Defendants to the required burden of proof for claiming privilege under the attorney-client privilege and work product doctrines.  *Id.* at 1, 6-9.  In support, the Plaintiffs cite an eight-element test that they say parties must satisfy to invoke attorney-client privilege and they contend that the Magistrate Judge failed to make fact-intensive inquiries into elements four through eight.  *Id.* at 6-7.  Third, the Plaintiffs criticize the Magistrate Judge's "broad[]" ruling that a limited partner seeking to use the fiduciary exception to pierce the attorney-client privilege must show good cause under *Garner* and they cite a series of cases to support the contention that this case is factually distinguishable from *Garner*.  *Id*. at 1, 9-10.

### 2.    Defendants' Response

The Defendants respond that the Plaintiffs' waiver arguments fail because the Plaintiffs were not responding to "new matter" in their reply brief.  *Defs.' Opp'n to Pls.' Appeal* at 3-4.  Instead, for both the work product and the allocation of legal

fees arguments, the Defendants assert that the Plaintiffs did not make either argument in their motion to compel despite having fair warning of the availability and utility of both arguments. *Id.* Next, the Defendants maintain that the Plaintiffs' second ground for appeal—the Magistrate Judge's failure to hold the Defendants to the correct burden of proof—should be reviewed under the "clearly erroneous" standard rather than the "contrary to law" standard. *Id.* at 5-6. The Defendants also dispute the Plaintiffs' claim that the Magistrate Judge should have determined the identity of STB's client. *Id.* at 7. "At bottom, Plaintiffs are attempting to flip discovery on its head, using the attorney-client relationship to determine which communications to *seek* as opposed to *avoid*." *Id.* at 8 (emphasis in original).

Third, the Defendants assert that the Magistrate Judge's application of the "good cause" requirement was not contrary to law because he "took explicit care to follow the decisions of other courts" in deciding that "the 'good cause' requirement applies in the context of a limited partnership." *Id.* at 8. Finally, the Defendants point out that even if the Court is persuaded by the Plaintiffs' objections, the Magistrate Judge's decision should be upheld because the Plaintiffs' document request is overbroad and would be "extremely burdensome." *Id.* at 10.

## B.   Defendants' Motion for Sanctions

The Defendants did not object to the Magistrate Judge's recommendation that their motion for sanctions be denied. The Court has reviewed that part of the Magistrate Judge's recommended decision and affirms it without objection. *See* 28

U.S.C. § 636(b)(1)(C); *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 14 (1st Cir. 2010) ("[a]bsent a timely objection, the recommended decision ripens into an order").

## IV.   DISCUSSION

### A.   Standard of Review:  Motion to Compel

After a party files a timely objection to the Magistrate Judge's order on a non-dispositive matter, the District Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. PRO. 72(a).  Under the "clearly erroneous standard", the Court "must accept both the trier's findings of fact and conclusions drawn therefrom unless, after scrutinizing the entire record, [it] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (citing *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)).   Rulings in the Magistrate Judge's order will be reviewed under the "contrary to law" standard when the motion "turns on a pure question of law." *PowerShare, Inc.*, 597 F.3d at 15.  "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard." *Id.*

### B.   Plaintiffs' Motion to Compel

#### 1.   Waiver of the Plaintiffs' Arguments in their Reply Brief

Under Local Rule 7(c), a moving party's reply memoranda "shall be strictly confined to replying to new matter raised in the objection or opposing memorandum." D. ME. LOC. R. 7(c).  Whether the Plaintiffs' work product and

allocation of legal fees arguments were waived is reviewable under the clearly erroneous standard.  *See Phinney*, 199 F.3d at 4.

In his recommended decision, the Magistrate Judge found that the Plaintiffs had waived two arguments by failing to raise them until their reply: work product privilege and allocation of fees.  *Order & Rec. Dec.* at 16 n.4, 29, n.10.  In the recommended decision, the Magistrate Judge notes that the Plaintiffs made a work product protection and allocation of fees arguments "for the first time in their reply memorandum" and that these arguments "could have been raised in their motion." *Id.* at 16 n.4, 29 n.10.  He concluded that the arguments had been waived.  *Id.*

In their appeal, the Plaintiffs do not contend that they raised these issues in their initial motion, but insist that—as allowed by Local Rule 7(c)—they were merely "replying to a new matter raised" in the Defendants' response.  *Pls.' Appeal* at 4-5 (quoting D. ME. LOC. RUL. 7(c)).  It is true that in their response, the Defendants observed that the "Plaintiffs completely ignore the work product doctrine, which independently protects STB's communications with Defendants depicting or concerning legal services because those communications occurred in anticipation of litigation." *Defs.' Opp'n* at 4.  Thus, the Plaintiffs' contention that they were responding to an issue raised by the Defendants has some salience. However, it does not carry the day.

Local Rule 7 contemplates a point, counterpoint, and rejoinder sequence: (1) the moving party raises in its motion the legal issues reasonably generated by its requested relief, (2) the non-movant responds to those issues, and (3) the movant

answers the non-movant's arguments.  D. ME. LOC. R. 7(a)-(c).  When a movant fails to raise an issue that should have been raised, the orderly sequential briefing of the issue is disturbed.  Here, for example, the Defendants noted in their response that the Plaintiffs had failed to raise the work product issue.  *Defs.' Opp'n* at 4.  In their reply, the Plaintiffs discussed the work product privilege for the first time.  *Pls.' Reply* at 2-5.  In addressing this question, the Magistrate Judge was therefore left without the sequential briefing the Local Rule contemplates.  The failure to raise issues in the first instance is to be discouraged because it circumvents the normal process for airing issues and may be used strategically for the movant to gain an unfair advantage, remaining silent on an important issue in hopes that the non-movant does not raise it.  It is in this context that the Magistrate Judge concluded that the Plaintiffs "could and should have raised" the work product issue in the first instance.  *Order & Rec. Dec.* at 16 n.4.

Although another judge could reasonably have concluded that the work product issue was not waived, it is another matter for this Court to conclude that the Magistrate Judge's determination of the issues that "could and should have been raised," which is essentially a discretionary judgment, is either clearly erroneous or contrary to law.  As the work product privilege is commonly intertwined with the attorney-client privilege, the Magistrate Judge's determination that if the Plaintiffs raised one, they should have raised or waived the other, is neither clearly erroneous nor contrary to law.

## 2. Burden of Proof for Invoking Attorney-Client Privilege and the Continuing Overbreadth of the Plaintiffs' Request for Production

The Court concludes that the clearly erroneous standard of review applies to whether attorney-privilege bars the Plaintiffs' request for documents because it involves a mixed question of law and fact. *See In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011) ([d]etermining whether documents are privileged demands a highly fact-specific analysis); *Order & Rec. Dec.* at 21-22 (concluding that this case presented the Court with "an unusual circumstance", which relieved the Defendants from meeting the "customary burden of proving that attorney-client privilege attaches to each [document]"). As the Magistrate Judge correctly noted, the party invoking attorney-client privilege "must carry the devoir of persuasion to show that it applies to a particular communication." *In re Grand Jury Subpoena*, 662 F.3d at 71; *Order & Rec. Dec.* at 21. "Whatever quantum of proof is necessary to satisfy this obligation, a blanket assertion of privilege is generally insufficient." *In re Grand Jury Subpoena,* 662 F.3d at 71. The First Circuit has stated that "the cloak of confidentiality has costs as well as benefits, and courts must take care to construe this privilege narrowly." *Id.*; *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003) (noting that attorney-client privilege "come[s] with substantial costs and stands as an obstacle of sorts to the search for truth").

Caselaw has carved out an eight-element test to determine when attorney-client privilege attaches to a document. *In re Grand Jury Subpoena,* 662 F.3d at 71 (quoting *Cavallero v. United States*, 284 F.3d 236, 245 (1st Cir. 2002)) (listing the

eight-element test).   The burden for each element of the test lies with the party asserting privilege.  *Id.*  "A failure to satisfy any one of the enumerated elements defeats the claim of privilege."  *Id.*   Here, the Plaintiffs complain that the Magistrate Judge did not engage in a "fact-intensive inquiry into the [] elements"—specifically elements (4)-(8)—but rather "allowed the Defendants to escape their burden of proof by ruling that the Plaintiffs '[b]y definition, [] seek documents shielded by attorney-client privilege.'"  *Pls.' Appeal* at 6-7.

    The Court observes that the continuing overbreadth of the Plaintiffs' request for documents played a large role in the Magistrate Judge's decision to uphold the Defendants' claim of attorney-client privilege.  *See Order & Rec. Dec.* at 21-22, 30. The Magistrate Judge concluded that by requesting "all documents and communications . . . [in the Defendants' and STB's custody or control], depicting or concerning STB's provision of Madoff-related legal or investigative services," the Plaintiffs were inevitably seeking documents protected by the attorney-client privilege.  *Id.* at 22, 22 n.8; *see In re Keeper of Records*, 348 F.3d at 22 (the attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice").  "While it is conceivable that some small quantity of responsive documents might be unprotected," the Magistrate Judge ultimately concluded that the burden of creating a privilege log and granting the Plaintiffs' motion to compel outweighed the benefit of a log or access to what would likely be a small number of documents.  *Order & Rec. Dec.* at 22; s*ee Amorim Holding Financeira S.G.P.S., S.A. v. C.P.*, No. 09-10641-DPW, 2011

U.S. Dist. LEXIS 134877, *4-5 (D. Mass. Nov. 22, 2011) (holding in the context of an attorney-client privilege challenge that "while [a series of documents are] arguably relevant . . . the burden of proposed discovery will outweigh its likely benefit considering the importance of this discovery in resolving issues") (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)).

The First Circuit generally applies attorney-client privilege's eight-element test regardless of whether documents facially appear to be protected by attorney-client privilege in order to make a final determination on their privileged status. *See In re Grand Jury Subpoena*, 662 F.3d at 71; *Cavallaro*, 284 F.3d at 245 (citations omitted).  Nevertheless, as here, where the burden of proving the privilege of each document within a voluminous request appears to outweigh the documents benefit to the parties and the case, the Magistrate Judge's ruling does not amount to clear error.[1]  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("*When required* . . . on its own the court must limit the frequency or extent of discovery . . .  if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit . . . .") (emphasis in original); *In re Grand Jury Subpoena*, 662 F.3d at 71 ([d]etermining whether documents are privileged demands a highly fact-specific analysis . . . [which] often requires the party seeking to validate a claim of privilege to do so document by document").  This conclusion is also supported by the Magistrate

---

[1]    The Court also concludes that the Plaintiffs' document requests under the work product doctrine are similarly barred.  *See Gavin v. Liberty Mut. Group Inc*., No. 11-cv-159-LM, 2012 U.S. Dist. LEXIS 109416, at *15-16 (D. N.H. Aug. 6, 2012) ("[h]ere, the deposition question that prompted Gavin's motion to compel, and the motion to compel itself, do expressly call for the substance of communications between Mullane and Liberty Mutual's counsel. Thus, the inquiry here 'clearly fall[s] within the boundaries of the work product doctrine . . . .'").

Judge's determination that "[t]he continuing overbreadth of [the] Second [request for production No. 13], which the [D]efendants represent would have made their compliance with discovery deadline impracticable . . . further weighs in favor of the denial of the Motion to Compel."[2] *Order & Rec. Dec.* at 30 (observing that the Plaintiffs' "narrowed Second RFP No. 13 is, in at least one respect, broader than the original" because it requests documents concerning "legal or investigative services" rather than simply "legal advice"); *see In re One Bancorp. Sec. Litigation*, 134 F.R.D. 4 at 11-12 (D. Me. 1991).   Furthermore, the Plaintiffs' request for production continues to be overbroad and this is an independent ground to uphold the Magistrate Judge's denial of the Plaintiffs' motion.

### 3.     Application of the "Good Cause" Requirement

The Court reviews the Magistrate Judge's ruling that *Garner*'s "good cause" requirement applies to the Plaintiffs under the contrary to law standard of review because this issue turns on a pure question of law.   *See PowerShare, Inc.*, 597 F.3d at 15.   Pursuant to *Garner*, a party may pierce attorney-client privilege under the fiduciary exception where the party establishes a mutuality of interest in seeking legal advice and, depending on the legal context, good cause to pierce the privilege. *See In re Alt. Fin. Agmt. Sec. Litig.*, 121 F.R.D. 141, 146 (D. Mass. 1988) (describing the mutuality of interests requirement); *compare Solis v. Food Empls. Labor Relations Ass'n,* 644 F.3d 221, 228-29 (4th Cir. 2011) (declining to apply "good cause" in the ERISA context concerning Madoff-related investments), *and Lawrence*

---

[2]     Because the Court affirms the Magistrate Judge's decision because of undue burden and overbreadth, the Court does not reach the Plaintiffs' arguments relating to individual elements in the eight-element test, including the mentioned "collateral issues."   *See Pls.' Appeal* at 7-8.

*v. Cohn*, No. 90 Civ. 2396, 2002 WL 109530, at *3 (S.D.N.Y. Jan. 25, 2002) (deciding not to apply "good cause" in the context of a dispute between the executor and beneficiaries of an estate), *with Forston v. Winstead, McGuire, Sechrest & Minick*, 961 F.2d 469, 475 n.5 (4th Cir. 1992) (applying "good cause" in the limited partnership context), *and Garner*, 430 F.3d at 1103-04 (apply "good cause" in a shareholder-derivative action).

Despite the Magistrate Judge's Order, the Plaintiffs argue against application of "good cause" to this case; however, the Court views the Plaintiffs' authority as materially distinguishable from this situation. *See Order & Rec. Dec.* at 26; *compare Mot. to Compel* at 8-9, *with Pls.' Appeal* at 9-10. The Plaintiffs contend that these cases highlight the principal that "because fiduciaries are held to an increased standard of loyalty—whether they are partners, trustees, executors, or members of a closely-held corporation—they are not permitted to shield their conflicts of interest by hiding behind the attorney-client privilege." *Pls.' Appeal* at 9-10. Yet, the Defendants properly note that "the good cause requirement incorporates [fiduciary duty] policies, balancing them against [policies] underlying the attorney-client privilege." *Defs.' Opp'n to Pls.' Appeal* at 9; *see In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 563-64 (D. Del. 1994) ("Requiring Plaintiffs to demonstrate good cause protects the purposes that underline the attorney-client privilege while recognizing that disclosure of privileged communications may be necessary in certain instances to ensure that those in fiduciary positions, such as general partners, are acting in the best interest of their

22

beneficiaries"). Like the Magistrate Judge, the Court is persuaded by decisions that apply *Garner*'s "good cause" requirement in the limited partnership context and concludes that the Magistrate Judge's decision was not contrary to law.[3]   *See Forston*, 961 F.2d at 475 n.5; *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. at 563-64.

## V.    CONCLUSION

1. It is therefore ORDERED that Plaintiffs' appeal of the Magistrate Judge's decision on their motion to compel the production of documents (ECF No. 148) be and hereby is DENIED.

2. It is further ORDERED that the Recommended Decision of the Magistrate Judge (ECF No. 136) be and hereby is AFFIRMED.

3. It is further ORDERED that the Motion for Sanctions (ECF No. 106) be and hereby is DENIED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2013

---

[3]    The Court agrees with the Defendants that *Abbot v. Equity Group*, No. 86 Civ. 4186, 1988 WL 86826, at *3 (E.D. La. Aug. 10, 1998) is inapplicable as the Magistrate Judge correctly concluded that the Plaintiffs were not STB's clients; a conclusion not challenged by the Plaintiffs on appeal. *See Order & Rec. Dec.* at 16-21; *Defs.' Opp'n to Pls.' Appeal* at 9 n.8.