UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL R. GOLDENSON, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00440-JAW |
| | ) | |
| JOHN L. STEFFENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OVERRULING IN PART DEFENDANTS' OBJECTION TO DEPOSITION DESIGNATION AND MOTION TO PRECLUDE**

With trial looming, the Defendants filed an objection to the Plaintiffs' proposed designation of the deposition testimony of their expert, Steven J. Spitz, M.D., and they moved to preclude its introduction at trial. *Objection to Dep. Designation and Mot. to Preclude* (ECF No. 276) (*Defs.' Objection*). The Plaintiffs responded, arguing that the designated portions of Dr. Spitz's deposition should be admitted into evidence at trial. *Pls.' Resp. to Defs.' Objection to Dep. Designation and Mot. to Preclude* (ECF No. 281) (*Pls.' Resp.*).[1] Within some constraints, the Court agrees with the Plaintiffs and will allow the deposition testimony of Dr. Spitz to be admitted at trial if the parties represent that they have explored certain alternatives and that those alternatives are unworkable.

---

[1] The Defendants also filed a motion for oral argument on this dispute. *Defs.' Req. for Hr'g* (ECF No. 284).

## I. BACKGROUND

Daniel and Suzanne Goldenson, SKG General Corp. and SKG Partners LP (the Goldensons) and Gregory P. Ho, Spring Mountain Capital GP, LLC, Spring Mountain Capital, LLC, and John L. Steffens (the Defendants) are locked in a pitched legal battle over whether the Defendants are responsible for losses the Goldensons claim they sustained as a consequence of investments of the Goldensons' money that the Defendants made with the notorious Ponzi-schemer Bernard Madoff.[2] The case having simmered for nearly four years and with the jury in the process of being selected, opening statements are scheduled for Thursday, July 10, 2014.

On April 14, 2014, the Court issued a pretrial order, requiring that the parties designate any depositions by June 2, 2014. *Minute Entry* (ECF No. 244). On June 2, 2014, the Goldensons designated the deposition testimony of six witnesses, one of which is in dispute, namely the proposed deposition testimony of Steven J. Spitz, M.D. *Pls.' Dep. Designations* (ECF No. 266) (*Pls.' Designation*). On June 25, 2014, the Defendants objected to the Plaintiffs' deposition designation of Dr. Spitz. *Defs.' Objection* at 1-4). The Plaintiffs responded on July 2, 2014. *Pls.' Resp.* at 1-5.

## II. THE PARTIES' POSITIONS

### A. The Defendants' Objection and Motion

Citing Federal Rule of Civil Procedure 32(a)(4)(B), the Defendants say that to be admissible as deposition testimony, a witness must be "unavailable" under the

---

[2] For an exhaustive description of the allegations, see *Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment* at 1-225 (ECF No. 236).

2

Rule, which apparently means residing and working more than 100 miles from the place of trial,[3] *Defs.' Objection* at 1—in this case, the Gignoux Federal Courthouse in Portland, Maine. The Defendants have offered a sworn declaration from Josiah Leicht, a New York private investigator and attorney, who calculated the "as the crow flies" distance from the federal courthouse at 156 Federal Street in Portland, Maine, to Dr. Spitz's office at 15 Mill Street, Belmont, Massachusetts, to equal 99.655 miles. *Id.* Attach. 1 *Decl. of F. Josiah Leicht*, at 1-4. Mr. Leicht also calculated the distance from the federal courthouse to Dr. Spitz's residence to equal 99.204 miles. *Id.* The Defendants contend that the "well-established and long-standing preference for live testimony cannot be disputed", *id.* at 2, and urge that the Court decline to allow Dr. Spitz to testify by deposition and, instead, require his in person testimony at trial. *Id.* at 3-4. They stress that the jury should be allowed to assess Dr. Spitz's credibility in order to measure his opinions about Mr. Goldenson's history, diagnosis, treatment, and the cause of his emotional distress. *Id.* at 2.

B.    **The Goldensons' Response**

The Goldensons respond in a number of ways. Preliminarily, the Goldensons concede that Rule 32(a)(4)(B) establishes a 100 mile rule, that the distance is measured "as the crow flies," and that there is a preference for live testimony. *Pls.'*

---

[3]    The text of Rule 32(a)(4)(B) creates a certain amount of ambiguity in this regard, as it merely states that the witness is unavailable if "the witness is more than 100 miles from the place of . . . trial." Decisions interpreting the Rule do not necessarily turn on residence or place of employment, but may also embrace present location. *See, e.g.*, *Daigle v. Me. Med. Ctr., Inc.*, 14 F.3d 684, 691-92 (1st Cir. 1994); *Fairfield 274-278 Clarendon Trust v. Dwek*, 970 F.2d 990, 994-95 (1st Cir. 1992). Nonetheless, both the Goldensons and the Defendants assume that place of residence or place of work is the proper metric, and the Court accepts this assumption for purposes of this decision.

*Objection* at 1.  Nevertheless, they argue that Dr. Spitz's deposition testimony should be allowed.

First, the Goldensons dispute whether Mr. Leicht's calculations are accurate. They note that there is no indication that the Defendants' investigator took into account any "margin of error" in his calculations, that his reliance on Google Earth are inconsistent with other similar services, such as MapQuest, and that the Defendants should "use mathematical tools and methods, not 'Google Earth'". *Id*. at 2 n.2.

Even if a straight line calculation is strictly accurate, the Plaintiffs maintain that the deposition transcript should be allowed under the "exceptional circumstances" provision of Rule 32(a)(3)(E).  First, they maintain that, even though the Defendants may be "technically correct" about the "as the crow flies" measurements, Dr. Spitz could not possibly actually travel less than 100 miles in order to attend the trial.  *Id*. at 2-3.  The Goldensons contend that the closeness of the measurement to 100 miles should inform the Court's analysis of the exceptional circumstances provision.  *Id*.

Next, the Goldensons describe Dr. Spitz's busy schedule and say that "to personally appear at trial will cause an undue burden on his practice and patients." *Id*. at 3.  The Goldensons point out the following: (1) on July 11, 2004, Dr. Spitz is scheduled to see a number of patients who can be seen only on Fridays; (2) from July 14, 2014 to July 18, 2014, he is scheduled to be the primary coverage physician on call at McLean Hospital for four major services: bipolar in-patient, psychosis in-

patient, suicidal tendencies, and depression in-patient; and (3) from July 18, he is scheduled to travel to Connecticut to fly to France where he will remain until after the trial is over. *Id.* at 3.

Third, the Goldensons note that the Defendants noticed and took Dr. Spitz's deposition, questioning him for ninety-three pages; whereas, the Goldensons questioned him for only four pages. *Id.* at 4. They argue that the Defendants "cannot claim any prejudice from their own evidence." *Id.*

Finally, the Goldensons contend that the Defendants should be estopped from claiming that Dr. Spitz must testify in person because they originally indicated that they would present Dr. Spitz by videotaped deposition on April 7, 2014, but waited until June 19, 2014 to change course.[4] *Id.* at 4-5.

## III. DISCUSSION

### A. Rule 32(a)(4)

Federal Rule of Civil Procedure 32(a)(4) contains two relevant provisions:

A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

. . .

(B) that the witness is more than 100 miles from the place of hearing or trial . . . ; [or]

. . .

(E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the

---

[4] In mentioning the June 19, 2014 date, the Court assumes that the Goldensons must be referring to the day that the Defendants told opposing counsel that they would be objecting to the admissibility of Dr. Spitz's deposition. The Defendants filed their objection and motion to preclude on June 25, 2014, not June 19, 2014.

importance of live testimony in open court—to permit the deposition to be used.

FED. R. CIV. P. 32(a)(4)(B), (E).

### B. More Than One Hundred Miles: Rule 32(a)(4)(B)

Regarding the 100 mile provision of Rule 32(a)(4)(B), the First Circuit has "held that so long as this distance criterion is satisfied, 'the admissibility of deposition testimony under the aegis of Rule [32(a)(4)(B)] is not contingent upon a showing that the witness is otherwise unavailable.'" *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 49 (1st Cir. 2012) (quoting in part *Daigle v. Me. Med. Ctr.*, 14 F.3d 684, 691 (1st Cir. 1994)). The parties appear to agree that the correct mileage measure under Rule 32(a)(4)(B) is "as the crow flies". *Defs. Objection* at 2-3; *Pls.' Resp.* at 1 ("The Plaintiffs also recognize that Rules 32 and 45 measure distance 'as the crow flies,' even though 'by crow' is just about the only way a human being cannot travel these days").

If the Goldensons wish to fit within this automatic admissibility provision, they bear the burden of establishing that their proffered witness fits within the Rule. *See Fairfield 274-278 Clarendon Trust v. Dwek*, 970 F.2d 990, 995 (1st Cir. 1992). Here, although the Goldensons have criticized the Defendants' mileage calculations, they have offered none of their own. At most, the Goldensons say that the Defendants have used inaccurate latitudinal and longitudinal coordinates, but they have made no effort to translate these differences into differences in mileage.

At the same time, accepting the Defendants' mileage measurements from Google Earth of something in excess of ninety-nine miles, but less than 100 miles,

6

the Defendants' position seems remarkably punctilious. It is true that if ninety-nine miles and a fraction were rounded up to 100 miles, the "more than" 100 mile requirement of Rule 32(a)(4)(B) would still fail by a whisker. Here, as the resolution seems clearer under Rule 32(a)(4)(E), the Court turns to the exceptional circumstances provision.

C. **Exceptional Circumstances: Rule 32(a)(4)(E)**

Rule 32(a)(4)(E) contains a number of provisos. First, to allow a deposition in lieu of live testimony, the Court must find "exceptional circumstances" exist. FED. R. CIV. P. 32(a)(4)(E). Next, the Court is directed to consider the "interest of justice" and to have "due regard to the importance of live testimony in open court." *Id.* The Court has considered the following factors: (1) the Rule's stated preference for live testimony; (2) the linkage between the 100 mile requirements of Rule 32(a)(4)(B) and Rule 45(c)(1)(A); (3) the fact that Dr. Spitz's residence and office are at the very edge of the more than 100 mile requirement; (4) the lateness of the Defendants' objection; (5) Dr. Spitz's busy schedule and the nature of his duties; (6) the fact that the deposition was videotaped; and (7) the nature of Dr. Spitz's deposition testimony.

The Rule's preference for live testimony is a compelling reason to grant the Defendants' motion. Trial lawyers generally tack to the prevailing wind and change questioning based on trial developments, and jurors invariably prefer a live witness to a screen image of one. Here, the Defendants' deposition of Dr. Spitz took nearly

7

three hours and involved extensive questioning about his qualifications.[5] Although it is possible that Dr. Spitz's trial testimony would track his deposition testimony, it is more likely the lawyers would narrow their questioning before a jury. At the same time, all parties are on notice that a discovery deposition, particularly one that is videotaped, may be admitted into evidence at trial. *Melore v. Great Lakes Dredge & Dock Co.*, No. 95-7644, 1996 U.S. Dist. LEXIS 14003, at *11 (E.D. Pa. Sept. 20, 1996) ("[C]ounsel are always on notice that a deposition may be used at trial in accordance with the Federal Rules of Civil Procedure, including Rule 32(a)[4](E)"). On balance, though, this factor favors the Defendants.

Rule 32(a)(4)(B) and Rule 45(c)(1)(A) contain the same 100 mile provision. It is desirable to construe "the deposition use provisions of Rule 32(a)[4] substantially in conformity with the trial subpoena provisions of Rule 45[c]." *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16, 17 (D. Conn. 1977). In other words, if a party is able to subpoena a witness, the witness should be expected to appear at court and testify. This factor favors the Defendants.

The locations of Dr. Spitz's residence and office are at the very rim of the 100 mile limitation. Furthermore, as a practical matter, fighting traffic from Cambridge or Belmont, Massachusetts to Portland, Maine during the month of July will take far longer than at other times of the year, or than a 100 mile trip down an interstate road in rural Maine. This factor favors the Plaintiffs.

---

[5] The videographer indicated that the deposition began at 9:34 and ended at 12:23. *Pls.' Dep. Designations* Attach. 3 *Videotaped Dep. of Steven J. Spitz, M.D.*, at 5:8-9, 97:6-8 (ECF No. 266).

The Defendants themselves not only videotaped Dr. Spitz's deposition but, on April 7, 2014, noticed Dr. Spitz as a witness to be presented by videotaped deposition. *Defs.' Final Pretrial Mem.* Attach. 2 (*Defs.' Preliminary Witness List*) (ECF No. 242). The Plaintiffs themselves designated Dr. Spitz's deposition on June 2, 2014. *Pls.' Designation*. The Defendants waited until June 25, 2014 to file their objection and motion. The practical effect of videotaping the deposition and delaying their objection was to lull the Plaintiffs into inaction and to narrow their range of choices. If the Defendants had made a timelier objection to Dr. Spitz's deposition transcript, Dr. Spitz would have had more lead-time to adjust his schedule, if possible, and the Plaintiffs would have had more time to explore other alternatives, such as testimony by videoconference. This factor strongly favors the Plaintiffs.

The Plaintiffs produced an affidavit from Dr. Spitz that details his significant obligations to his patients. *Pls.' Resp.* Attach. 2 *Aff. of Steven J. Spitz, M.D.*. Dr. Spitz treats patients with suicidal tendencies and patients with mental health conditions who rely on periodic office consultations; those patients should not be deprived of his care except for good reasons. At the same time, "[c]ourts are sharply split on the circumstances under which a physician's professional responsibilities may constitute 'exceptional circumstances,' justifying the admissibility of his or her deposition even when the witness is within the subpoena power of the court." *McDaniel v. BSN Med., Inc.*, No. 4:07CV-36-M, 2010 U.S. Dist. LEXIS 59392, at *9-10 (W.D. Ken. June 15, 2010) (collecting cases) (quoting *Hague v. Celebrity Cruises,*

9

*Inc.*, No. 95 Civ. 4648 (BSJ) (JCF), 2001 U.S. Dist. LEXIS 6687, at *1 (S.D.N.Y. May 23, 2001)). If a doctor's busy practice were the only reason proffered to excuse a physician's presence as a witness at trial, the Court might well conclude it did not reach the "exceptional circumstances" standard of Rule 32(a)(4)(E). *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990) (A witness is not "automatically unavailable" simply because he or she is a physician). However, in the context of this case, combined with other factors, such as the Defendants' late objection, this factor favors the Plaintiffs.

The fact that the Defendants videotaped Dr. Spitz's deposition mitigates the physical absence of the witness from the courtroom. *McDaniel*, 2010 U.S. Dist. LEXIS 59392, at *12 ("[T]o the extent Dr. Moreno's testimony is called into question, any concern over the inability for the jury to assess his credibility is significantly alleviated because the deposition will be presented to the jury by video rather than being read from a transcript"); *Hague*, 2001 U.S. Dist. LEXIS 6687 at *2.

Finally, the Court reviewed Dr. Spitz's deposition transcript. Although the Defendants raised his credibility as a critical issue, the Court concludes that the significance of Dr. Spitz's expert testimony depends largely not on his credibility but on Mr. Goldenson's. As the deposition confirms, unlike some fields of medicine where physical injury is objectively demonstrable, psychiatric diagnoses and treatment rely heavily on the accuracy of a patient's recitation of complaints. The greater credibility test is Mr. Goldenson's own description of his emotional distress
10

to Dr. Spitz, not Dr. Spitz's use of that description to reach a diagnosis. This factor favors the Goldensons.

Balancing all of these factors, the Court is inclined to allow the videotaped deposition of Dr. Spitz to be admitted into evidence under the exceptional circumstances provision of Rule 32(a)(4)(E). However, before issuing a final ruling, there are a couple of loose ends. First, the trial is scheduled to start on Thursday, July 10, 2014. The Goldensons have accounted for Dr. Spitz's availability for every potential trial day except July 10. The jury will be selected ahead of time and, even assuming that the morning of July 10 will be taken up by preliminary instructions and opening statements, it seems possible that Dr. Spitz could testify in person before the jury during the late morning and early afternoon of July 10. Even if the Plaintiffs would have to call Dr. Spitz out of order, which might not be ideal, if Dr. Spitz is available on July 10 the Court would find that the exceptional circumstances provision of Rule 32(a)(4)(E) has not been met.

Next, the parties have not discussed Dr. Spitz's availability for videoconference testimony. The Court has experience with videoconference testimony, where the witness appears live before the jury but by videoconference. Videoconference testimony can be extremely effective and, if Dr. Spitz can find his way to a videoconference site, this may prove a suitable and preferable alternative to videotaped deposition testimony, thereby relieving the pressure on the Goldensons to call him as the first trial witness.

11

Before the Court rules finally on the admissibility of Dr. Spitz's deposition, it directs the parties to work together and with Dr. Spitz to determine whether either of these alternatives is available. If the parties notify the Court that a good faith effort to realize these alternatives has failed, the Court will allow the Goldensons to present Dr. Spitz's videotaped deposition to the jury during the upcoming trial.

## IV. CONCLUSION

The Court DEFERS final ruling on Defendants' Objection to Deposition Designation and Motion to Preclude (ECF No. 276). The Court DENIES the Defendants' Request for Hearing (ECF No. 284).

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of July, 2014