UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL R. GOLDENSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00440-JAW |
| | ) | |
| JOHN L. STEFFENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFFS' OBJECTIONS TO DEFENDANTS' DEPOSITION DESIGNATION**

Daniel and Suzanne Goldenson are locked in a rapidly approaching civil jury trial with John L. Steffens, Gregory Ho, and other entity Defendants over alleged financial services fraud. The Goldensons object to segments of the Defendants' designations of the deposition testimony of two witnesses: Brian Burns, the Goldensons' former broker at Merrill Lynch, and Arnold Mayberg, the Goldensons' accountant.

**I.    DEPOSITION OF BRIAN BURNS**

The parties deposed Brian Burns on February 15, 2012. *Defs.' Dep. Designations* Attach. 1 *Dep. of Brian Burns*, at 6:9-10 (ECF No. 269) (*Burns Dep.*). On June 2, 2014, the Defendants designated thirty-three segments of this deposition as exhibits. *Defs.' Dep. Designations* at 1-2. On the same day, the Goldensons designated eleven segments; some overlap the Defendants' designations. *Pls.' Dep. Designations* at 2 (ECF No. 266). On June 25, 2014, the Goldensons objected to sixteen of the Defendants' thirty-three designations. *Pls.'*

*Objections to Defs.' Dep. Designation* at 1-5 (ECF No. 277) (*Pls.' Objections*). The Defendants replied in opposition to these objections on July 3, 2014. *Defs.' Resp. to Pls.' Objections to Dep. Designations by Defs.* (ECF No. 285) (*Defs.' Resp.*).

### A. Position of the Parties

#### 1. The Goldensons

The Goldensons characterize certain segments of the deposition of Mr. Burns as being about an "alleged dispute between Mr. Goldenson and the ML Blackrock Municipal Multi-Strategy Fund, LLC." *Pls.' Objections* at 1. They argue that evidence of this dispute is irrelevant under Federal Rule of Evidence 401; unfairly prejudicial and confusing under Rule 403; inadmissible under Rule 404 for the purpose of proving Mr. Goldenson's character; and inadmissible under Rule 608(b) for the purpose of attacking Mr. Goldenson's character for truthfulness through a specific instance of conduct. *Id.* at 1-2.

The Goldensons next take issue with eighteen exhibits, identified as D-178 through D-195 and D-241 through D-245. *Id.* at 2. They characterize most of these exhibits are relating "only to the collateral Blackrock matter." *Id.* The remainder, they assert, relate to residential real estate litigation in which Mr. Goldenson was involved. *Id.*

The Goldensons also argue that if the Court permits the Defendants to introduce deposition testimony regarding Mr. Goldenson's dispute with Blackrock and the real estate litigation, they "must certainly be permitted" to examine the defendants on a civil complaint for fraud against Spring Mountain Capital, L.P.

2

from the New York state courts and on the indictment of Spring Mountain's former managing director for conspiracy, wire fraud, tax evasion, and false statements. *Id.*

Finally, as to certain segments, the Goldensons raise form and hearsay objections. *Id.* at 2-5.

### 2. The Defendants

The Defendants argue that the disputed segments bear on "[Mr. Goldenson's] interactions with Mr. Steffens; his investment history and approach to investing; his heavy reliance on [Mr.] Burns for investment advice; and his history of depression and how it related to his investments." *Defs.' Resp.* at 3. The Defendants also argue that it would not be fair to permit the Goldensons to exclude the Defendants' segments because the Goldensons themselves designated sections of Mr. Burns' testimony in which he discusses his dispute with Merrill Lynch over the Blackrock investment. *Id.* The Defendants extend this argument to the exhibits to which the Goldensons object, characterizing them as necessary context for the evidence that the Goldensons plan to offer regarding the nature of Mr. Goldenson's relationship with Mr. Steffens. *Id.* at 3-4. They further argue that the disputed exhibits also show the nature and extent of Mr. Goldenson's relationship with Mr. Burns, which, in their view, relates to Mr. Goldenson's argument that Mr. Steffens, and not Mr. Burns, was Mr. Goldenson's primary investment advisor. *Id.* at 5. The Defendants also point out that some of the contested exhibits demonstrate Mr. Goldenson making references to his "mental and emotional problems in relation to his investment in the Blackrock hedge fund and securities investments in general." *Id.* at 6.

The Defendants next suggest that Mr. Goldenson's use of certain terms in his writings, such as "fiduciary" and "proprietary," may demonstrate that he had an idiosyncratic understanding of their meanings. *Id.* at 7. This, in the Defendants' view, bears on the key disputed conversation among Mr. Goldenson, Mr. Steffens, and Mr. Merkin. *Id.* at 7-8.

Addressing the Goldensons' argument on Rule 608(b), the Defendants respond that some of the written statements to Merrill Lynch in 2004 go to Mr. Goldenson's credibility on key issues at this trial rather than collateral issues. *Id.* at 8. They argue that they are offering this extrinsic evidence for the permissible purpose of "impeachment by contradiction," not on his character for truthfulness. *Id.* They further argue that Rule 404(b) does not bar the Burns testimony and documents because they are not being offered to show "bad character"; rather, in the Defendants' view, they offer the evidence to show Mr. Goldensons' relationship to Mr. Steffens and Mr. Goldenson's capability as an investor. *Id.* at 8-9.

Turning to the 2004 real estate litigation, the Defendants claim that it is relevant to Mr. Goldenson's claim of intentional infliction of emotional distress. *Id.* at 9. Because this litigation was "a frequent topic of discussion in Mr. Goldenson's sessions with [his psychiatrist] Dr. Spitz," the Defendants argue that they must be relevant to whether Mr. Goldenson's anxiety and depression were proximately caused by the Defendants' alleged wrongdoing. They also argue that the real estate litigation is relevant to Mr. Goldenson's "history of making large investments without any input from or communication with Mr. Steffens." *Id.* at 9-10.

4

In a footnote, the Defendants reject the Goldensons' suggestion that introducing the evidence now in dispute would open the door to questioning from the Goldensons about litigation involving Spring Mountain Capital, L.P. and the indictment of Spring Mountain's former managing director. *Id.* at 10 n.6. They contend that the facts alleged in these matters make them irrelevant to the legal issues at this trial. *Id.*

### B. Discussion

In most of the disputed segments of the deposition of Mr. Burns, counsel for the Defendants questions Mr. Burns regarding Mr. Goldenson's investment in the ML Blackrock Municipal Multi-Strategy Fund, LLC (ML Blackrock), an investment vehicle offered by Merrill Lynch. *E.g.*, *Defs.' Dep. Designations* Attach. 1 *Dep. of Brian Burns* at 34:20-36:2 (ECF No. 269) (*Burns Dep. Tr.*). For the most part, Mr. Burns' testimony focuses on the circumstances under which Mr. Goldenson made an investment in ML Blackrock in late 2003; the disclosures that Mr. Burns made to Mr. Goldenson regarding the investment; Mr. Goldenson's request in 2004 to liquidate his investment in ML Blackrock before the "lockup" period during which the investment should have been illiquid; the reasons for and circumstances of that request; and Mr. Burns' successful efforts to obtain that liquidation.

The Court, having reviewed the deposition transcript, finds that most of the segments are admissible. They are relevant to Mr. Goldenson's sophistication as an investor, to his propensity to take independent action on his investments, and to the nature of his relationships with both Mr. Burns and Mr. Steffens. These compound facts are relevant, in turn, to whether there was a great disparity of position

5

between Mr. Goldenson and Mr. Steffens that might give rise to a fiduciary relationship. Although the 2003-2004 ML Blackrock incident does pose some risk of unfair prejudice or confusion of the issues, this risk does not substantially outweigh the probative value of the testimony. FED. R. EVID. 403.

Nor is the Burns deposition testimony barred by Rules 404(b) or 608(b). Rule 404(b) bars evidence of "other act[s] . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Here, the evidence is relevant for a variety of purposes unrelated to character: e.g., to establish whether there existed a fiduciary relationship between Mr. Steffens and Mr. Goldenson, and whether Mr. Goldenson's understanding about the "proprietary" nature of Ascot's alleged trading was reasonable. For the same reasons, the evidence is not offered to attack Mr. Goldenson's character for truthfulness, such that it would be barred by Rule 608(b).

The Goldensons also object that some of the passages are simply statements by counsel for the defense. This is true, but most of the passages were necessary during the deposition to give context to the questions that were to follow, and are necessary for the same reason now. *E.g.*, *Burns Dep. Tr.* 66:13-19; 84:11-86:6, 106:5-12.

The Goldensons object to the form of questions posed on lines 89:19-22, 90:21-22, 92:13-24, and 99:19-22. The Court overrules these objections; the Goldensons do not explain the basis for their objections, *see Pls.' Objections* at 3-5, and the questions are not plainly improper nor confusing.

6

The Goldensons also object to the questions on lines 108:14-109:18 because they are questions of the witness's own counsel, not counsel for either party. *Id.* at 3-4. At the Burns deposition, Thomas Briody, Esq., in-house counsel for Morgan Stanley Smith Barney, asked five questions to clarify when Mr. Burns had left Merrill Lynch and joined Smith Barney. *Burns Dep. Tr.* 108:10-109:18. Mr. Spears' question follows the context of Attorney Briody's questions:

> Q. And then you subsequently became part of Morgan Stanley Smith Barney?
>
> A. Yes.

*Id.* 109:21-23. In isolation, this question and answer makes no sense unless preceded by Mr. Briody's brief set of questions. If the Goldensons objected to Mr. Briody asking questions at Mr. Burns' deposition, they should have said so at the time; the Court concludes that they have waived the objection. Furthermore, the Goldensons have not suggested any prejudice from Mr. Briody's questions clarifying Mr. Burns' career path, and the Court can imagine none. This objection may lapse into the category of objections made because they can be made. The Court overrules the Goldensons' objections.

Finally with respect to Mr. Burns, the Goldensons raise hearsay objections to (1) a letter from an official at Merrill Lynch to Mr. Goldenson; (2) an email from Barbara Bartro, Mr. Burns' assistant, to Mr. Burns; and (3) the cover of a memorandum relating to ML Blackrock. *Id.* at 3-5. The Defendants did not squarely respond to this hearsay objection. *See Defs.' Resp.* at 4 n.2. Aware that the primary reason for the motion in limine is to allow the parties to properly edit the

videotape, the Court concludes that it does not have enough information about the documents and the testimony to exclude the colloquies that make reference to the documents. It is unclear, for example, whether the deponent is using the documents to refresh his recollection or whether he is testifying from the documents themselves. The Court overrules the Goldensons' objections to those questions.

As to the eighteen exhibits that the Goldensons reference in their memorandum—D-178 through D-195 and D-241 through D-245—the matter is not ripe for decision. The Goldensons did not ask the Court to take any action on these exhibits beyond "urg[ing] the Court to keep this trial focused on the Plaintiffs' claims against the Defendants, and not any past claims the Plaintiffs may have brought against third parties." *Pl.'s Objections* at 2. It is difficult to appreciate the context of these exhibits, so the Court will rely on counsel to press the admissibility issue, if necessary, during trial. As it does not appear to be necessary to issue a pretrial ruling on admissibility in order to edit the videotape, the Court will defer ruling on this issue until trial.

## II. DEPOSITION OF ARNOLD MAYBERG

The Goldensons argue that "any evidence of their accountant's tax treatment of their residential rental property . . . [and] conservation easement [is] utterly irrelevant under Fed. R. Evid. 401." *Id.* at 5. The Defendants reply that this evidence is relevant to the Goldensons' breach of fiduciary duty and fraud claims because it shows the Goldensons' "sophistication in all financial matters and their

8

access to and reliance on a variety of professional to assist with their investment decisions." *Def.'s Resp.* at 10.

The Court has reviewed the disputed sections of Mr. Mayberg's deposition testimony. *See Defs.' Dep. Designations* Attach. 2 *Dep. of Arnold Mayberg*, at 47:8-50:05, 80:15-89:5 (ECF No. 269). The Court sustains the Goldensons' objection to 47:8-50:05. Even assuming that evidence about the Goldensons' residence in Maine could be probative, Mr. Mayberg's actual responses are too elusive and vague to be admissible.

As regards the later testimony about Mr. Goldenson's tax return, although the testimony appears only very remotely related to financial sophistication, it is at least marginally relevant on that score. The danger of prejudice from evidence about the Goldensons' wealth is mitigated because it is cumulative. The Court overrules the Goldensons' objection to 80:15-89:5.

## III. CONCLUSION

The Court OVERRULES the Goldensons' objections to the Defendants' designation of the depositions of Brian Burns and Arnold Mayberg, except for lines 47:8-50:05 of the Mayberg deposition, as to which lines the Court SUSTAINS the relevance objection. The Court DEFERS ruling on the eighteen exhibits identified in the Goldensons' brief.

SO ORDERED.

                                          <u>/s/ John A. Woodcock, Jr.</u>
                                          JOHN A. WOODCOCK, JR.
                                          CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2014